UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:13CR226(RNC) |
| | ) | |
| DANIEL E. CARPENTER | ) | |
| | ) | SEPTEMBER 15, 2014 |

## DEFENDANT CARPENTER'S BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE FROM THE RAID OF MAY 26, 2011

Please take notice that the defendant, Daniel E. Carpenter ("Mr. Carpenter" or the "Defendant") moves that this Court quash and suppress all evidence obtained from the search warrant for the offices located at 100 Grist Mill Road in Simsbury, Connecticut and 300 First Stamford Place, #201, Stamford, CT. The motion is made on the following grounds: 1) that on its face the search warrant was materially defective as it was overbroad in its description of items to be seized; 2) that there was no affidavit supporting the search warrant attached, thus making the search warrant materially defective; 3) during the searches, DOL-OIG conducted a blanket search of all electronically stored information, ESI, regardless of it being subject matter of the search; 4) it failed to give law enforcement lawful guidance concerning items to be searched, turning it into a general warrant; 5) the two-three year delay in reviewing the seized items and not returning non-authorized seized items is a flagrant constitutional violation; 6) said searches violated Mr. Carpenter's Fourth Amendment right against unreasonable searches; 7) said searches violated Mr. Carpenter's Fifth Amendment Due Process right;

1

and 8) the search of seized documents in 2010 by IRS-CID and by DOL-OIG in 2011 was unlawful. A defendant may move to quash a search warrant and to suppress the evidence obtained on the ground that the search and seizure was unreasonable because there was not probable cause for issuance of the warrant. See *Illinois v. Gates*, 462 U.S. 213 (1983).

## BACKGROUND

On May 26, 2011, approximately 50 federal agents or more, most from the Department of Labor, Office of Inspector General, DOL-OIG raided the offices of Grist Mill Capital, LLC, Avon Capital, LLC, Nova Group, Inc. TPG Group, Inc., and other associated businesses located at 100 Grist Mill Road, Simsbury, CT along with approximately 30 to 40 agents, simultaneously raiding the companies Stamford Office at 300 First Stamford Place #201, Stamford, CT. They did so with a search warrant that did not list any crime on front of the warrant, Exhibit 1 and a search warrant affidavit that apparently was not attached to warrant, Exhibit 2, issued by Magistrate Joan Margolis. The two raids, in which many of the agents were armed, frightened the staff and caused unnecessary anxiety to honest, hardworking people. The warrant authorized the search between the hours of 6:00 a.m. and 10:00 p.m.; however, it went on to about 3:00 a.m. the next day. Many of the people who worked at these locations were detained for several hours and had difficulty in accessing their lawyers, if they had one.

The search, itself, was all consuming, where the agents, with little guidance from the search warrant, which was extremely broad, essentially ransacked the offices and seized anything they wanted, irrespective of whether it was covered by the search

2

warrant; this included personal property of Mr. Carpenter and others, such as cell phones, personal laptops, as well as homeowners insurance policies from Mr. Carpenter's desk drawers. (None of this personal property has anything to do with the investigation into Charter Oak Trust, COT.) Proof that the agents did not have a clue as to what was covered and what was not covered by the search.

The agents then copied everything on each computer found on the premises, knowing that most of the seized electronically stored documents also had nothing to do with the criminal investigation into Charter Oak Trust or Charter Oak Trust, 2009. Notwithstanding demands on the government for return of this unlawfully seized, irrelevant information or at least demand that the government destroy copies of irrelevant seized documents, the government, for more than three years after the raids, failed to comply with Constitutional requirements and return or destroy said documents. Additionally, the warrant itself was so broad, so general in nature, that it offered little guidance on the scope of the search. Ultimately, it degenerated down to a general search.

Subsequently, DOL-OIG sought and obtained authorization to seize 13 computers or hard drives or thumb drives of computers earlier seized by the Internal Revenue Service, Criminal Investigation Division, IRS-CID, which had been seized from the defendant and the companies pursuant to a search warrant executed on April 20, 2010, more than four years ago. The 2010 Search should have been limited to seeking tax records and documents related to Nova Benefit Plans, LLC, aka "Benistar". The 2010 raid and seizure had nothing to do with the subject matter of the Superseding Indictment, an insurance fraud scheme. The only reason the IRS-CID still had the 13 computer items

available were because they failed to follow the law, including the protections afforded by the Fourth Amendment, and destroy or return all seized documents or copied electronically stored documents in a timely fashion to their rightful owners in violation of the Constitution.

This action turned the IRS-CID warrant of 2010 into a general warrant. Simply put, the government cannot seize hundreds of thousands of electronically stored documents for one purpose under a search warrant, not timely review the seized items, electronically or hard copies, fail to return said irrelevant seized items, hold them indefinitely and then turn them over to another governmental investigation unrelated to the original investigation. In sum, the blatant violation of law mandates for the followings reasons the suppression of the documents seized on May 26, 2011, as well as those documents obtained from the IRS-CID and not permit them to be used in the prosecution of the defendants, including Daniel Carpenter.

In this action, the Defendant challenges, on constitutional grounds, the invasive and unlawful searches and seizures executed by the government that the defendant will demonstrate were premised upon a search warrant that omitted significant material and exculpatory information, all in a reckless disregard for the truth. The net result of these omissions strip the search warrant of any *arguendo* probable cause, and warrant the relief requested herein. Additionally, the Warrant violated the Fourth Amendment's particularity provisions, providing so little meaningful or limiting guidance to the executing officers that they seized thousands of documents and every piece of digital media present, including but not limited to every computer, laptop, and server located

4

within the building, as well as numerous cellphones and smartphones loaded with personal data. *See Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 441 (6th Cir. 2006)(*en banc*) ("The chief purpose of the particularity requirement was to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime was committed"), *cert. denied*, 549 U.S. 1321 (2007). In all, almost all of the computers and servers were either seized or copied, all to be searched in their entirety – *without any limit* - at the discretion of law enforcement agents and without any judicial supervision and without any particularization that would prevent the investigators conducting the searches from accessing data unrelated to the objectives of any *arguendo* criminal investigation. "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).

The Warrant also violated the Fourth Amendment's overbreadth doctrine, authorizing law enforcement officers to seize vast materials for which no probable cause existed to justify their seizure, even assuming *arguendo* the search warrant demonstrated probable cause to search for some limited universe of materials. "An otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988). A warrant which authorizes a search for items as to which the affidavit fails to establish probable cause is overbroad and violates the Fourth Amendment. *Id.* ("When the probable cause covers fewer documents in a

5

system of files, the warrant must . . . tell the officers how to separate the documents to be seized from the others").[1] Additionally, the execution of the warrant was grossly improper. The May 26, 2011 search warrant was served by over 50 armed agents who entered the business premises in the morning, stayed throughout the day/night, rounded up and detained all the employees, prevented corporate counsel from conferring with corporate executives, and unnecessarily and egregiously intimidated the innocent workers. The egregiously excessive execution of the warrant, as well as the exclusion of an affidavit, reflects a profound disregard for well-established constitutional principles that can only be characterized as lawless.

The invasions of the Defendant's rights were not limited to Fourth Amendment violations, but also violated his Fifth Amendment right to due process of law.    As detailed below, serious grounds exist to question whether the DOL utilized a totally overbroad, un-particularized and illegal search warrant to secure those desired materials. Such a pretextual search and seizure of the businesses located at 300 First Stamford Place, Stamford, CT and 100 Grist Mill Road's records and computers would constitute a violation of the Fifth Amendment's Due Process Clause. When each Fourth Amendment violation, each intrusion into the privacy of citizens and companies, each executive branch acquisition of confidential and privileged emails and documents, and are reviewed

---

[1] *See, e.g., Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750 (9th Cir. 1989) 750 (warrant overbroad where not limited to fraud in connection with the sale of Dali artwork); *United States v. Roche*, 614 F.2d 6, 7 (1st Cir. 1980) (failure to limit objects of search and seizure to documents and records pertaining to automobile insurance "impermissibly broadened the scope of the search beyond the foundation of probable cause"); ); *In re Application of Lafayette Academy*, 610 F.2d 1, 3 (1st Cir. 1979) (warrant overbroad where not limited to documents evidencing fraud with respect to a particular loan program); *United States v. Joe*, 2007 WL 108465 at *7 (N.D.Cal. January 10, 2007)(failure to limit "documentary evidence" to be seized to that related to the cultivation and distribution of marijuana rendered description overbroad); *United States v. Slaey*, 433 F.Supp.2d 494, 500 (E.D.Pa. 2006)(warrant overbroad where search of legitimate business not limited to contract under investigation).

by this Court under a totality of circumstances test, the government's conduct is so offensive that it shocks the universal sense of justice, resulting in a denial of fundamental fairness and hence violation of the Due Process Clause. *County of Sacramento v. Lewis*, 523 U.S. 833, 850-51 (1998). The Due Process Clause seeks to strike the proper balance of power between the government and citizen, and that balance is entirely unhinged where the government uses a false and/or misleading affidavit to secure a criminal search warrant to further stalled, ongoing civil litigation. *See In re Winship*, 397 U.S. 358, 361-364 (1970)("Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, it does speak to the balance of forces between the accused and his accuser").

## I. THE SEARCH WARRANT VIOLATES BOTH THE FOURTH AND FIFTH AMENDMENT RIGHTS OF THE DEFENDANT, AND THE MATERIALS UNLAWFULLY OBTAINED DURING THE SEARCHES AND SEIZURES MUST THEREFORE BE SUPPRESSED IN THEIR ENTIRETY

"[T]he central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013), *quoting Arizona v. Gant*, 556 U.S. 332, 345 (2009). "To prevent such general exploratory rummaging in a person's belongings and the attendant privacy violations . . . the Fourth Amendment provides that a warrant may not issue unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Galpin*, 720 F.3d at 445 (citations and internal quotation marks omitted). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the

7

requirement ensures that the search will be carefully tailored to its justifications, and will

not take on the character of the wide-ranging exploratory searches the Framers intended

to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). *See, e.g., United States v.*

*Zemlyansky*, ___ F.Supp.2d ___, 2013 WL 2151228 at *9 (S.D.N.Y. May 20, 2013).

"Absent some limitation curtailing the officers' discretion when executing the warrant,

the safeguard of having a magistrate determine the scope of the search is lost." *Id.* at 76.

The particularity requirement 'makes general searches . . . impossible and prevents the

seizure of one thing under a warrant describing another. As to what is to be taken,

nothing is left to the discretion of the officer executing the warrant.'" *United States v.*

*Buck*, 813 F.2d 588, 590 (2d Cir. 1987), *quoting Marron v. United States*, 275 U.S. 192,

196 (1927).[1]

The Second Circuit recently spoke to the enhanced importance of the particularity

requirement where computer searches are concerned:

> Where, as here, the property to be searched is a computer hard drive, the
> particularity requirement assumes even greater importance. As numerous courts
> and commentators have observed, advances in technology and the centrality of
> computers in the lives of average people have rendered the computer hard drive
> akin to a residence in terms of the scope and quantity of personal information it
> may contain. . . . The potential for privacy violations occasioned by an unbridled,
> exploratory search of a hard drive is enormous. This threat is compounded by the
> nature of digital storage. Where a warrant authorizes the search of a residence, the
> physical dimensions of the evidence sought will naturally impose limitations on

---

[1] In this case, whether the particularity requirement is satisfied must be determined from the face of the warrant, as the affidavit was not incorporated into the warrant. *See, e.g., United States v. Rosa*, 626 F.3d 56, 64 (2d Cir.2010) ("[W]e may no longer rely on unincorporated, unattached supporting documents to cure an otherwise defective search warrant"); *George*, 975 F.2d at 76 ("Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it"); *see also Groh v. Ramirez*, 540 U.S. 551, 557 (2004)("[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents").

where an officer may pry: an officer could not properly look for a stolen flat screen television by rummaging through the suspect's medicine cabinet, nor search for false tax documents by viewing the suspect's home video collection. Such limitations are largely absent in the digital realm where the size or other outwardly visible characteristics of a file may disclose nothing about its content.

As the Ninth Circuit has explained, because there is currently no way to ascertain the content of a file without opening it and because files containing evidence of a crime may be intermingled with millions of innocuous files, "[b]y necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after files are concealed there." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010) . . . . Once the government has obtained authorization to search the hard drive, the government may claim that the contents of every file it chose to open were in plain view and, therefore, admissible even if they implicate the defendant in a crime not contemplated by the warrant. *There is, thus, "a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant. Id. This threat demands a heightened sensitivity to the particularity requirement in the context of digital searches.*

*Galpin*, 720 F.3d at 447 (emphasis added). *See, e.g., In re Applications for Search Warrants*, 2013 WL 4647554 at *5 (D.Kan. Aug. 27, 2013)("The modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in one place increases law enforcement to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important," *quoting United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009)).

In fact, there have been several major decisions in the Second Circuit dealing with the Fourth Amendment rights of American citizens in the age of modern technology that Justice Brandeis predicted almost a century ago. The most recent of these cases is *United States v. Ganias, No. 12-240-cr* (2d Cir. 2014), decided June 17, 2014. Not only does

*Ganias* cite to Justice Harlan's famous concurrence in *Katz v. United States*, 389 U.S.

347, 351 (1967) that the Fourth Amendment protects people not places, the Fourth

Amendment also prevents the government from "physically intruding on persons, houses,

papers, or effects" or otherwise invading an area which the individual has a reasonable

expectation of privacy. *See Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013).  The

Second Circuit in *Ganias* goes on to state:

> A seizure occurs when the Government interferes in some meaningful way with
> the individual's possession of property. *United States Jones*, 132 S. Ct. 945, 951
> n.5 (2012).  Subject to limited exceptions,7 a search or seizure conducted without
> a warrant is presumptively unreasonable. *See Kyllo v. United States*, 533 U.S. 27,
> 31 (2001).

The Second Circuit then gives the instructions:

> We must construe the Fourth Amendment "in [] light of what was deemed an
> unreasonable search and seizure when it was adopted, and in a manner which will
> conserve public interests as well as the interests and rights of individual citizens."
> *Kyllo*, 533 U.S. at 40.  Applying 18th Century notions about searches and seizures
> to modern technology, however, is easier said than done, as we are asked to
> measure Government actions taken in the "computer age" against Fourth
> Amendment frameworks crafted long before this technology existed. As we do so,
> we must keep in mind that "the ultimate touchstone of the Fourth Amendment is
> reasonableness." *Missouri v. McNeely*, 133 S. Ct. 1552, 1569 (2013) (Roberts,
> C.J., concurring in part and dissenting in part) (internal quotation marks omitted).
> Because the degree of privacy secured to citizens by the Fourth Amendment has
> been impacted by the advance of technology, the challenge is to adapt traditional
> Fourth Amendment concepts to the Government's modern, more sophisticated
> investigative tools.

*Ganias* at *18-19.

The *Ganias* opinion goes on to quote heavily from the Supreme Court opinion in

*Jones* and *Kyllo*, but also from *Galpin*, which quotes heavily from even more Supreme

Court opinions such as *Payton v. New York*, 445 U.S. 573, 583 (1980), and *Coolidge v*

*New Hampshire*, 403 U.S. 443 (1971), among others. The Second Circuit's opinion in *Galpin* in 2013 involved the lack of particularity in the warrant that resulted in Galpin's conviction being overturned and vacated, just as what happened in *Ganias* in 2014. There was no search warrant affidavit to review in Mr. Carpenter's case for particularity or probable cause. Unfortunately, Mr. Carpenter has been prejudiced and penalized because of this case and the falsehoods contained in the Search Warrant Affidavit. Therefore, Mr. Carpenter deserves the same treatment that Jones, Galpin, and Ganias received, and the information seized and held by the government should be suppressed in its entirety. As the Second Circuit said in *Ganias*:

> But the ends, however, do not justify the means....And even if it were relevant, the Fourth Amendment clearly embodies a judgment that some evidence of criminal activity may be lost for the sake of protecting property and privacy rights. *See, e.g., United States v. Calandra*, 414 U.S. 338, 361 (1974) ("The judges who developed the exclusionary rule were well aware that it embodied a judgment that it is better for some guilty persons to go free than for the [Government] to behave in forbidden fashion.").

*Ganias* at *32.

The same holds true for seizures and searches of an individual's cellphone, as modern cellphones are capable of holding a huge amount of data, including, for example, email correspondence sent and received, text messages sent and received, browsing history, schedules, application use, and the like. In fact, as the First Circuit has explained, in invalidating a search of a cellphone incident to arrest:

> In reality, "a modern cell phone is a computer," and "a computer . . . is not just another purse or address book." . . . The storage capacity of today's cell phones is immense. Apple's iPhone 5 comes with up to sixty-four gigabytes of storage, . . . which is enough to hold about four million pages of Microsoft Word documents. . . .

That information is, by and large, of a highly personal nature: photographs, videos, written and audio messages (text, email, and voicemail), contacts, calendar appointments, web search and browsing history, purchases, and financial and medical records. . . . .It is the kind of information one would previously have stored in one's home and that would have been off-limits to officers performing a search incident to arrest. . . . Indeed, modern cell phones provide direct access to the home in a more literal way as well; iPhones can now connect their owners directly to a home computer's webcam, via an application called iCam, so that users can monitor the inside of their homes remotely. . . . At the touch of a button a cell phone search becomes a house search, and that is not a search of a 'container' in any normal sense of that word, though a house contains data.

In short, individuals today store much more personal information on their cell phones than could ever fit in a wallet, address book, briefcase, or any of the other traditional containers that the government has invoked. . . . Just as customs officers in the early colonies could use writs of assistance to rummage through homes and warehouses, without any showing of probable cause linked to a particular place or item sought, the government's proposed rule would give law enforcement automatic access to "a virtual warehouse" of an individual's "most intimate communications and photographs without probable cause" if the individual is subject to a custodial arrest, even for something as minor as a traffic violation. . . . . We are reminded of James Otis's concerns about "plac[ing] the liberty of every man in the hands of every petty officer."

*United States v. Wurie*, 728 F.3d 1, 8 (1st Cir. 2013); *see, also, Riley v. California*, 134 S. Ct. 2473 (2014), and *United States v. Wurie*, 134 S. Ct. 999 (2014), and *United States v. Jones*, 565 U.S. ___ (2012). Among the items to be found on most cellphones is email correspondence and attachments. "Over the last decade, email has become 'so pervasive that some persons may consider [it] to be [an] essential means or necessary instrument[] for self-expression, even self-identification.'" *United States v. Warshak*, 631 F.3d 266, 286 (6th Cir. 2010), *quoting City of Ontario v. Quon*, 560 U.S. 746 (2010). Private email accounts often contain an extraordinary array of personal – and often highly personal – information, reflecting communications with loved ones, lovers, friends, and business

correspondents and providing information about a wide range of an individual's activities, such as travel arrangements, books and other items purchased online, appointment confirmations, and the like. They may also contain privileged communications, such as those with attorneys, and they often include a wide variety as documents which were sent as email attachments. *See, e.g., United States v. Cioffi*, 668 F.Supp.2d 385, 391 (E.D.N.Y. 2009)("The risk of exposing intimate (and innocent) correspondence to prying eyes is magnified because "[c]omputers . . . often contain significant intermingling of relevant documents with documents that the government has no probable cause to seize," *quoting United States v. Vilar*, 2007 WL 1075041 at *35 (S.D.N.Y. 2007); suppressing email search warrant as insufficiently particular).

Here, the warrant failed to adequately particularize the search, and it failed to control the discretion of the searching officers in conducting the search. The Second Circuit has consistently emphasized that "a failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *Galpin*, 720 F.3d at 446, *quoting George*, 975 F.2d at 76. Here, the searching agents did not do the best they could to particularize the search, given the magnitude of the information available to them which would have permitted considerably more precise tailoring of the search parameters to fit the circumstances of the specific searches they sought to conduct.

The application for this warrant was not a rush job (or should not have been); there were no exigencies requiring fast action on the part of law enforcement. Yet law

enforcement authorities did not supply the issuing judge with all the "descriptive facts" which the investigation had allegedly uncovered, which would have provided the issuing judge with the information she needed to restrict the wholesale invasion of privacy which the warrant on its face permitted. *See United States v. Ganias, No. 12-240-cr* (2d Cir. 2014). *See, also, United States v. Rosa*, 626 F.3d 56, 61 (2d Cir. 2010)(agreeing with defendant's argument that "the warrant's authorization of an uncircumscribed search of his electronic equipment violated the Fourth Amendment's core protection against general searches because it provided the government with unrestrained access to electronic records of his daily activities and private affairs"); *see also United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009)("If the warrant is read to allow a search of all computer records without description or limitation it would not meet the Fourth Amendment's particularity requirement").

The warrant not only did not restrict what law enforcement officers could *seize* from the contents of the cellphones and laptop, but it provided no limitation on the scope of the *search*, precisely the problem with searches of digital information which the Second Circuit identified in *Galpin*. "To comport with the Fourth Amendment, the warrants must contain sufficient limits or boundaries so that the government-authorized agent reviewing the communications can ascertain which email communications and information the agent is authorized to review." *In re Applications for Search Warrants*, 2013 WL 4647554 at *9. *See Cioffi*, 668 F.Supp.2d at 389 (invalidating warrant for the search of an email account on the ground that, *inter alia*, "the attachment did not . . .

describe any procedures for the executing officer to follow in searching the account and seizing particular records").

The Search Warrant Affidavit must be attached to the Warrant if it is to be valid in any way. *See, Groh, George,* and *Buck, supra.* The warrant at issue here should be invalidated for the same reasons. It is little different from a warrant which facially authorized agents searching a residence to read every piece of paper in the home. This warrant violated the particularity requirement of the Fourth Amendment, and all fruits of the search should be suppressed.

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

## II. THE SEARCH OF 100 GRIST MILL ROAD WAS PATENTLY UNLAWFUL AS THE WARRANT RESULED IN AN OVERBROAD, UNPARTICULARIZED SEARCH DEVOID OF PROBABLE CAUSE

The warrant at issue here was grossly overbroad and unparticularized in violation of the Fourth Amendment. It affirmatively and unqualifiedly endorsed the seizure of virtually every document on the premises – both business and personal – without limitation to documents that might be relevant to the alleged offenses under investigation, without limitation as to time period, and without limitation to any arguable probable cause. For example:

- "All books and records, including all general ledgers, cash receipts journals, cash disbursement journals, petty cash journals, bank statements, passbooks, cancelled checks, check stubs or registers, deposit tickets, deposit receipts, cashier's checks, money orders, wire transfer documents, invoices, written estimates, receipts, billing statements, contracts, agreements, customer ledger cards, purchases journals, advance payment ledgers, accounts payable ledgers, accounts receivable ledgers, correspondence, memoranda and documents." Attachment D, ¶ a.

- "Records associated with all insurance policies that were owned at any time by the Charter Oak Trust, whether or not they were subsequently transferred." Attachment D, ¶ f.

- "Correspondence between Waesche, Robinson, Carpenter, Bursey, Westcott, Pacini, and/or Trudeau and/or *any other business entities or individuals* regarding all payments, debts, withdrawals, loans, new policies, transfers of policies, or other activity involving the Charter Oak Trust or Charter Oak Trust 2009 (whether in paper or electronic format and stored on any computers or computer networks or servers), such as letters, memoranda, emails, mailings, and envelopes." Attachment D, ¶ h (emphasis added).

- "Documents regarding debts owed and monies due from any of the above-mentioned entities or persons, including bills, foreclosure notices, and past due statements." Attachment D, ¶ l.

- "Documents and records relating to Charter Oak Trust's relationship..." Attachment D, ¶ m and ¶ n.

- "Records, in whatever form, of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes, books, diaries and reference materials" Attachment D, ¶ o.

- "Records, in whatever form, pertaining to accounts held with Internet Service Providers or of Internet use." Attachment D, ¶ p.

So entirely open-ended were these and other paragraphs of Attachment D that the result was the indiscriminate carting away by government agents of a truly staggering volume of documents and items. The warrant provided virtually no guidance to the searching officers, leaving them free to search and seize items with virtually unfettered discretion, in violation of the particularity requirement of the Fourth Amendment. For example, paragraph h (quoted above) would, facially, permit the government to seize every email communication contained in the companies' computer servers or within its individual computers, for it compels seizure of "any and all" emails in relation to the Charter Oak Trust, but that would still require sifting through every email on the servers regardless of

16

subject to ascertain whether it is relevant or not. This request, as well as others, also compellingly demonstrates that the warrant was enormously overbroad, authorizing seizures far in excess of the probable cause, if any, in violation of the Fourth Amendment.

### The Fourth Amendment Particularity Requirement.

The primary purpose of the Fourth Amendment particularity requirement "is to prevent the use of general warrants authorizing wide-ranging rummaging searches in violation of the Constitution's proscription against unreasonable searches and seizures." *United States v. Logan*, 250 F.3d 350, 364-65 (6th Cir. 2001). *See Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 441 (6th Cir. 2006)(*en banc*)("The chief purpose of the particularity requirement was to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime was committed"). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). In requiring a particularized description of articles to be seized, the Fourth Amendment "makes general searches impossible and prevents the seizure of one thing under a warrant describing another. *As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.*" *Fuccillo*, 808

F.2d at 175 (emphasis added), *quoting Marron v. United States*, 275 U.S. 192, 196 (1927).[2]

In every case, the descriptions of the items to be seized "must be as specific as the circumstances and the nature of the activity under investigation permit." *Greene*, 250 F.3d at 477. *See, e.g., Logan*, 250 F.3d at 365 (same). General descriptions will suffice only "[w]hen a more specific description of the items to be seized is unavailable." *Blakeney*, 942 F.2d at 1026. *See, e.g., Henson*, 848 F.2d at 1383. Where, as here, however, information was available based upon which the list of items to be seized could have been further particularized, the warrant is invalid. *See, e.g., United States v. Bridges*, 344 F.3d 1010, 1019 (9th Cir. 2003); *United States v. Kow*, 58 F.3d 423, 427-28 (9th Cir. 1995); *Leary*, 846 F.2d at 601 n.3, 604; *United States v. Abrams*, 615 F.2d 541, 545 (1st Cir. 1980); *In re Application of Lafayette Academy*, 610 F.2d 1, 3 (1st Cir. 1979).

### The Fourth Amendment Overbreadth Prohibition.

The scope of the search that may properly be authorized by the issuing judge may be no broader than the probable cause established by the affidavit. "An otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Leary*, 846 F.2d at 605. *See, e.g., Abboud*, 438 F.3d at 576.[3] The purpose of this rule is "to protect privacy by prohibiting a general, exploratory rummaging in a person's belongings." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). A warrant which authorizes a search for

---

[2] *See, e.g., United States v. Leary*, 846 F.2d 592, 601 (10th Cir.1988)("As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized").

[3] *See also Kow*, 58 F.3d at 427; *United States v. Maxwell*, 920 F.2d 1028,1033 (D.C.Cir. 1990); *Center Art Galleries*, 875 F.2d at 750; *Roche*, 614 F.2d at 7; *Lafayette Academy*, 610 F.2d at 3; *Patrick*, 916 F.Supp. at 574.

items as to which the affidavit fails to establish probable cause is overbroad and violates the Fourth Amendment. *See Leary*, 846 F.2d at 605 ("When the probable cause covers fewer documents in a system of files, the warrant must . . . tell the officers how to separate the documents to be seized from the others").

### Particularity and Overbreadth Defects Common to the Paragraphs of Attachment D. (Exhibit 3 attached)

The complete failure of these paragraphs to limit the items to be seized to those which could provide evidence of a federal crime renders them constitutionally defective. Attachment D was in no way limited to records, documents, or other items which were evidence of the alleged crime. Here, in sharp contrast, the list of items to be seized was "so expansive that its language authorize[d] the government to seize almost all of the business property, papers, and office equipment." *Bridges*, 344 F.3d at 1017. *See Leary*, 846 F.2d at 601 (list of business records to be seized provided no meaningful limitation, "encompass[ing] virtually every document that one might expect to find in a modern company's office"). For example, as noted, paragraph h authorized the seizure of any and all emails messages between employees, current and former client/participants, insurance companies, brokers, and other related parties—*i.e.*, virtually every email message ever generated by any employee. Likewise, paragraph o permitted the seizure of all appointment books, diaries, calendars, message logs and other documents used to record schedules, meetings, conversations or other events, *without any limitation as to time period or subject matter*. The failure to limit the categories of items listed in Attachment

19

D to those related to the allegedly criminal conduct specifically addressed in the affidavit renders the warrants insufficiently particular in violation of the Fourth Amendment.[4]

Attachment D (Exhibit 3) is virtually identical to the paragraphs contained in Attachment B of the April 20, 2010 raid, which compellingly demonstrates that the DOL simply used the same means as the IRS had just a year before to acquire by force what it could have obtained simply by requesting the documents from the IRS, and concurrently demonstrates the overbreadth and non-particularized nature of Attachment D. Attachment D is no more refined or limited than the broad civil summonses issued by the IRS before its equally-intrusive and illegal raid. Clearly, DOL-CID had numerous sources who could have provided them with information based upon which the categories described in Attachment D could have been tailored to authorize the seizure of only those records, documents, or other items which would be likely to provide evidence of whatever alleged offenses were described in the still-sealed affidavit. This case is not, therefore, like those cases in which generalized descriptions have been approved because law enforcement agents could not have known what records or documents were "likely to provide information" about the scheme under investigation. *Abboud*, 438 F.3d at 575. *See, e.g., Henson*, 848 F.2d at 1383.

---

[4] *See, e.g., Kow*, 58 F.3d at 427 (warrant invalid where it could have been made more particular by reference to the suspected criminal conduct); *Leary*, 846 F.2d at 604 (warrant invalid where descriptions of items to be seized could have been limited in various ways, including by reference to the transactions in question); *Abrams*, 615 F.2d at 543, 545 (warrants invalid where no effort made to limit items to be seized to patients as to whom fraud suspected and affidavit contained information that could have been used to specify the records to be seized); *Lafayette Academy*, 610 F.2d at 3 (warrant invalid where it could have been, but was not, limited to fraud with respect to a particular loan program); *Fuccillo*, 808 F.2d at 176 (warrant invalid where it contained no explanation of how to distinguish cartons of stolen women's clothing from legitimate goods at the searched locations). *See also Bridges*, 344 F.3d at 1018 (rejecting government's contention that greater particularity was impossible where the "specificity of [the] affidavit" stood "in stark contrast to the vague and open-ended language of the warrant").

This warrant, in sum, authorized the wide-ranging and indiscriminate rummaging for anything and everything which the government's agents found to be of interest, not even limited by a requirement that the item be evidence of a crime, precisely "the kind of investigatory dragnet that the Fourth Amendment was designed to prevent." *Abrams*, 615 F.2d at 543. *See Bridges*, 344 F.3d at 1016 ("search warrants . . . are fundamentally offensive to the underlying principles of the Fourth Amendment when they are so bountiful and expansive in their language that they constitute a virtual all-encompassing dragnet of personal papers and property to be seized at the discretion of the State").

Here, no effort was made to limit the scope of the seizures permitted under the warrant. Indeed, it is clear from Attachment D that DOL-CID contemplated nothing less than the full-scale fishing expedition which the searching agents ultimately carried out. Where the scope of the seizures authorized by the warrant's description of the items to be seized exceeds the scope of the probable cause shown in the affidavit, the description must be invalidated as overbroad. *See, e.g., Kow*, 58 F.3d at 427 (affidavit did not establish the probable cause required to justify the widespread seizures authorized by the warrant); *Maxwell*, 920 F.2d at 1033 (warrant overbroad where affidavit related only information implicating defendant in a specific scheme to defraud); *Center Art Galleries*, 875 F.2d at 750 (warrant overbroad where not limited to fraud in connection with the sale of Dali artwork, the only probable cause shown in the affidavit); *Roche*, 614 F.2d at 7 (failure to limit objects of search and seizure to documents and records pertaining to automobile insurance "impermissibly broadened the scope of the search beyond the foundation of probable cause"); *Lafayette Academy*, 610 F.2d at 3 (warrant overbroad

where not limited to documents evidencing fraud with respect to a particular loan program, which was all affidavit demonstrated probable cause to search for); *United States v. Joe*, 2007 WL 108465 at *7 (N.D.Cal. January 10, 2007)(failure to limit "documentary evidence" to be seized to that related to the cultivation and distribution of marijuana rendered description overbroad); *United States v. Srivastava*, 444 F.Supp.2d 385, 394 (D.Md. 2006)(in a case where there is probable cause only to suspect healthcare fraud, "a search warrant lacking this subject matter limitation would run afoul of the Fourth Amendment particularity requirement by allowing the seizure of *any* business record (emphasis in original)); *United States v. Slaey*, 433 F.Supp.2d 494, 500 (E.D.Pa. 2006)(warrant overbroad where search of legitimate business not limited to contract under investigation); *Patrick*, 916 F.Supp. at 574 (warrant which exceeded the scope of probable cause shown in affidavit invalid).

In this case, the affidavit was not attached to the warrant. Therefore, the raiding officers could not have known what items were specifically necessary, and would have only relied on the overbroad and non-particularized warrant in violation of the Defendant's Fourth and Fifth Amendment rights.

Every paragraph of Attachment D was either overbroad or insufficiently particularized, and frequently both, in its complete failure to contain any meaningful limitations on the items subject to seizure. Paragraph a expressly permitted the wholesale seizure of *anything* which might be deemed a "bookkeeping record" or "other financial record," even if the records had nothing to do with the Charter Oak Trust. Paragraph a, therefore, goes far beyond any probable cause that could possibly be shown by the still-

22

sealed affidavit. Moreover, the term "books and records" provides no meaningful limitation at all, as it permits such records to be seized if they may be evidence of any crime at all, or even of no crime whatsoever. Paragraph a was not supported by the affidavit because it was not attached, and Paragraph j likewise authorized the seizure of "all bank records."

These paragraphs provided no guidance to the searching officers regarding what financial records, monies, or receipts they were authorized to seize; instead, they left the officers with the unfettered discretion to take any financial records, monies, or receipts on the premises, without regard to their subject matter or the identity of the person to whom they pertained or to whom they belonged.[5] These paragraphs also authorize the unlimited seizure from the premises of a legitimate company of *any* banking record of *any* description for *any* person or entity, without regard to whether it had any conceivable connection to the offenses alleged in the affidavit. There could in no way be established probable cause to believe that every "banking record" on the premises was evidence of any alleged offense.

Likewise, Paragraph q makes not the slightest pretense of limiting the seizures to evidence of the alleged offenses described in the affidavit, as it did not even reference an affidavit. Quite the contrary, it authorizes the seizure of all electronic devices that may have been "used to commit further, or store evidence of the offenses *listed above.*" (emphasis added).   Unfortunately for the Defendant, there were no offenses listed

---

[5] The premises searched were those of a legitimate business with approximately *70 customers*, every one of whom had engaged in at least one transaction with COT or another company. In addition, this paragraph is in no way limited to records or documents evidencing financial transactions by COT or its principals – a receipt on an employee's desk for that day's lunch would fall within the grossly overbroad parameters of this paragraph.

anywhere in the defective warrant or Attachment D. *See also United States v. Riccardi*, 405 F.3d 852, 862-63 (10th Cir. 2005)(warrant authorizing seizure of computer, all electronic and magnetic media stored therein, and a host of external storage devices without limitation unconstitutional as authorizing general search); *Joe*, 2007 WL 108465 at *7 (holding "computers and related or similar devices, and information on hard or floppy drives, which may contain any documents and records . . . ." overbroad and ordering suppression); *Slaey*, 433 F.Supp.2d at 500 ("[a]ny records, documents, materials and files maintained on a computer" overbroad because it authorized agents to seize everything, even if unrelated to the offense under investigation and even if wholly personal); *United States v. Clough*, 246 F.Supp.2d 84, 87-88 (warrant to search computers which contained no limitations on the search and no references to statutes, crimes, or illegality was unconstitutionally overbroad), *on rehearing* 255 F.Supp.2d 3 (D.Me. 2003); *United States v. Hunter*, 13 F.Supp.2d 574, 584 (D.Vt. 1998)(section of warrant which authorized seizure of all computers, all computer storage devices, and all computer software systems was unconstitutionally overbroad). These paragraphs made no effort to tailor the seizure of private communications to any alleged offenses. Paragraph q authorized the seizure of the contents of every computer on the premises, along with every conceivable type of external storage media or device, with no limitations. *See In re Amato*, 2005 WL 1429743 at *11 (D.Me. June 17, 2005), *adopted*, 2005 WL 1705318 (July 20, 2005), *aff'd* 450 F.3d 46 (1st Cir. 2006).

**All Evidence Derived from Searches of Computers, Computer Disks, and Other Electronic and Digital Storage Media Seized Must Be Suppressed.**

Along with a gargantuan quantity of documents, law enforcement agents seized the contents of every computer in the premises searched – first by imaging the computers' hard drives and second by seizing the computers themselves – and kept them on hand for search at leisure, an unjustifiable retention which continues to date. This Court in *Ganias* rejected the government's argument that continuous retention of the electronic media was necessary after two and a half years, referring to that length as "indefinite." Here, the government has had the seized information for over **three years**, and there is no sign of the information being returned. Therefore, this Court should follow its ruling in *Ganias*, and order the information seized by the government to be suppressed, and returned to the Defendant immediately. For all the reasons set forth herein, the warrant unconstitutionally violated the Defendant's rights.

## III. THE GOVERNMENT'S CONDUCT VIOLATED DEFENDANT'S DUE PROCESS RIGHTS.

The phrase "due process of law" represents a "fluid" concept, and whether the government has violated the dictates of due process must be judged in the context of the "totality of facts" of the case at hand. This fluid concept of the Due Process Clause was captured by the Supreme Court in *Betts v. Brady*, 316 U.S. 455 (1942):

> The phrase formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial. In

the application of such a concept there is always the danger of falling into the habit of formulating the guarantee into a set of hard and fast rules the application of which in a given case may be to ignore the qualifying factors therein disclosed.

While the Court ultimately reversed the holding of *Betts* in *Gideon*, this fluid concept of

the Due Process Clause survives, as the Court recently reiterated in *County of*

*Sacramento v. Lewis*, 523 U.S. 833, 850-51 (1998):

Rules of due process are **not**, however, **subject to mechanical application in unfamiliar territory**. Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking. What we have said of due process in the procedural sense is just as true here:

"The phrase [due process of law] formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." *Betts v. Brady*, 316 U.S. 455, 462 (1942).

*County of Sacramento v. Lewis,* 523 U.S. at 850-51 (emphasis added); *see also Mathews*

*v. Eldridge*, 424 U.S. 319, 334 (1976) *quoting Morrisey v. Brewer*, 408 U.S. 471, 481

(1972) ("Due process is flexible and calls for such procedural protections as the particular

situation demands."); *see Crowe v. Smith*, 151 F.3d 217, 230-31 (5th Cir.1998) (noting

that "'[t]he very nature of due process negates any concept of inflexible procedures

universally applicable to every imaginable situation," that "due process," "'unlike some

legal rules, is not a technical conception with a fixed content unrelated to time, place, and

circumstances,'" and that in "each individual case, identification of the specific dictates

of due process is 'guided by a *Mathews v. Eldridge* balancing which requires the

weighing of the private interests affected by the official action, the risk of erroneous deprivation through the existing procedure, and the government's interest in minimizing its administrative and financial burdens'"). In *Lewis*, the Court also made the following observations regarding the concept of Due Process:

> Since the time of our early explanations of due process, we have understood the core of the concept to be protecting against arbitrary action:
>
>> "The principal and true meaning of the phrase has never been more tersely or accurately stated than by Mr. Justice Johnson, in *Bank of Columbia v. Okely*, 17 U.S. 235, 4 Wheat. 235-244, 4 L.Ed. 559 (1819): 'As to the words from Magna Charta (sic), incorporated into the Constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at last settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice.'" *Hurtado v. California*, 110 U.S. 516, 527, 4 S.Ct. at 117 (1884).
>
>> We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), whether the fault lies in a denial of fundamental procedural fairness, *see, e.g., Fuentes v. Shevin*, 407 U.S. 67, 82 (1974) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, *see, e.g., Daniels v. Williams*, 474 U.S. at 331 (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). While due process protection in the substantive sense limits what the government may do in both its legislative, *see, e.g., Griswold v. Connecticut*, 381 U.S. 479 (1965), and its executive capacities, *see, e.g., Rochin v. California*, 342 U.S. 165 (1952), criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue.

*County of Sacramento v. Lewis*, 523 U.S. at 845-46.

Against the backdrop of these fundamental concepts of due process, there exist some consistent principles that courts have applied in resolving due process violations,

though the facts of this case truly do constitute the "unfamiliar territory" cited by the

Supreme Court in *Lewis*. First, government conduct in pursuing parallel proceedings can

be so improper and abusive as to violate the Due Process Clause. Second, government

conduct can be so offensive that it shocks the universal sense of justice, as it does here,

resulting in a denial of fundamental fairness and hence violation of the Due Process

Clause.           As the Supreme Court instructed in *Lewis* and other cases, assessing claims

of due process violations "demands an exact analysis of circumstances before any abuse

of power is condemned as conscience shocking," and an "[a]sserted denial is to be tested

by an appraisal of the totality of facts in a given case." *Lewis*, 523 U.S. at 850-51. As

detailed below, the totality of facts and circumstances clearly do constitute a violation of

the Due Process Clause and requires dismissal or, at minimum, demands an evidentiary

hearing so a complete factual record can be established against which the Court can

measure the due process claims.

         This case presents the "special circumstances" referenced by the Supreme Court in

*United States v. Kordel*, 397 U.S. 1 (1970). The court did not categorically reject

application of the Due Process Clause to invalidate improper use of parallel proceedings,

but instead declined to do so on the facts presented in that case:

> **On the record before us**, we cannot agree that the respondents have made out
> either a violation of due process or a departure from proper standards in the
> administration of justice requiring the exercise of our supervisory power . . . We
> do not deal here with a case where the Government has brought a civil action
> solely to obtain evidence for its criminal prosecution, or has failed to advise the
> defendant in its civil proceeding that it contemplates his criminal prosecution; **nor**
> **with a case where the defendant is without counsel** or reasonably fears
> prejudice from adverse pretrial publicity or other unfair injury; **nor with any**

**other special circumstances** that might suggest the unconstitutionality or even the impropriety of this criminal prosecution.

*Kordel*, 397 U.S. at 11-12 (emphasis added).[6]  *See also United States v. Grunewald*, 987 F.2d 531, 534 (8th Cir. 1993) ("It is clear that the DOL may not develop a criminal investigation under the auspices of a civil audit. . . . Significantly different rights, responsibilities, and expectations apply to civil audits and criminal tax investigations."). Evidence acquired in a civil action should not be permitted in a parallel criminal matter if its "use would violate [Defendant's] constitutional rights or depart from the proper administration of criminal justice." *United States v. Teyibo*, 877 F. Supp. 846, 855 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 681 (2d Cir. 1996).

## IV.   THE GOVERNMENT IN 2011 VIOLATED THE DEFENDANT'S FOURTH AMENDMENT RIGHTS BY SEIZING EARLIER SEIZED EVIDENCE FROM THE IRS-CID.

In April, 2010, the Internal Revenue Services raided the same premises in Simsbury, seizing hundreds of thousands of documents, including electronically stored documents from various computers found on the targets (including Mr. Carpenter's) business property.  Since the raid on April 20, 2010, the fruits of those searches for the most part have been held at the Internal Revenue Service, Criminal Investigative Division (IRS-CID) at 150 Court Street, Room 314, New Haven, CT.  The items seized include numerous computers listed on Exhibit 4a-c to this brief.

---

[6] The Supreme Court has not addressed these issues since *Kordel*. *See United States v. Stringer*, 535 F.3d 929, 937 (9th Cir.2008).

Said seizure by IRS-CID was over <u>four years ago</u> and was held over a year before the date of the seizure in the instant matter. The electronic stored documents seized in the Search Warrant of 2010 by IRS-CID went far beyond any document the Court authorized the IRS-CID to seize. The 2010 Search Warrant was limited to seizing evidence of possible tax fraud by NOVA Benefit Plans, LLC. It did not permit the IRS-CID to search for possible insurance fraud by several other companies, including Grist Mill Capital or Daniel Carpenter's personal or business documents.

After the IRS-CID seized the documents in 2010 and stored them in government offices in New Haven, they let them sit indefinitely, even though Mr. Carpenter has demanded their return. The items have been held, apparently, on the off-chance the information would become relevant to a subsequent criminal investigation. This is the equivalent of a general warrant. The subsequent retention has deprived the owners of the copies of computer records exclusive control over those documents for an unreasonable amount of time. This is a meaningful interference with Mr. Carpenter and his business and personal records and constitutes a seizure within the meaning of the Fourth Amendment. *U.S. v. Ganias, Supra,* at p. _____.

The Government on page 3 of the May 25, 2011, search warrant sought authority under said warrant to search and seize 13 various computers, laptops, thumb drives, hard disks and other hardware/software seized from 100 Grist Mill Capital, Simsbury, CT in 2010, in the control of IRS-CID and use them as they see fit in the instant prosecution of Mr. Carpenter. The items they searched and intended on using, if relevant to alleged insurance, wire and mail fraud or other charged crimes, are beyond the scope of the 2010

Search Warrant authorization itself. (The lawfulness of the 2010 Search Warrant is a separate issue; but irrespective of the lawfulness of the 2010 warrant, the use of any evidence beyond that authorized by the Court in 2010, legal or illegal, cannot be permitted for use in the instant prosecutions.)

At no time after the seizure of the aforementioned documents in 2010, it appears, did the IRS-CID go through each and every document and pull out those documents they had a good faith belief were properly seized from those documents that were not intended to be permanently seized as they were outside the scope of the 2010 search warrant mandate.

Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure states that a warrant may authorize the seizure of electronic stored data and review its content at a later date. However, that process must be done in a reasonable time. *U.S. v. Schesso*, 730 F.3d 1040, 1046 (9th Cir. 2013). As such, the off-site review is still subject to the rule of reasonableness, *U.S.A. v. Ganias, Supra.* at ____. The Fourth Amendment does not permit officials executing a warrant for the seizure of particular data on a computer to seize and indefinitely retain every file on that computer for use in future criminal investigations. It would reduce the search warrant to a general warrant. *Id.*

In the instant matter, the fact that even today the IRS-CID has retained irrelevant and non-responsive data from 2010, makes it clear that the Government has no intent to act in good faith. This failure on their part to recognize and respect the Fourth Amendment and the privacy rights of the citizens mandates that the exclusionary rule apply. Even now the Government in this case, having three years to review the

electronically stored information obtained from the IRS-CID, has yet to return to its lawful owner or destroy its copies of the seized irrelevant information, doubling the violation of the Fourth Amendment. The defendant has been victimized twice; first by the IRS-CID and then secondly by DOL-OIG.

Accordingly, all data seized in 2011 from the IRS-CID should be suppressed and excluded from any trial involving Mr. Carpenter and that all such copies of said data be ordered returned to the rightful owner or destroyed forthwith.

### The *Leon* Good Faith Exception Cannot Save These Searches from Application of the Fourth Amendment Exclusionary Rule

The good faith inquiry asks "the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922-23 (1984). In this case, the answer to that question is plainly yes. Even if the Court were to determine that the affidavit was not so lacking in probable cause as to preclude reasonable reliance, the good faith exception cannot be applied here because of the extraordinary overbreadth and lack of particularity of the warrant. The warrant at issue here was so facially deficient in both its lack of particularity and its manifest overbreadth that no reasonable officer could have relied on it, rendering the good faith exception inapplicable.[7]

"Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh*, 540 U.S. at 563. *See, e.g., Leary*, 846 F.2d at 609

---

[7] The government bears the burden of proving the applicability of the good faith exception.

(suppression ordered where the warrant was "so facially deficient in its description of the items to be seized that the executing officers could not reasonably rely on it").      Here, as the preceding sections have amply demonstrated, the glaring overbreadth and lack of particularity were so pronounced that no reasonable officer could have relied on the warrant in good faith. Rather than make a good faith effort to confine the search to the probable cause (if any) in the affidavit or to limit the discretion of the searching officers as to what could and could not be seized, Attachment D was intentionally drafted to be as broad and inclusive as possible, essentially to permit a generalized fishing expedition through every document and record on the premises and a generalized and indiscriminate carting away of corporate and personal property, in plain violation of the particularity requirement and without regard for the probable cause limits of the affidavit.

Attachment D was plainly drafted with such massive and effectively unregulated seizures in mind and that was exactly what the searching officers carried out. Where the officers themselves drafted the constitutionally invalid warrant, the magistrate's imprimatur will not necessarily save the items seized, as well as all derivative fruits, from suppression. *See Groh*, 540 U.S. at 564 ("[B]ecause petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid"); *see also Reilly*, 76 F.3d at 1281 ("[I]t is one thing to admit evidence innocently obtained by officers who rely on warrants later found to be invalid due to a magistrate's error[; i]t is an entirely different matter when the officers are themselves ultimately responsible for the defects in the warrant"); *Steele v. U.S.*, 267 US 498, 503

(1925) ("Warrant must be particular enough to enable the executing officer to ascertain and identify with reasonable certainty those items the magistrate has authorized him to seize"); *U.S. v. Vargas*, 621 F.2d 54, 56 (2d Cir. 1980).   Attachment D plainly demonstrates that in this case the government *did* set out to conduct a general and virtually unlimited search, which, unfortunately, the warrant authorized.

The good faith exception also does not apply if the searching officers acted unreasonably. "It is incumbent on the officer executing a search warrant to ensure that the search is lawfully authorized *and lawfully conducted*." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004)(emphasis added).  "When law enforcement officers have acted unreasonably, the exclusionary rule exists to suppress evidence gained through unconstitutional means." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003). The good faith exception "assumes, of course that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant." *United States v. Fuccillo*, 808 F.2d 173, 178 (1st Cir. 1987), *quoting Leon*, 468 U.S. at 918 n.19. Because the search at issue was conducted in a wholly unreasonable manner, the good faith exception cannot be applied here.

In addition, the good faith exception does not apply where "the issuing magistrate 'was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Vigeant*, 176 F.3d at 571, *quoting Leon*, 468 U.S. at 923.  The good faith exception "is not an excuse if the police are not frank with the magistrate in proceedings to obtain the warrant . . . ." *United States v. Reilly*, 76 F.3d 1271, 1273 (2d Cir. 1996). "It defies reason to contend that an affiant

34

who intentionally or recklessly misleads a magistrate judge in order to obtain a search warrant could then be absolved from the normal sanctions by invoking the good faith exception to the exclusionary rule." *United States v. Cody,* 812 F.Supp. 1123, 1126 (D.Colo. 1993), *aff'd,* 21 F.3d 1122 (10th Cir. 1994).

> [I]f a warrant is based on a knowing or reckless falsehood, contained in the supporting affidavit, the warrant is invalid under *Franks*. . . . In this situation, there is necessarily police misconduct which can and ought to be deterred and suppression remains an appropriate remedy.

*United States v. Savoca,* 761 F.2d 292, 296 (6th Cir.1985). *See, e.g., United States v. Hammond,* 351 F.3d 765, 774 (6th Cir. 2003)(good faith exception inapplicable where affiant "acted with reckless disregard for the truth in view of the remarkable inaccuracies presented in his affidavit"); *United States v. Baxter,* 889 F.2d 731, 734 (6th Cir.1989)(declining to apply good faith exception because of knowing misstatement in affidavit); *United States v. Ruiz,* 822 F.Supp. 708, 712 (D.Kan. 1993)(intentional or reckless inclusion in affidavit of false or materially false information "represents an unthinkable intrusion upon the authority of the magistrate judge"). The highly material misstatements and omissions outlined in this memorandum preclude application of the good faith exception in this case.

## V.    CONCLUSION

The DOL-OIG in its efforts to go on a fishing expedition of the offices of Benistar Admin. Services, Inc., Grist Mill Capital, LLC and others raided the various premises with more law enforcement personnel than were used to capture or destroy Osama Bin

Laden, which occurred three weeks earlier. The raid on Carpenter's premises is an example of governmental intrusion at its worst. There was no evidence that Mr. Carpenter or the personnel at either office in Simsbury or Stamford constituted an imminent threat or were destroying documents or would not have complied with a simple subpoena to produce the sought after material. Instead, armed agents descended upon the businesses, no doubt frightening totally innocent and non-involved employees.

DOL-OIG then spend several hours rummaging through thousands upon thousands of documents, no doubt with little idea which document, personal papers, business papers were relevant to their investigation. The description of the documents to be seized in the warrant was so broad that it must have degenerated down to a guessing game. So much so, that personal property of Mr. Carpenter such as personal insurance policies, unrelated financial/business records were seized; boxes of irrelevant material was seized. On top of that, all the computers had their hard drives drained of any information, irrespective of its relevance to the search. Three plus years later, none of the electronically stored and copied documents that even the Government would concede was irrelevant has been returned to its owner or destroyed. Experience tells us the Government destroys nothing and returns very little.

The over reach in this case goes even further. In collusion with the IRS-CID, who itself has trampled on the Fourth Amendment by failing to return in a reasonable time all items seized beyond the scope of the 2010 warrant, turned over to DOL-OIG thousands of documents with no effort to determine the lawfulness of doing so. (They, themselves could have sought to suppress the search warrant, but of course, that will never happen.)

Instead, Mr. Carpenter's rights under the Fourth and Fifth Amendments have now been twice trampled upon. The only meaningful thing left to do is for this Court to put an end to these overreaching activities and suppress the fruits of both the 2010 and 2011 searches heretofore mentioned and suppress their use in any trial against Mr. Carpenter.

Defendant, Daniel Carpenter

By

Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed. Bar Ct00009
rbrown@bpslawyers.com

## CERTIFICATION

This is to certify that on September 15, 2014, a copy of the foregoing Motion was served by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System. Also sent to the following by U.S. postal mail:

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

Patrick Egan, Esq.
Fox Rothschild, LLP
2000 Market Street
Philadelphia, PA 19103

Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed. Bar  Ct00009