```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| UNITED STATES              :  | |
|                            :  | |
| v.                         :  | Case No. 3:13-CR-226(RNC) |
|                            :  | |
| DANIEL CARPENTER           :  | |

### RULING AND ORDER

Defendant Daniel Carpenter has filed four motions to dismiss the superseding indictment contending that (1) it fails to allege an offense, (2) all the counts are barred by the statute of limitations, (3) the prosecution is preempted by the McCarran-Ferguson Act and (4) venue is improper. For reasons that follow, the motions are denied.

I. Background

On December 13, 2013, a grand jury returned an indictment charging Carpenter and Wayne Bursey with wire fraud in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341, conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349, and aiding and abetting in violation of 18 U.S.C. § 2. Ind. (ECF. No. 1). On May 14, 2014, a superseding indictment was returned adding charges of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), illegal monetary transactions in violation of 18 U.S.C. § 1957, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Supersed. Ind. (ECF. No. 53).

The superseding indictment alleges that the defendants participated in an insurance fraud scheme involving stranger-

originated life insurance ("STOLI") policies.[1]  As the Second Circuit recently explained:

> A STOLI policy is one obtained by the insured for the purpose of resale to an investor with no insurable interest in the life of the insured – essentially, it is a bet on a stranger's life.  Notably, every relevant state's law provides that, after a life insurance policy has been issued, an insured may resell that policy to an investor, who would become the policy's beneficiary and assume payment of the premiums.  Thus, with respect to transferability, the difference between non-STOLI and STOLI policies is simply one of timing and certainty: whereas a non-STOLI policy might someday be resold to an investor, a STOLI policy is intended for resale from before its issuance.  While life insurers are required by law to permit resale of policies originally obtained for estate planning purposes, they are not obligated to issue policies intended for resale from the outset.
>
> STOLI policies became a popular investment in the mid 2000s for hedge funds and others eager to bet that the value of a policy's death benefits would exceed the value of the required premium payments.  In response, many insurance companies . . . adopted rules against issuing STOLI policies and took steps to detect them.

United States v. Binday, 804 F.3d 558, 565 (2d Cir. 2015).

In Binday, the court affirmed mail and wire fraud convictions of insurance brokers who induced insurers to issue life insurance policies based on applications indicating that the policies were for the buyers' estate planning when in fact the defendants intended to sell the policies to third-party investors.  Id.  On appeal, the defendants argued that because non-STOLI policies are freely transferable once they have been

---

[1] The acronym "STOLI" is also used to refer to a life insurance policy that is "stranger-owned" or "stranger-oriented."

issued, the insurers could have no reasonable expectation that a policy would not be sold to a third-party investor and thus there was no cognizable harm under the mail and wire fraud statutes. See id. at 572-74. However, evidence presented by the Government at trial showed that STOLI policies differ from non-STOLI policies in a number of ways that are material to underwriting decisions, specifically with regard to (1) life expectancy of the insured (shorter with STOLI), (2) premium payments (lower with STOLI), (3) lapse rates due to nonpayment (lower with STOLI) and (4) late payment of premiums as permitted by grace periods (higher with STOLI). See id. Viewing this evidence favorably to the prosecution, a reasonable jury could infer that the defendants' misrepresentations deprived the insurers of economically valuable information, which is a form of cognizable harm under the mail and wire fraud statutes. Id. at 574.

The superseding indictment in this case alleges a similar STOLI-based scheme to defraud life insurance companies. The defendants are alleged to have defrauded life insurance providers in connection with the purchase of universal life insurance policies within a "Plan and Trust." Supersed. Ind. ¶ 25. The defendants allegedly used the Plan and Trust to procure STOLI policies, which they intended to resell after two years, without disclosing the nature of the policies to the providers. Id. ¶¶ 30, 34, 36. Bursey signed the declaration of trust as president

of the "Plan Sponsor," which acted as trustee of the Plan and Trust.  Id. ¶ 22.  Carpenter controlled the Plan Sponsor, along with other "Subject Entities," which were housed at offices in Simsbury and Stamford, Connecticut.  Id. ¶¶ 2, 22.

The scheme alleged in the superseding indictment involved several steps.  First, insurance agents working on behalf of the Subject Entities recruited older persons to act as "straw insureds," often with the promise of free insurance for two years and a share of the profits from the sale of the policy.  Id. ¶ 26.  A "paper company" was often set up to enable a straw insured to participate in the Plan and Trust, sometimes without the straw insured's knowledge or consent.  Id. ¶ 27.  The agents then completed life insurance applications that contained misrepresentations concerning the insured's finances and motivation for procuring the policy, along with false denials concerning third-party funding of premiums, the possibility of a policy sale and the performance of life expectancy reports.  Id. ¶ 28.  The superseding indictment alleges that the fraudulent applications were "submitted and caused to be submitted" to the providers by Carpenter, Bursey and others.  Id. ¶ 38.  According to the superseding indictment, the defendants knew the applications contained material misrepresentations.  Id. ¶ 36.

In addition to alleging mail and wire fraud, the superseding indictment alleges that the defendant controlled entities that

transacted in the proceeds of the fraudulent scheme in violation of federal law.  Id. ¶¶ 136-42.

II. Discussion

    A. The Sufficiency of the Allegations

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974).  An indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975).  An indictment is sufficient if it alleges "the 'core of criminality' the Government intend[s] to prove." United States v. Rigas, 490 F.3d 208, 229 (2d Cir. 2007).  It need not detail all the information the Government will present at trial. See, e.g., United States v. Perez, 575 F.3d 164, 166-67 (2d Cir. 2009).

    1. Mail and Wire Fraud

"Because the mail fraud and the wire fraud statutes use the

5

same relevant language, we analyze them the same way." <u>United States v. Schwartz</u>, 924 F.2d 410, 416 (2d Cir. 1991).  The essential elements of both offenses are "(1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [or wires] to further the scheme." <u>Fountain v. United States</u>, 357 F.3d 250, 255 (2d Cir. 2004) (alterations in original).

Defendant asserts that each of the essential elements of mail and wire fraud is insufficiently pleaded here.  The Government responds that the superseding indictment adequately alleges the existence of a scheme to defraud the insurance providers of money or property, the materiality of the misrepresentations in the life insurance applications submitted by or on behalf of the straw insureds, and the defendant's knowing execution of the scheme by causing the use of the mails and wires.  I agree that all three essential elements are adequately pleaded.

The first element, a scheme to defraud, requires the Government to establish that the defendant possessed fraudulent intent. <u>United States v. Starr</u>, 816 F.2d 94, 98 (2d Cir. 1987). "It need not be shown that the intended victim of the fraud was actually harmed; it is enough to show defendants contemplated doing actual harm, that is, something more than merely deceiving the victim." <u>Schwartz</u>, 924 F.2d at 420.  "[T]he deceit practiced

6

must be related to the contemplated harm, and that harm must be found to reside in the bargain sought to be struck."  Id.

As in Binday, the superseding indictment alleges that the misrepresentations in the applications "created discrepancies between the benefits that the Life Insurance Providers reasonably anticipated from issuing the policies . . . and the actual benefits that the Providers received in doing so."  Supersed. Ind. (ECF. No. 53) ¶ 37.  In addition, the superseding indictment sets forth a number of ways in which the misrepresentations were material to the providers' underwriting decisions.  Id. ¶ 16 (earlier and greater payout of death benefits, less premium income, increased unreliability of projections, decreased cash flow and payout of large commissions).  As discussed above, similar allegations sufficed in Binday to support criminal liability for mail and wire fraud.

Defendant distinguishes Binday on the ground that he did not personally prepare or submit insurance applications containing misrepresentations.  He states that he never met any of the straw insureds and knew only one of the brokers.  He further states that he merely made loans to the Trust secured by a lien on the policy proceeds.  In assessing the validity of the superseding indictment, however, its allegations must be accepted as true. See United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985). Crediting the allegations, the defendant submitted applications

7

or caused applications to be submitted knowing they contained material misrepresentations.[2]

With regard to the second element of mail and wire fraud, it is well-established that the interests protected by these statutes include the interest of the victim in controlling his or her assets.  United States v. Carlo, 507 F.3d 799, 802 (2d Cir. 2007); United States v. Rossomando, 144 F.3d 197, 201 n.5 (2d Cir. 1998).  Thus, "cognizable harm occurs where the defendant's scheme 'den[ies] the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions.'" Binday, 804 F.3d at 570 (quoting Rossomando, 144 F.3d at 201 n.5).  As in Binday, this element is adequately alleged here.

Turning to the third element, the "in furtherance" requirement is satisfied when the mails and wires are used "incident to an essential part of the scheme." See Schmuck v. United States, 489 U.S. 705, 710-11 (1989) (quoting Pereira v. United States, 347 U.S. 1, 8 (1954)) (internal quotation marks omitted).  The superseding indictment alleges that insurance applications, money to pay premiums, and communications concerning money transfers were transmitted by mail and wire.  It further alleges that the applications, transfers of money and

---

[2] The superceding indictment also alleges that the defendant did other things in furtherance of the scheme.  See infra pp. 9-10.

communications concerning money transfers were integral to the success of the scheme.  Thus, the "in furtherance" requirement is also satisfied.

Defendant argues that each instance of fraud alleged in the superseding indictment was complete when the insurance application was submitted or, at the latest, when the policy was issued; that he had no knowledge of misrepresentations in the applications; and thus any use of the mails or wires on his part could not be in furtherance of the fraud.  As just discussed, however, the superseding indictment alleges that he submitted applications or caused them to be submitted knowing they were false.  Moreover, a defendant need not be personally involved in the use of the mails or wires in order to be convicted under these statutes; a defendant may be convicted if it was "reasonably foreseeable that the charged transmission would occur in the execution of the scheme."  See United States v. Bahel, 662 F.3d 610, 641-42 (2d Cir. 2011).  And "there is no requirement that mailings [or wirings] precede the fraud"; it is sufficient if post-fraud mailings or wirings further the scheme.  United States v. Slevin, 106 F.3d 1086, 1089-90 (2d Cir. 1996).

Finally, Carpenter argues that the indictment fails to allege facts showing his personal involvement in the scheme.  The superseding indictment alleges that he controlled the Subject Entities, Supersed. Ind. ¶¶ 2, 22, controlled the entities that

funded the policies in the Plan and Trust, id. ¶¶ 2, 30, signed documents regarding the funding agreements between the Funding Entities and the Outside Funder, id. ¶¶ 48, 53, 59, signed requests for disbursement of loaned funds to pay premiums, id. ¶¶ 54, 60, 82, initiated wires from funding entities to the Plan and Trust to pay premiums on insurance policies, id. ¶¶ 49, 66, 71, misrepresented the Plan and Trust to the Providers, id. ¶¶ 47, and submitted and caused to be submitted false life insurance applications, id. ¶ 38.  These allegations are more than sufficient.

    2.  <u>Money Laundering and Illegal Monetary Transactions</u>

Under 18 U.S.C. § 1956, "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of unspecified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity [commits a crime]."  18 U.S.C. § 1956(a)(1)(A)(i).  Section 1957 provides that: "[w]hoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity . . . [and does so] in the United States [commits a crime]."  18 U.S.C. §§ 1957(a), (d)(1).  Violations of the mail and wire fraud statutes are recognized as

"specified unlawful activity."  See 18 U.S.C. §§ 1956(c)(7)(A), 1961(1)(B).

The superseding indictment alleges that Carpenter violated these statutes by engaging in transactions involving the proceeds of two life insurance policies that were procured as part of the fraudulent scheme.  He contends that he did not know the proceeds constituted fruits of illegal activity and emphasizes that the insurance company paid only after disputing its obligation to do so.  Whether the Government can prove that he knew the proceeds constituted fruits of illegal activity is not an issue for the Court to resolve on a motion to dismiss the indictment.  For now, it is enough that the facts alleged are sufficient to state an offense under both statutes.  See, e.g., United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58 400738 1 in the Name of Ishar Abdi & Barbara Abdi, 255 F. Supp. 2d 56, 71 (E.D.N.Y. 2003) ("[I]n its complaint, the government alleges more than mere spending of money; it alleges an intent to conceal the source, ownership or control of the funds put into the Dime Savings Bank Account and the defendant properties.  Whether or not the Government ultimately will prevail on this claim is not presently before the court, but the facts alleged are sufficient to state a cause of action under § 1956.").

    3.  Conspiracy

Carpenter is charged with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  Both conspiracy statutes impose liability on "[a]ny person who attempts or conspires to commit any offense under [or, defined in] this chapter [or section]."  18 U.S.C. §§ 1349, 1956(h). Neither conspiracy charge requires proof of an overt act.  See Whitfield v. United States, 543 U.S. 209, 219 (2005)(conviction for money laundering under 18 U.S.C. § 1956(h) does not require proof of an overt act); United States v. Kazarian, No. 10 Cr. 895(PGG), 2012 WL 1810214, at *24 n.12 (S.D.N.Y. May 18, 2012) ("Section 1349 contains no overt act requirement, and courts have rejected the argument that such a requirement should be read into the statute.").

Defendant argues that the allegations of the superseding indictment fail to allege an unlawful agreement between him and any of the people involved in submitting false applications to the providers.  However, the superseding indictment alleges that from 2006 through 2013, defendants "did combine, conspire, confederate, and agree together and with each other to commit mail and wire fraud [and money laundering] as described in this Indictment."  Supersed. Ind. (ECF. No. 53) ¶¶ 121, 135.  The count alleging conspiracy to commit mail and wire fraud incorporates by reference the allegations of the mail and wire

fraud counts, id. ¶ 120, and the count alleging conspiracy to commit money laundering details additional facts about the money laundering scheme, id. ¶ 135.  This is sufficient to adequately allege violations of both conspiracy statutes.

    4.   Aiding and Abetting

With regard to aiding and abetting, defendant denies that he aided anyone involved in the application process.  However, the superseding indictment alleges that he "work[ed] for and on behalf of the Subject Entities, [and] did knowingly cause to be transmitted, and aided and abetted others to cause to be transmitted" certain interstate wires and mails.  Supersed. Ind. (ECF. No. 53) ¶¶ 49, 54, 66, 71, 77, 82, 89, 91, 98, 104, 106, 112, 114, 119, 128, 137, 139.  Viewed in context, these allegations are sufficient to state the elements of aiding and abetting liability.

Defendant also argues that he cannot be charged as both a principal and an accessory.  It is well-established, however, that a defendant may be charged under multiple theories of liability for the same conduct.  See United States v. Ferguson, 676 F.3d 260, 279 (2d Cir. 2011) ("The jurors were presented with four theories of liability: principal, aiding and abetting, willfully causing, and Pinkerton.").  So long as an indictment for aiding and abetting under 18 U.S.C. § 2 is "accompanied by an indictment for a substantive offense," it suffices to state an

13

offense.  United States v. Campbell, 426 F.2d 547, 553 (2d Cir. 1970).

    B.   Statute of Limitations

Carpenter argues that each count in the superseding indictment is barred by the statute of limitations.  The bringing of an indictment tolls the statute of limitations "as to the charges contained in the indictment."  United States v. Grady, 544 F.2d 598, 601 (2d Cir. 1976).  For charges in a superseding indictment to retain the limitations period of the original indictment, "the original indictment must be validly pending, and the super[s]eding indictment must not materially broaden or substantially amend the charges."  United States v. Rutkoske, 506 F.3d 170, 175 (2d Cir. 2007); compare United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993) (differences between the indictments did not materially broaden or substantially amend the charges against the defendant), with United States v. Ratcliff, 245 F.3d 1246, 1256 (11th Cir. 2001) (differences between the indictments did materially broaden or substantially amend the charges).

The mail and wire fraud statutes carry a five-year statute of limitations that runs from the date of the charged mailing or wiring.  United States v. King, No. 98-CR-91A, 2000 WL 362026, at *16 (W.D.N.Y. Mar. 24, 2000).  The money laundering statutes have the same limitations period, as do the conspiracy statutes at

14

issue here.[3]

Counts 1 through 33 of the superseding indictment are nearly identical to counts 1 through 33 of the original indictment and therefore retain its limitations period.[4]  To be timely, these counts must allege conduct that occurred on or after August 9, 2008.[5]  The earliest mailing or wiring alleged in these counts is August 29, 2008,  Supersed. Ind. (ECF. No. 53) ¶ 60.  Thus, the fraud counts are timely.

The money laundering counts added in the superseding indictment, counts 34 through 57, do not relate back to the original indictment.  To be timely, these counts must allege conduct occurring on or after January 10, 2009.  The earliest of the charged transactions is May 21, 2009.  Id. ¶ 35.  Accordingly, these counts are also timely.

The conspiracy counts allege that the conspirators "contemplate[d] a continuity of purpose and a continued performance of acts," and the indictment alleges that each

---

[3] When, as here, the applicable "conspiracy statute does not require proof of an overt act," the court will presume, absent contrary evidence, that a conspiracy exists indefinitely "if [it] contemplate[d] a continuity of purpose and a continued performance of acts." United States v. Spero, 331 F.3d 57, 60 (2d Cir. 2003).

[4] The sole difference is one additional sentence in Paragraph 6, which was added for background purposes and does not broaden or amend the substance of the charges.

[5] The original indictment was returned on December 12, 2013. But Carpenter waived the limitations period from August 9, 2013 through December 11, 2013.

conspiracy continued from 2006 through 2013, making the conspiracy counts timely as well.

### C. The McCarran-Ferguson Act

Carpenter argues that the superseding indictment must be dismissed based on the McCarran-Ferguson Act ("FMA"), which provides:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b).

In assessing whether a federal prosecution violates the FMA, courts consider whether the prosecution directly conflicts with state regulation, frustrates state policy or interferes with a state's administrative regime. Humana Inc. v. Forsyth, 525 U.S. 299, 310 (1999). The FMA does not bar federal prosecution for fraud just because the fraud involves the business of insurance. See, e.g., United States v. Redcorn, 528 F.3d 727, 737 (10th Cir. 2008) (federal prosecution for healthcare fraud, mail fraud and wire fraud not barred by Act; "we are skeptical that a federal criminal statute would ever be preempted by McCarran-Fergsuon unless it were to forbid something affirmatively required by state insurance law.").[6]

---

[6] Carpenter cites United States v. O'Brien, 501 F. Supp. 140 (E.D. Pa. 1980), in which the court relied on the FMA to dismiss an indictment alleging mail and wire fraud. O'Bryan was decided

Defendant provides no basis for concluding that this prosecution conflicts with, frustrates, or interferes with any state regulation, policy or administrative regime.  To the contrary, the fraudulent conduct alleged in the superseding indictment is criminal under Connecticut law.  See Conn. Gen. Stat. § 53a-215 ("A person is guilty of insurance fraud when . . . ."); § 38a-465j ("A person shall not commit a fraudulent life settlement act . . . .").  And a state statute discussing STOLI fraud states: "Nothing in this part shall be construed to: (1) Preempt the authority or relieve the duty of other law enforcement or regulatory agencies to investigate, examine and prosecute suspected violations of law."  Conn. Gen. Stat. § 38a-465j(h).

    D.   Venue

Finally, Carpenter argues that venue is improper because the alleged fraud did not occur in Connecticut.  The connection with Connecticut is insufficient, he contends, because the straw insureds and brokers who submitted false insurance applications lived in places as far away as California and Texas, and the crime of fraud was substantially completed when the false

---

before Humana and has since been called into question by United States v. Stewart, 955 F. Supp. 385 (E.D. Pa. 1997), in which the court denied a motion to dismiss based on the FMA when the defendant was charged with violations of RICO, mail fraud and wire fraud.  See id. at 391 ("[The FMA] does not shield a person accused of criminal conduct in violation of the laws of the United States").

17

applications were submitted.

Under 18 U.S.C. § 3232, venue lies in the district "in which [the] offense [was] committed." Id.  If the offense took place in several districts, prosecution is proper in any district in which some part of the offense conduct occurred. <u>United States v. Potamitis</u>, 739 F.2d 784, 791 (2d Cir. 1984).  "Where venue is challenged on a pre-trial motion to dismiss, the Government's burden is limited to showing that the indictment alleges facts sufficient to support venue." <u>United States v. Peterson</u>, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005).  Thus, to withstand a motion to dismiss, an indictment need only "allege[] on its face that the crimes occurred in the venue where the case is brought." <u>United States v. Baldeo</u>, No. 13 Cr. 125 (PAC), 2013 WL 5477373, at *5 (S.D.N.Y. Oct. 2, 2013).

Each count of the superseding indictment states that the charged offense took place "in the District of Connecticut and elsewhere" and that each of the mailings or wires was sent from or initiated in Connecticut.  More is not required to support venue in this District.

III. <u>Conclusion</u>

Accordingly, the motions to dismiss the indictment are hereby denied.

So ordered this 21st day of December 2015.

18

```
                          /s/ RNC
                     Robert N. Chatigny
                United States District Judge
```