**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:13 CR 226 (RNC) |
| | ) | |
| DANIEL E. CARPENTER | ) | |
| | ) | JULY 24, 2017 |

**NOTICE OF SUPPLEMENTAL AUTHORITY**
**RE: MOTION FOR RECONSIDERATION**
**CONCERNING MOTION TO SUPPRESS**

**PRELIMINARY STATEMENT**

Mr. Carpenter as the defendant in the above captioned case respectfully asks this Court to take judicial notice of Judge Nathan's recent decision in *United States v. Benjamin Wey, et al.,* 15-CR-0611 (AJN), where Judge Nathan granted the defendant's motion to suppress in its entirety, and to accept this Notice of Supplemental Authority as a Supplement to Mr. Carpenter's current Motion for Reconsideration of this Court's denial of Mr. Carpenter's Motion to Suppress, **See Doc. No. 155.**

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW

100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

Please see the <u>New York Times</u> article describing Benjamin Wey's legal victory attached as Exhibit One. Judge Nathan pointed out six separate violations of the Fourth Amendment in her 96 page opinion, and she felt that the agents executing the raid were not entitled to the "good faith" exception of *United States v. Leon*, 104 S.Ct. 3405 (1984) because the search warrant affidavit was not attached to the search warrant as required by law in the Second Circuit. Therefore, Mr. Carpenter respectfully asserts that all of the constitutional defects in the search and seizure of Benjamin Wey's office are all present in both raids of 100 Grist Mill Road, on April 20, 2010 and May 26, 2011. Neither Search Warrant lists any crime on the face of the Warrant and therefore each Warrant is constitutionally defective on its face according to both Second Circuit precedent and the Supreme Court's decision in *Groh v. Ramirez*, 124 S.Ct. 1284 (2004). (See Search Warrant from Raid of April 20, 2010 attached as Exhibit Two and Search and Seizure Warrant from May 26, 2011 attached as Exhibit Three). This is why Judge Nathan ruled that the "good faith" exception in *Leon* did not apply and the balance of making sure the government does not do this again outweighed the loss to the government of the evidence in Mr. Wey's prosecution under the balancing test of *Herring v. United States*, 129 S.Ct. 695 (2009). Therefore, since each factor listed by Judge Nathan in *Wey* is present in the two unlawful seizures of 100 Grist Mill Road – and Mr. Carpenter would say that the infractions in *Wey* are nothing compared to the violations in his case – Mr. Carpenter respectfully asks that the Court supplement his Motion for Reconsideration with notice of this case.

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

## I.    THE SEARCH WARRANTS IN THIS CASE LACKED PARTICULARITY

As Judge Nathan stated in *Wey,* the Second Circuit has recognized that to comport with

Fourth Amendment's particularity requirement, the **search warrant itself**, and not the

Application or the Agent's Affidavit which were not attached in either raid in this case, must

satisfy three specific criteria:

> First, it must "identify the specific offense for which the police have established probable
> cause." *Galpin,* 720 F.3d at 445; ("[F]or a warrant to meet the particularity requirement, it
> must identify the alleged crime for which evidence is sought."); *United States v. George*, 975
> F.2d 72, 75–76 (2d Cir. 1992) **(warrant permitting seizure of evidence "relating to the
> commission of a crime" was constitutionality infirm because "[n]othing on the face of
> the warrant tells the searching officer for what crimes the search is being undertaken").**
> Second, the warrant is required to "describe the place to be searched." *Galpin,* 720 F.3d at
> 445–46. And third, it must **"specify the items to be seized by their relation to designated
> crimes."** Id. at 446 (internal quotation marks omitted) (citing, inter alia, *United States v.
> Buck,* 813 F.2d 588, 590–92 (2d Cir. 1987) (warrant authorizing seizure of "any papers,
> things or property of any kind relating to [the] previously described crime" was insufficiently
> particularized insofar as it "only described the crimes—and gave no limitation whatsoever on
> the kind of evidence sought")); *United States v. Rosa,* 626 F.3d 56, 62 (2d Cir. 2010)
> **(warrant "defective in failing to link the items to be searched and seized to the
> suspected criminal activity"** *United States v. Wey,* --- F.Supp.3d ---- (2017) citing *United
> States v. Ulbricht,* 858 F.3d 71, 98-99 (2d Cir. 2017).  (Emphasis added.)

Judge Nathan had no problem finding that the warrants in *Wey* failed the "particularity"

test because no suspected crimes were listed on the face of the warrant – just as both Warrants in

this case were constitutionally defective:

> **Under the settled Circuit law set forth above, failure to reference the suspected
> crimes would alone be enough to render the Warrants insufficiently particularized.**
> See 650 Fifth Ave., 830 F.3d at 99 ("for a warrant to meet the particularity requirement, it
> must identify the alleged crime for which evidence is sought"); *George,* 975 F.2d at 76

(warrant permitting search of evidence "relating to the commission of a crime" lacked particularity because "[n]othing on the face of the warrant tells the searching officer for what crime the search is being undertaken"); see also *United States v. Romain*, —— Fed.Appx. ——, ——, 2017 WL 442175, at *1 (2d Cir. 2017) (Summary Order) ("[T]he government concedes that the warrant was facially deficient for failing to reference the criminal statutes that [defendant] was accused of violating even though the supporting document did contain that information."). (Emphasis added.)

Therefore, because neither Warrant in this case states or even suggests a crime or the violation of any statute, each Warrant in this case is constitutionally defective on its face and the government should concede that fact in this case as it has done in several cases cited above.

## II.    THE SEARCH WARRANTS IN THIS CASE WERE BOTH OVERBROAD

Judge Nathan recognizes that the doctrine of overbreadth represents the intersection of the principles of particularity and probable cause.  There must be "probable cause" for each and every document taken in a search.  In *Wey*, the officers took medical records and school report cards.  In this case, agents took Attorney-Client Privileged documents from Mr. Carpenter's Boston case, his homeowners policy, and many of his personal tax returns – none of which were related to the allegations supporting the two search warrant in this case:

Thus, "a warrant is overbroad if its 'description of the objects to be seized ... is broader than can be justified by the probable cause upon which the warrant is based.'" *United States v. Lustyik*, 57 F.Supp.3d 213, 228 (S.D.N.Y. 2014) (quoting *Galpin*, 720 F.3d at 446); see also *Ulbricht*, 858 F.3d at 102 ("breadth and particularity are related but distinct concepts" and a "warrant may be broad, in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material,"

-4-

without necessarily "**violating the particularity requirement**"); *Zemlyansky*, 945 F.Supp.2d at 464 ("In determining whether a warrant is overbroad, courts must focus on 'whether there exists probable cause to support the breadth of the search that was authorized.' ") (quoting *Hernandez*, 2010 WL 26544, \*8).
See *United States v. Wey*, --- F.Supp.3d ---- (2017).  (Emphasis added.)

Because both Warrants in this case allowed the seizure of hundreds of boxes of

documents with no linkage to any crime, and without linkage to any suspected criminal conduct,

this is a textbook case of a warrant being overbroad because just as in *Wey,* the Warrants here

broadly authorized the seizure of all "financial records, notes, memorandums, records of

communications, correspondence..." See *Wey* at 7.

> As noted above, "**breadth and particularity are related but distinct concepts.**" *Ulbricht*, 858 F.3d at 102. The former issue is "whether the items listed as 'to be seized' in the warrant were overboard because they lacked probable cause" and the second is "**whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers.**" *Hernandez*, 2010 WL 26544, at \*7 (citations omitted); see also Cohan, 628 F.Supp.2d at 359 ("**A warrant ... can be unconstitutionally infirm in two conceptually distinct but related ways: either by seeking specific material as to which no probable cause exists, or by giving so vague a description of the material sought as to impose no meaningful boundaries.**"). For many of the same reasons set forth above, the NYGG Warrant and the Apartment Warrant are constitutionally overbroad. Specifically, owing in large measure to their failure to impart meaningful guidelines to the searching agents (a particularity problem), the Warrants purport to authorize the seizure of, essentially, all documents from NYGG and the Wey Apartment. As demonstrated in the foregoing discussion of the all-records exception, however, such authorization exceeds the scope of the probable cause showing submitted to the Magistrate Judge. That is an independent (if related) overbreadth problem. (Emphasis added.)

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW

100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

Thus because there were hundreds of boxes taken in each raid that had absolutely no relation to even the suggestions of criminal conduct, the Warrants in this case were even more "overbroad" than the warrants in *Wey.*

### III.   THE WARRANTS IN THIS CASE DID NOT LIMIT WHAT ELECTRONICALLY STORED INFORMATION WAS TO BE SEIZED

Both Warrants in this case targeted the servers at 100 Grist Mill Road despite the fact that there were a number of different businesses not targeted or named in the Warrants.  When electronically stored information (ESI) is involved, the particularity requirement is enhanced not diminished as it was in this case.  As Judge Nathan described it in *Wey,* when a warrant authorizes the seizure of ESI, it implicates at least two additional considerations for the government to meet:

> First, as the Second Circuit has recognized, "**[w]here ... the property to be searched is a computer hard drive, the particularity requirement assumes even greater importance.**" *Galpin*, 720 F.3d at 446. That is because the "seizure of a computer hard drive, and its subsequent retention by the government, can give the government possession of a vast trove of personal information about the person to whom the drive belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure." United States v. *Ganias*, 824 F.3d 199, 217 (2d Cir. 2016) (en banc ). As such, "**[t]he potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive is enormous**"—a "**threat [that] is compounded by the nature of digital storage.**" *Galpin*, 720 F.3d at 447. Indeed, the Government, once it has obtained authorization to search a hard drive, may in theory "claim that the contents of every file it chose to open were in plain view and, therefore, admissible even if they implicate the defendant in a crime not contemplated by the warrant," thus presenting a "'serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant.'" Id.

-6-

(quoting United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1176 (9th Cir. 2010)) (en banc ) (per curiam ); cf. *Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 2489–91, 189 L.Ed.2d 430 (2014) (recognizing that cell phones "differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person" owing to their **"immense storage capacity"** and their ability to "contain[ ] in digital form" both "many sensitive records previously found in the home" and "a broad array of private information never found in a home in any form—unless the phone is"); *Ganias*, 824 F.3d at 231 (Chin, J., dissenting) (noting that "[v]**irtually the entirety of a person's life may be captured as data" on a computer or smartphone). Accordingly, a "heightened sensitivity to the particularity requirement in the context of digital searches"** is necessary. *Galpin*, 720 F.3d at 447. There is also the matter of the execution of a warrant targeting electronically stored information. Under Federal Rule of Criminal Procedure 41(e)(2)(B), a warrant may— as the Warrants at issue did here—"authorize the seizure of electronic storage media or the seizure or copying of electronically stored information." Fed. R. Crim. P. 41(e)(2)(B). The Rule provides that "[u]nless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant." Id. Although **"there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence falls within the scope of a warrant," courts have recognized that "the Fourth Amendment requires the government to complete its review, i.e., execute the warrant, within a 'reasonable' period of time."** *Metter*, 860 F.Supp.2d at 215 (collecting cases); see also *United States v. Alston*, 15–cr–435, 2016 WL, at *3 (S.D.N.Y. Apr. 29, 2016) ("While Rule 41 prescribes no particular time period for data extraction in these circumstances, the time needed to complete off-site copying or review is subject to the rule of reasonableness."); *Lustyik*, 57 F.Supp.3d at 230 ("[l]ike all activities governed by the Fourth Amendment, the execution of a search warrant must be reasonable" and "[l]aw enforcement officers therefore must execute a search warrant," including when applicable review of recovered electronic communications, "within a reasonable time") (Emphasis added.)

This deficiency, while concerning under any circumstances, is only exacerbated by the fact that the **Warrants target, in significant measure, the contents of electronic devices, such as computers, internal and external hard drives**, and smartphones. As the Court of Appeals observed just days ago, especially given the practical risk that **"every warrant for electronic information will become, in effect, a general warrant," a warrant that "lack[s] meaningful parameters on an otherwise limitless search of a defendant's electronic media"**—including in its "fail[ure] to link the evidence sought to the criminal activity supported by probable cause"—does "not satisfy the particularity requirement."

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW

100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

Ulbricht, 858 F.3d at 99–100 (internal quotation marks and alterations omitted) (quoting *Galpin*, 720 F.3d at 447; *Rosa*, 626 F.3d at 62). (Emphasis added.)

In sum, the Warrants authorize the seizure of sweeping categories of materials, regardless of their potential connection (or lack thereof) to any suspected criminal activities and limited only by the requirement that they relate in some generalized way to the owner/occupant of the very premises subject to search. **The conferral of such unfettered discretion on the executing officers, particularly in light of the Warrants' independent failure to identify any crime under investigation, is inconsistent with the Fourth Amendment's particularity requirement.** (Emphasis added.)

Thus, Judge Nathan does an excellent summation of all of the separate and distinct constitutional violations in this case by the government's unreasonable and non-particularized seizure of ESI evidence from 100 Grist Mill Road.

## IV.    THE SEARCH WARRANTS IN THIS CASE LACKED ANY TEMPORAL LIMITATION

Judge Nathan also had no problem finding that the warrants in *Wey* were also constitutionally defective because they lacked any "temporal limitation" or in other words, the search warrants themselves did not state any time frame limiting the investigation or search on the face of the warrant. Similarly, in this case, despite the fact that Search Warrant Affidavits listed specific dates, times, and places, the Search Warrant Affidavits were not attached to the Warrants so both raids on 100 Grist Mill Road suffered from the fact that documents were taken during both raids dealing with innocent conduct in the 1990's or even the 1980's when there should have been a "temporal limitation" or time frame of 2007-2009, for example, as to the Charter Oak Trust.

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

As Judge Nathan stated in *Wey*:

> Still, the **"absence of such a limit reinforces" the Court's conclusion that the Warrants are insufficiently particularized.** *Zemlyansky*, 945 F.Supp.2d at 459–60; *Vilar*, 2007 WL 1075041, at \*23 (the **"lack of particularity is only compounded by the absence of any date restriction on the items to be seized"**); *United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 58 (D. Conn. 2002) (recognizing a **"temporal limitation"** as **"one indicia of particularity"**). (Emphasis added.)

Once again, even a cursory glance at the Warrants in this case attached as Exhibit Two and Exhibit Three, proves that the Search Warrants in this case not only fail to state a crime, but they also fail to state any time period or time frame to limit the search for evidence pertaining to any alleged criminal activity that was the subject of the search and seizure in the first place.

Perhaps the Court could hold a status conference or a hearing with the government, where the government could concede the facts that the Warrants in this case are both facially defective because they fail to list any crime and they fail to list any time frame limiting the search and seizure.

## V.     THE CONDUCT OF BOTH RAIDS WAS UNREASONABLE

The Court is well aware that Mr. Carpenter has two substantial *Bivens* actions in process against the government for unreasonable conduct in the raid of April 20, 2010 in front of Judge Underhill and for the raid of May 26, 2011 in front of Judge Bolden.  There is no *Bivens* action described in the *Wey* case, yet in addressing the "matter of overseizure" and claiming that the

-9-

agents in *Wey* clearly overseized many documents that were personal in nature that should not

have been seized but by doing so also rendered the search and seizure in *Wey* unreasonable,

Judge Nathan states the following:

> Finally, **there is the matter of overseizure**. The Rosa Court took care to emphasize that there was "no evidence that the team of officers searched for, or seized, any items that were unrelated to the crimes for which probable cause had been shown." 626 F.3d at 65. Notwithstanding the Government's zealous efforts to persuade the Court otherwise, the same simply cannot be said here. (Emphasis added.)
>
> **The agents seized, between the two search locations, a variety of hard-copy materials purely personal in nature, or otherwise plainly outside the scope of the suspected securities and wire fraud scheme described in the Affidavits.** As discussed above, these included medical records, prescription documents, X-rays, health care directives, educational records and scholastic mementos, divorce records, resumes, family photographs, recreational schedules, and other things. To be sure, and as the Government emphasizes, several such items do appear to have been seized as part of larger sets of materials that could have been impractical to sort onsite (for example, the trash bag referenced above, which took something of a star turn in the Government's Hearing presentation) and thus were removed wholesale for offsite inspection. Gov't Supp. Opp. at 17. **Even crediting such asserted logistical necessity as an explanation for some of these seizures, however, the record reflects that it does not apply to many others.** See, e.g., Def. Supp. Br. Ex. A (identifying examples); see also Gov't Ex. 14 (Evidence Recovery Log from Apartment Search noting seizure of multiple sets of materials identified onsite as "personal" documents, such as "school" and "immigration" records and "estate planning" documents). (Emphasis added.)

Suffice it to say, that between the previous Rule 41(g) Motions and the two major *Bivens*

actions, Mr. Carpenter has clearly gone on record that the overseizure in this case was far more

egregious than the overseizure in *Wey* and the conduct in the commando raids in this case were

far more unconstitutional and unreasonable than the conduct by the agents in *Wey*. Should the

Court require detailed examples from the Inventory List of both raids, Mr. Carpenter would be

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW

100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

happy to provide the Court with concrete examples, but the overseizures and unreasonable

conduct in the searches in this case dwarf the "unreasonableness" found by Judge Nathan in *Wey*

or any other suppression case mentioned in the *Wey* decision.

## VI.   THE GOVERNMENT FAILED TO REVIEW OR RETURN THE PROPERTY TAKEN IN A TIMELY MANNER

Judge Nathan also criticizes the government for not returning any of the documents despite

completion of the pertinence review shortly after the initial seizure and this is also a potential

constitutional violation in and of itself:

> To date, however, essentially none of the originals have been returned to NYGG or the Weys, Hearing Tr. 335:4–11, despite the requests of counsel—a potential constitutional violation in and of itself. See, e.g., *United States v. Tamura*, 694 F.2d 591, 596–97 (9th Cir. 1982) ("We likewise doubt whether the Government's refusal to return the seized documents not described in the warrant was proper."); see also *Ganias,* 824 F.3d at 230 (Chin, J., dissenting) (in cases where offsite review was required because "potentially relevant documents [were] interspersed through a large number of boxes or file cabinets," generally "non-responsive documents were to be returned after the relevant items were identified").

> **Perhaps more troubling than either the initial seizure or the continuing retention, however, are the efforts of the Government and its Hearing witnesses to leverage the inappropriately expansive terms of the Warrants into strained explanations of why these materials were in fact properly seized.** See, e.g., Hearing Tr. 56:17–57:7, 58:24–59:5, 59:25– 60:7, 167:10–18, 304:24–305:3; Opp. at 40. Indeed, in maintaining, as discussed above, that children's school records, medical prescriptions, divorce records, and decade-old clippings from the sports section of the college newspaper among other things fell within the scope of the Warrants because they purportedly bore vague connections to the Weys' personal histories and finances, the Government and its agents leave the Court to find that much—perhaps even most—of the overseizure was not the result of expediency, mistake, or even simple negligence. To the contrary, it seems, this material was reviewed, and a conscious effort was made to deem patently unresponsive materials responsive to the Warrants. **Its presence in the Search fruits thus suggests that the execution teams**

-11-

**affirmatively wielded the nearly unfettered discretion afforded them by the Warrants' expansive terms to appropriate documents that were perhaps of interest to some broader investigation of the Weys' lives and finances but that bore little or no discernible connection to the securities fraud** probable cause showing actually submitted to the Magistrate Judge. See, e.g., Hearing Tr. 276:14–20 (Agent McGuire testifying that it was "very important" that the FBI gain a better of understanding through the Searches of the Wey family's "very complex" "financial arrangements"). Put another way, it appears to be, as much as anything else, a product of the intentional execution of **what amounted to general warrants**. (Emphasis added.)

Mr. Carpenter believes that the "unreasonableness" of the searches and seizures in *Wey* pale in comparison to the armed commando raid and overseizures of 100 Grist Mill Road in this case. Moreover, if the delay in *Wey* was unconstitutionally unreasonable, then Mr. Carpenter respectfully asserts that the seven year delay in the IRS raid and the six year delay in the DOL Raid of 100 Grist Mill Road constitutes separate and distinct Fourth Amendment violations in and of themselves even assuming that the Warrants in this case were not constitutionally defective on their face – which of course Judge Nathan would conclude that they were. Mr. Carpenter just wants to make it clear that Judge Nathan found six separate constitutional violations in *Wey,* which are all dramatically apparent in this case and in these facially defective Warrants. Therefore, if the Court were to conclude that individually each of these separate Fourth Amendment violations was not enough to require suppression of the evidence on its own, it is respectfully submitted that cumulatively these six different constitutional violations require that all of the evidence that was seized must be subject to suppression.

-12-

## VII.   THE GOVERNMENT'S FAILURE TO RETURN THE ELECTRONICALLY STORED INFORMATION IS COMPOUNDED BY THE GOVERNMENT'S CONTINUING SEARCHES OF THE DATA

Recently at oral argument before the Second Circuit in the appeal of Judge Underhill's decision in Mr. Carpenter's favor in his *Bivens* action, the government conceded that between both raids of 100 Grist Mill Road, there are only perhaps 12 boxes of the many hundreds of boxes taken that are relevant to the ongoing criminal proceedings in this case. The Second Circuit questioned the government as to why it has not retuned all of the other property unrelated to the investigation. But this case is not a *Bivens* action and Mr. Carpenter's Fourth and Fifth Amendment rights have been clearly violated on a number of different levels. In reading Judge Nathan's decision in *Wey* where she cites heavily to the Second Circuit's decisions in *Rosa, Galpin, Ganias,* and most recently *Ulbricht,* it becomes clear that perhaps the most disturbing aspect of the *Wey* case is that the government was still doing electronic searches of Wey's office computers long after the search was completed. As the Court knows very well, even during Mr. Carpenter's trial the government was doing electronic searches of the database six years after the raid of 2010. Of the 115 Exhibits mentioned in the Court's June 6, 2016 Opinion, more than 60 Exhibits are emails unlawfully seized in the unreasonable commando raids of 100 Grist Mill Road. The government most recently argued in July of 2017 that they still need to hold onto all of this material in case there is a new trial in the Carpenter case.

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW

100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

This is what Judge Nathan had to say about not just delaying the return of property in the

*Wey* case, but the government's continuing search of electronically stored evidence years after

the initial search and seizure:

> This case presents still another factor, outside of the Rosa quartet, for evaluation in determining the Government's level of culpability and, correspondingly, its susceptibility in this context to deterrence. And it is one worth emphasizing: belying any argument that it sought to limit execution of the Warrants according to the parameters of the applications, the **Government evinced no hesitation to subject the electronic Search fruits to continuing and, at least to some extent, expanding searches as its investigation and charging theories developed over the months and years** following the initial Searches and preceding Wey's indictment. (Emphasis added.)

> Furthermore, the Government cites, and the Court is aware of, no authority suggesting that simply because it has retained all originally searchable electronic materials, the Government is permitted to return to the proverbial well months or years after the relevant Warrant has expired to make another sweep for relevant evidence, armed with newly refined search criteria and novel case theories.

> Perhaps most plainly problematic on this score are Agent Miller's 2015 searches which, as noted, covered all documents in the FBI databases, including those materials already sorted out as impertinent two years earlier. Clearly, as the defense urged at oral argument, additional physical searches in 2013 or 2015 of hard-copy documents judged irrelevant and left behind during the NYGG Search or the Apartment Search would have been presumptively impermissible—new search terms or not—in the absence of a fresh warrant. Cf. *Ganias*, 824 F.3d at 212–213 (recognizing that, though perhaps "imperfect," the analogy between searches of physical files and electronic files "has some force, particularly as seen from the perspective of the affected computer user," and "ha[s] some relevance" to the Fourth Amendment inquiry"). Indeed, the proper analogy to help appreciate the nature of the agents' conduct here is not the Government seizing, for example, a hard-copy notebook deemed responsive to a warrant, retaining it, and later returning to that notebook for follow-up searches as its investigation developed. Instead, **Agent Miller's searches are akin to the Government seizing some hardcopy notebooks while leaving others it deemed unresponsive behind, and then returning to the premises two years later to seize the**

-14-

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW

100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

**left-behind notebooks** based on investigative developments but without seeking a new warrant. (Emphasis added.)

Clearly the delays in this case are more egregious than the delays in *Wey* and the government has made it clear that they will continue to mine the 100 Grist Mill Road servers even though it is seven years after the initial raid.

## VIII.   EACH OF THE CONSTITUTIONAL VIOLATIONS IN THIS CASE REQUIRES THAT THE MOTION TO SUPPRESS BE GRANTED

In her *Wey* opinion, Judge Nathan does a brilliant job in parsing *Rosa, Leon,* and *Herring* to determine that the "good faith" exception of *Leon* does not apply citing *Groh v. Ramirez,* 124 S.Ct. 1284 (2004) because the search warrant affidavits were not attached to the warrants in *Wey* as required by Second Circuit law. She goes on to state that none of the *Rosa* exceptions applied because just as in this case, different agents conducted the search and there were no expedient circumstances. Finally Judge Nathan does the balancing as required under *Herring* and finds that it is necessary to deter the government from this type of conduct in the future and the loss of the evidence is this case is well worth the cost.

Unlike in *Wey,* the Court knows that Mr. Carpenter filed several Rule 41(g) Motions for the return of property and two major *Bivens* actions that are still pending with the action against Agent Allen and other DOL Agents stayed pending this Court's decision on the Motion to

-15-

Suppress and the Motion for Reconsideration of the Court's June 6, 2016 decision.  Therefore,

Mr. Carpenter respectfully submits this Supplemental Motion and Notice of Supplemental

Authority of both the *Wey* decision and the Second Circuit's recent decision in *Ulbricht* that is

referenced by Judge Nathan in *Wey* as to the constitutional defects in the unlawful search and

seizure of 100 Grist Mill Road to aid the Court in reviewing its previous decisions.

<div style="margin-left:40%">

**Respectfully submitted,**
Defendant, Daniel E. Carpenter


By

Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed. Bar  Ct00009
rbrown@bpslawyers.com

</div>

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW

100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

# EXHIBIT ONE:
## NEW YORK TIMES ARTICLE
## ON BENJAMIN WEY CASE

Case 3:13-cr-00226-RNC   Document 259   Filed 07/24/17   Page 18 of 27

**The New York Times** |

# DealB%k WITH FOUNDER ANDREW ROSS SORKIN

## Mishandle a Fraud Search, and All That Fine Evidence Could Be for Nothing

White Collar Watch

By PETER J. HENNING    JUNE 26, 2017

A search conducted at a home or business can feel like a terrible violation of privacy. When a score of agents tramp through the premises taking just about everything that isn't nailed down, the question is whether that comports with the Fourth Amendment's protection "against unreasonable searches and seizures."

Judge Alison J. Nathan of the Federal District Court in Manhattan delivered a stern warning to prosecutors when she granted a motion by Benjamin Wey, a New York City financier, to suppress everything seized during searches of his office and home in 2012. The New York Times reported that the ruling, if upheld, could deal a significant blow to proving charges filed in 2015 accusing him of stock manipulation and laundering the proceeds from selling shares, because it is unclear what other documentary evidence the government has.

Because the objects of the search are not easily identifiable like guns or drugs, the challenge in white-collar-crime investigations is to draft a warrant that is not so broad that it empowers agents to seize virtually any document or search every computer file because it might be related to nebulous misconduct.

The Fourth Amendment requires that a warrant "particularly" describe the place to be searched and things seized. This requirement was a response to the

7/20/2017
Case 3:13-cr-00226-RNC   Document 259   Filed 07/24/17   Page 19 of 27
Mishandle a Fraud Search, and All That Fine Evidence Could Be for Nothing - The New York Times

aversion of the framers of the Constitution to so-called general warrants, used by the British before the American Revolution to conduct broad searches for goods imported without payment of the proper duties.

When an investigation involves potential fraud, almost any document or record could be related to it. Prosecutors often need to show that transactions that appear to be legal were misleading or deceptive, which might not be apparent on the face of the documents. So the description in the warrant of what the government can seize in a white-collar case is usually quite broad, covering general categories of records and computer files created over a substantial period of time, but cannot be so vague that almost anything could be seized.

The government obtained warrants to search Mr. Wey's company, New York Global Group, and his New York City apartment for evidence that he used other companies and investors as part of a plan to manipulate the shares of companies used for mergers with China-based businesses. The warrants listed 12 categories of documents that related to transactions with 220 individuals and companies, including the seizure of computers and other electronic devices that might contain records related to them.

The key to any warrant that covers so much material is to properly identify the specific crimes that were committed so that there is some limitation on what types of records can be seized. It was on this point that Judge Nathan found the warrant in Mr. Wey's case had failed.

The primary flaw was that while the affidavit submitted by an F.B.I. agent to a magistrate judge gave a reasonable description of the crimes under investigation, that document was not incorporated in the warrant, or even attached to it, to establish the parameters for the search.

Because there were no apparent limits to what could be seized, the agents executing the warrants seemed to take just about everything they could get their hands on. In particular, Judge Nathan was troubled that agents took personal items with no apparent connection to the investigation, like X-rays of family members, children's sports schedules, divorce papers, passports and family photographs.

7/20/2017

Case 3:13-cr-00226-RNC   Document 259   Filed 07/24/17   Page 20 of 27
Mishandle a Fraud Search, and All That Fine Evidence Could Be for Nothing - The New York Times

In finding that the search violated the Fourth Amendment, the judge pointed out that "failure to reference the suspected crimes would alone be enough to render the warrants insufficiently particularized."

The importance of including the crimes under investigation was highlighted in another recent case, involving the appeal of Ross W. Ulbricht, who once operated under the moniker "Dread Pirate Roberts." He was sentenced to life in prison for helping set up and operate Silk Road, an anonymous online marketplace used to sell drugs and broker other illegal services. Crucial evidence came from his laptop, which was searched shortly after his arrest in a public library in San Francisco in 2013.

The warrant allowed agents to open every file to view the first few pages of a document, and search terms could be used to scan the laptop's entire memory. In upholding the search, the United States Court of Appeals for the Second Circuit in Manhattan pointed out that "files and documents can easily be given misleading or coded names, and words that might be expected to occur in pertinent documents can be encrypted; even very simple codes can defeat a preplanned word search."

While the description of what could be searched on Mr. Ulbricht's laptop was broad, it was permissible under the particularity requirement of the Fourth Amendment because the affidavit outlining the crimes under investigation was incorporated into the warrant, providing the necessary limitations on what could be viewed. Although that meant a very intrusive search that could include many personal documents, the appeals court found that "such an invasion of a criminal defendant's privacy is inevitable, however, in almost any warranted search."

Why did the government fail to meet this seemingly simple requirement of incorporating the description of the crimes under investigation in the warrant to search Mr. Wey's office and apartment? There is no good explanation for that mistake, which led Judge Nathan to conclude that "the warrants are — in function if not in form — general warrants," the death knell for any search.

One way the government could have seized virtually everything from Mr. Wey's business and home would have been to offer evidence in the warrant application that his operation was completely fraudulent. Courts recognize that if a company is thoroughly permeated by fraud, such as a boiler-room operation or a bogus

prescription drug dispensary, then any records connected to it would constitute evidence.

Although prosecutors made this argument to defend the seizure from Mr. Wey, they could not overcome two hurdles. First, this type of warrant is usually limited to a business rather than a home, at least unless there is substantial evidence that the home was really just an extension of the illegal operation. There was nothing in the warrant application involving Mr. Wey's apartment that would indicate its primary use for that purpose, even though his wife assisted his advisory business from there.

Second, Judge Nathan found that the government "did not set forth any evidence, explicit or implicit, that the scheme either constituted just the 'tip of iceberg' with respect to fraudulent activity" at Mr. Wey's operation, or that the claimed fraudulent activity infused the entire business.

Perhaps the ultimate fallback in any case involving a flawed search warrant is the claim that the agents acted in good faith. The exclusionary rule is designed to deter governmental misconduct, and the Supreme Court noted in United States v. Peltier that "where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."

That exception does not apply when a warrant is so clearly flawed that no reasonable agent would rely on it. Judge Nathan found that the warrants did not have "any meaningful linkage to the suspected criminal conduct and limited only, at the outer boundaries, to some relationship to the owner/occupant of the premises being searched." Therefore, a claim of good faith to salvage the fruits of an otherwise unlawful search could not be supported, so the exclusionary rule required suppression of all the evidence seized.

I expect that the Justice Department will challenge the decision because the suppressed evidence is at the heart of the case against Mr. Wey. Although a defendant cannot appeal a denial of a suppression motion until after a conviction, the Criminal Appeals Act authorizes prosecutors to seek review of a decision granting such a motion so long as the United States attorney certifies that the appeal is not for the purpose of delay and the material would be "substantial proof of a fact material in the proceeding."

7/20/2017

Case 3:13-cr-00226-RNC   Document 259   Filed 07/24/17   Page 22 of 27
Mishandle a Fraud Search, and All That Fine Evidence Could Be for Nothing - The New York Times

Judge Nathan's decision sends a clear message to agents and prosecutors in white-collar-crime investigations to tread carefully when using a search warrant to gather evidence. Although a treasure trove of materials can be obtained this way, failing to pay attention to the details of properly writing and executing a warrant can have devastating consequences for a case.

© 2017 The New York Times Company

# EXHIBIT TWO:
## SEARCH WARRANT FOR APRIL 20, 2010 RAID

United States District Court

DISTRICT OF _____ CONNECTICUT _____

**In the Matter of the Search of**
**(Name, address or Brief description of person,**
**property or premises to be searched)**

**SEARCH WARRANT**

**CASE NUMBER:**

The office of NOVA BENEFIT PLANS LLC, also
known as BENISTAR, located at 100 Grist Mill
Road, Simsbury, Connecticut.

To: <u>Shaun Schrader, IRS-CID</u> and any Authorized Officer of the United States

Affidavit(s) having been made before me by <u>Special Agent Shaun Schrader</u> who has reason to believe that
on the person of or <u>x</u> on the property or premises known as (name, description and/or location)

The office of NOVA BENEFIT PLANS LLC, also known as BENISTAR, located at 100 Grist Mill Road, Simsbury,
Connecticut, 06070. The property is described as a single story office building. The lower portion of the building consists
of red brick and windows, while the upper portion of the building consists of horizontal gray siding. The property is
accessed by a short driveway off of Grist Mill Road. At the bottom of the driveway is a red brick structure with a sign
attached to it that says "100 GRIST MILL RD." At the top of the driveway, as you approach the parking lot, is a wooden
sign that reads "DIRECTORY, ENTRANCE 1, BENISTAR." There is no signage on the exterior of the building itself.

in the _____ District of _____ CONNECTICUT _____ there is now
concealed a certain person or property, namely (describe the person or property to be seized)

*See* Attachment B.

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the
person or property so described is now concealed on the person or premises above-described and
establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before *April 25, 2010*

(not to exceed 10 days) the person or place named above for the person or property specified, serving this
warrant and making the search (in the daytime - 6:00 A.M. to 10:00 P.M.) ~~(at any time in the day or night~~
~~as I find reasonable cause has been established)~~ and if the person or property be found there to seize
same, leaving copy of this warrant and receipt for the person or property taken, and prepare a written
inventory of the person or property seized and promptly return this warrant to <u>THOMAS P. SMITH,</u>
<u>UNITED STATES MAGISTRATE JUDGE</u> as required by law.

April *16*, 2010 at *1:05 p.m.*
**Date and Time Issued**

at _____ HARTFORD, CONNECTICUT _____
**City and State**

THOMAS P. SMITH
UNITED STATES MAGISTRATE JUDGE
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

# EXHIBIT THREE:

## SEARCH AND SEIZURE WARRANT
## FOR MAY 26. 2011 RAID

**EXHIBIT 1**

11-92 M-01 (JG)

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

)
In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No.
)
The entirety of the premises located at 100 Grist Mill )
Road in Simsbury, Connecticut, and more particularly )
described in Attachment B )

## SEARCH AND SEIZURE WARRANT

To:   · Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Connecticut _____ *(identify the person or describe the property to be searched and give its location)*:
The entirety of the premises located at 100 Grist Mill Road in Simsbury, Connecticut, and more particularly described in Attachment B

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment D

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before _____ 6 | 4 | 11 _____
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Joan G. Margolis _____
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   5/25/11, 12:43 p    _____
                                                                                    *Judge's signature*

City and state:   New Haven, CT _____   Joan G. Margolis _____
                                                                                    *Printed name and title*

## CERTIFICATION

This is to certify that on July 24, 2017, a copy of the foregoing Motion was served by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.  Also sent to the following by U.S. postal mail:

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed. Bar  Ct00009

-17-