UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.               ) | CRIMINAL NO. 3:13 CR 226 (RNC) |
| ) | |
| DANIEL E. CARPENTER   ) | |
| ) | AUGUST 11, 2017 |

**DEFENDANT DANIEL CARPENTER'S REPLY BRIEF IN SUPPORT OF HIS
MOTION FOR PERSONAL ACCESS TO
DISCOVERY MATERIALS AND EVIDENCE IN THIS CASE**

PRELIMINARY STATEMENT

Mr. Carpenter respectfully asserts that the government's Opposition Brief (Doc. 270 hereinafter "Gov. Opp.") exposes the government's continuing avoidance of its constitutional obligations and Mr. Carpenter's constitutional rights in this case. As the Defendant in this case, Mr. Carpenter is the "Accused" and that gives him certain rights under the Constitution. Because the government is the one that has accused Mr. Carpenter of certain crimes, the government has both a constitutional duty and an obligation to provide certain types of evidence – not just exculpatory evidence – to the accused under *Brady-Giglio-Bagley* and their progeny. The government's Opposition Brief effectively admits that the government has not satisfied its

BROWN PAINDIRIS & SCOTT, LLP  ATTORNEYS AT LAW
100 PEARL STREET  HARTFORD, CONNECTICUT 06103  (860) 522-3343  JURIS NO. 20767

obligations in that regard, and willfully refuses to satisfy its obligations going forward. If for no other reason than that, the Court should grant Mr. Carpenter's motion in the interests of justice and Fundamental Fairness.

## I. THE GOVERNMENT MISUNDERSTANDS AND MISCONSTRUES ITS OBLIGATIONS UNDER *BRADY*

Just two months ago in *Turner v. United States*, 137 St. Ct. 1855 (2017), both the Majority and the Dissent in the Supreme Court's opinion cited *Kyles v. Whitley*, 115 S. Ct. 1555 (1995) for the famous *Berger* standard describing the government's obligation to pursue justice rather than convictions while restating the standard for a *Brady* claim:

> The Government does not contest petitioners' claim that the withheld evidence was "favorable to the accused, either because it is exculpatory, or because it is impeaching." Strickler v. Greene, 527 U.S. 263, 281–282 (1999). Neither does the Government contest petitioners' claim that it "suppressed" the evidence, "either willfully or inadvertently." Id., at 282. It does, as it must, concede that the Brady rule's " 'overriding concern [is] with the justice of the finding of guilt,' " United States v. Bagley, 473 U.S. 667, 678 (1985) (quoting United States v. Agurs, 427 U.S. 97, 112 (1976)), and that the Government's " 'interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done,' " Kyles v. Whitley, 514 U.S. 419, 439 (1995) (quoting Berger v. United States, 295 U.S. 78, 88 (1935)). Consistent with these principles, the Government assured the Court at oral argument that subsequent to petitioners' trial, it has adopted a "**generous policy of discovery**" in criminal cases under which it discloses any "information that a defendant might wish to use." Tr. of Oral Arg. 47–48. As we have recognized, and as the Government agrees, "[t]his is as it should be." Kyles, supra, at 439 (explaining that a " 'prudent prosecutor['s]' " better course is to take care to disclose any evidence favorable to the defendant (quoting Agurs, supra, at 108)).
> (See *Turner* at 1893) (Emphasis added).

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

Nowhere does the Supreme Court suggest that **Mr. Carpenter needs to "believe" the *Brady* evidence for it to be *Brady-Giglio-Bagley* worthy of a new trial.** Not only is Mr. Carpenter's opinion of Mr. Mactas not **material** to the *Brady* analysis but it proves that the Mactas testimony (as well as the new Carpenter emails) are indeed *Brady* material:

1. The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;

2. that evidence must have been suppressed by the State, either willfully or inadvertently;

3. and prejudice must have ensued.

To establish prejudice, a plaintiff must show materiality: 'A showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). The touchstone of materiality is a **reasonable probability of a different result**, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' *Leka v. Portuondo*, 257 F.3d 89, 104 (2d Cir.2001) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, (1995)) (internal quotations omitted, emphasis added). See *Poventud v. City of New York*, 750 F. 3d 121 (2d Cir. 2014).

Mr. Carpenter would respectfully point out to the Court that the very exhibits that the government points to as establishing that Mr. Carpenter "thinks Mr. Mactas is lying" establishes Mr. Carpenter's innocence and effectively blows up the government's entire theory of the case. For instance, according to the government, Mr. Carpenter accuses Mr. Mactas of using the

-3-

Charter Oak Trust to do a "STOLI" deal for Sash Spencer whose mistress was running the bogus charity named Universitas. See Doc. 263 at 12-13. Yet it was Mr. Carpenter who was indicted for allegedly lying to the carriers and depriving them of the right to control their assets.

The fact that Mr. Mactas says that all four questions were answered truthfully and accurately is of course *Brady* exculpatory evidence that destroys the government's case. But even more interesting is the fact that agents like Mr. Mactas were alleged to be Mr. Carpenter's "co-conspirators" in this case and that the government's theory of the case is that Mr. Carpenter created a bogus welfare benefit trust to do "STOLI in disguise." Yet the newly discovered evidence just recently **provided by the government itself** shows that Mr. Carpenter is defending the sanctity of the Charter Oak Trust and is accusing Mactas, Spencer, and Universitas of fraudulently using the Charter Oak Trust to get money to Mr. Spencer's paramour at Universitas through the fraud of government witnesses Mactas, Seibert, and Vasser. See Doc. 263 email Exhibits filed under seal.

Therefore, the government's own recent disclosures of Mr. Carpenter's reaction to the Mactas testimony is quintessential *Brady* evidence in and of itself. In the famous Senator Ted Stevens case, the crucial *Brady* evidence withheld was an ordinary bill from the construction company VECO that showed the government's theory of the case was all wrong. See Judge Emmet Sullivan's Order Releasing the Stevens' Report, *In Re Special Proceedings,* Misc. No. 09-0198 (November 21, 2011). Here it is clear that not only was Mr. Carpenter not in a

BROWN PAINDIRIS & SCOTT, LLP   ATTORNEYS AT LAW
100 PEARL STREET   HARTFORD, CONNECTICUT 06103   (860) 522-3343   JURIS NO. 20767

conspiracy with Mr. Mactas when the Sash Spencer applications were submitted in December of 2006 and March of 2007, but in December of 2010 Mr. Carpenter is accusing Mr. Mactas of doing "STOLI in disguise" to defraud the Charter Oak Trust and yet three years later, Mr. Carpenter would be the one indicted for allegedly doing "STOLI in disguise." See Doc. 263 email Exhibits filed under seal.

But the fact that Mr. Carpenter would be indicted three years later for allegedly creating a welfare benefit plan to act as "STOLI in disguise" proves that not only is the Mactas arbitration testimony material and exculpatory evidence that was suppressed by the government, it clearly would have changed the outcome of the case and the standard for *Brady-Giglio-Bagley* material is if there is any "**reasonable possibility** that disclosure of the evidence would have led to a different outcome." See *Turner* at 1893.

Now the government has compounded its *Brady* violations by submitting emails unlawfully seized during the unlawful raid of 100 Grist Mill Road that shows that not only was Mr. Carpenter not in a conspiracy with Mr. Mactas, but Mr. Carpenter is accusing Mr. Mactas of being the fraudster and being the person doing "STOLI in disguise." See Doc. 263 email Exhibits filed under seal. At trial, Ken Elder stated that had Lincoln known someone was lying on an application or purposefully doing STOLI they would have been terminated. See Doc. 229 at 122-123. Yet to this day, neither Mr. Mactas nor Mr. Trudeau (the only two agents on the Spencer applications) have been terminated by Lincoln, so Lincoln believes that the four

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

questions were answered correctly and therefore there is no mail fraud or wire fraud and no Specified Unlawful Activity proceeds in this case. So, therefore, not only is Mr. Carpenter entitled to a new trial, he is clearly entitled to access to the government's discovery because he is the Accused in this case and there is a lot of *Brady-Giglio-Bagley* evidence that was not turned over to Mr. Carpenter's attorneys in time for it to be used at trial. As the Second Circuit stated in *United States v. Gil*, 297 F. 3d 93 (2002):

> "*Brady* material must be disclosed in time for its effective use at trail." The critical *Brady* evidence in that case was a memo that was provided in a Box marked 3500 material along with 2700 other pages a day before the trial began. The Second Circuit also went on to say that "The Government is reasonably expected to have possession of evidence in the hands of investigators, who are part of the "prosecution team." See *Kyles v. Whitley,* 514 U.S. 419, 438-438 (1995). The government thus constructively possessed the [Bradford] memo long before it was turned over to the defense. *Gil* at 105-107.

Therefore, since the government is just now turning over the Mactas testimony emails from December 2010, they have clearly delayed turning over valuable exculpatory *Brady* evidence that was in their possession. See Doc. 263 email Exhibits under seal.

## II. THE GOVERNMENT'S RATIONALE FOR NOT GIVING MR. CARPENTER ACCESS TO THE EVIDENCE IN THIS CASE IS NOT JUST MERITLESS BUT BORDERS ON THE RIDICULOUS

The government sums up its opposition to Mr. Carpenter's Motion as follows:

In short, Carpenter's motion is nothing more than an attempt to hurl baseless accusations

-6-

BROWN PAINDIRIS & SCOTT, LLP ATTORNEYS AT LAW
100 PEARL STREET HARTFORD, CONNECTICUT 06103 (860) 522-3343 JURIS NO. 20767

of discovery violations at the Government based on unfounded speculation and conjecture. Moreover, the Court should not let Carpenter, a twice-conviction (sic) felon, possess the personal identifying information of hundreds of private citizens on a personal laptop in his own home. The Government has no objection if Carpenter wants to spend hundreds of hours scouring through the discovery even though his deadline for filing post-conviction motions has passed. The Government only asks that he do so at the offices of his attorneys or at Halloran & Sage so that the security of the documents can be maintained. The Government submits this slight inconvenience to Carpenter and his attorneys does not outweigh the risks of having the information maintained at Carpenter's private home. See Gov. Opp. at 15.

Needless to say there are a number of inaccurate and totally erroneous statements contained in this one paragraph. First and foremost, Mr. Carpenter has not been twice "convicted" because the law is clear that one is not "convicted" until a federal judge passes judgment and enters a sentence. Therefore, Mr. Carpenter has only been convicted once, and in the last matter there are pending no less than six major motions including a *Writ of Habeas Corpus* pursuant to 28 USC 2255 to vacate Mr. Carpenter's conviction – thereby potentially making him not "convicted" at all.

Second, Mr. Carpenter already has personal access to **ALL** of the personal identification information of anyone who participated in the Charter Oak Trust, the discovery evidence the government allegedly wants to protect. The Court should recall that the government's theory of the case is that Mr. Carpenter controlled anything and everything that went on at 100 Grist Mill Road. Moreover, it was Mr. Carpenter's company Grist Mill Capital, LLC that had signed agreements and detailed enrollment documents with each of the Participating Employers in the

-7-

Charter Oak Trust. Therefore, despite the fact that there is no evidence of Mr. Carpenter filling out, signing, or sending in any of the applications in this case, it is Mr. Carpenter and his company Grist Mill Capital that have sued both the IRS for the Raid of 2010 and the DOL for the Raid of 2011. Both cases are still active. Mr. Carpenter does not need the government's help – or permission – to access the personal identification information or medical history of any of the Charter Oak Trust participants. This is a canard on the government's part because when the alleged Straw Insureds – like Martinez, Paulsrud, and the Von Noordens – were interviewed – they had no idea who Mr. Carpenter was, much less had some interaction with him. Mr. Carpenter needs access to the government discovery that was not seized from 100 Grist Mill Road and then he needs the access to all of the discovery in this case to be able to search the database the way the government dumped it on to the servers at Halloran & Sage, most of which was not even searchable to begin with due to the way the government sent the data. However, for purposes of this motion, Mr. Carpenter never lost access to the very material the government claims is necessary to keep away from Mr. Carpenter now because Grist Mill Capital always had that information and continues to have it now.

Third, the problem with the government's assertion is that the discovery is not located on Mr. Carpenter's attorneys' computers – the discovery in this case is so voluminous that it cannot be contained at Brown Paindiris & Scott, and Halloran & Sage, who volunteered to help Mr. Carpenter, are unwilling and unable to give Mr. Carpenter direct access to Halloran & Sage's

-8-

BROWN PAINDIRIS & SCOTT, LLP   ATTORNEYS AT LAW
100 PEARL STREET   HARTFORD, CONNECTICUT 06103   (860) 522-3343   JURIS NO. 20767

computers because of cyber-security concerns and even if Mr. Carpenter was granted access, he would need access to Case Logistix to do electronic searches of the voluminous database. This would require Halloran & Sage to license Mr. Carpenter under their license. This is putting an unnecessary burden on Halloran & Sage, and once again they are not representing Mr. Carpenter. Once again, Mr. Carpenter is the "Accused" in this case, and has received no *Brady* material at all to date, so even if Mr. Carpenter were to discover only one email that suggests his innocence (as opposed to the hundreds he believes prove his innocence), the *Brady* standard that requires a new trial for Mr. Carpenter is only showing the "**reasonable possibility of a different outcome.**"

Finally, the government is fighting way too hard to deprive Mr. Carpenter of a fair trial, Due Process, and Fundamental Fairness. The government unlawfully seized 322 boxes from 100 Grist Mill Road on April 20, 2010 and held onto those boxes until they dropped the investigation on August 9, 2016. See Letter of June 9, 2016 attached as Exhibit One. Almost all of the boxes were returned at the end of August 2016 based on the conclusion of the investigation. In those boxes were a number of documents belonging to Grist Mill Capital (despite Grist Mill Capital's name being nowhere to be found in the Search Warrant Affidavit) that contained all of the Personal History Information that the government now seeks to prevent from falling into Mr. Carpenter's hands. Therefore, the Court must realize that this opposition by the government is

BROWN PAINDIRIS & SCOTT, LLP   ATTORNEYS AT LAW
100 PEARL STREET   HARTFORD, CONNECTICUT 06103   (860) 522-3343   JURIS NO. 20767

the very conduct that the admonishment of the government in *Berger,* and most recently recited in *Turner,* is designed to prevent.

The government continues to frustrate Mr. Carpenter's search for the truth and his ability to present his best defense at every juncture. It is respectfully submitted that the Court should grant Mr. Carpenter's Motion for Access to Discovery in the interests of justice as well as taking the burden off the staff and computer systems at Halloran & Sage who have done an excellent job to date in helping Mr. Carpenter without being his duly appointed counsel or being compensated for their efforts even though Mr. Carpenter's data searches have resulted in numerous cyber headaches for the firm.

**Respectfully submitted,**
Defendant, Daniel E. Carpenter

By _____

Richard R. Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed. Bar  Ct00009
rbrown@bpslawyers.com

-10-

BROWN PAINDIRIS & SCOTT, LLP   ATTORNEYS AT LAW
100 PEARL STREET   HARTFORD, CONNECTICUT 06103   (860) 522-3343   JURIS NO. 20767

# EXHIBIT ONE



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of Wisconsin*

---

*Federal Courthouse*        *(414) 297-1700*
*517 E. Wisconsin Ave, Rm 530*    *Fax (414) 297-1738*
*Milwaukee WI 53202*        *www.justice.gov/usao/wie*

June 9, 2016

Attorney Eric J. Wilson
Godfrey & Kahn, S.C.
One East Maine Street, Suite 500
Madison, WI 53701

    Re:    NOVA/Benistar

Dear Mr. Wilson:

    As you know, the United States was conducting an investigation into possible criminal violations committed by NOVA/Benistar and its executives, including Daniel Carpenter. The matter was initially handled by Assistant United States Attorney Gordon P. Giampietro and was later transferred to Thomas Agnello, a trial attorney with the Criminal Enforcement Section of the Tax Division, following Gordon's departure from the U.S. Attorney's Office. I am writing to advise you that criminal prosecution has been declined and the matter will be closed.

    If you have any questions or concerns regarding this matter, you may call me directly at (414) 297-1801.

                          Sincerely,

                          GREGORY J. HAANSTAD
                          United States Attorney

                By: *[signature]*

                          KELLY B. WATZKA
                          Deputy Criminal Chief

CC:    Attorney Thomas Agnello

## **CERTIFICATION**

This is to certify that on August 11, 2017, a copy of the foregoing Motion was served by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. Also sent to the following by U.S. postal mail:

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

Richard R. Brown, Esq. Ct00009

BROWN PAINDIRIS & SCOTT, LLP  ATTORNEYS AT LAW
100 PEARL STREET  HARTFORD, CONNECTICUT 06103  (860) 522-3343  JURIS NO. 20767