UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 3:13CR226(RNC) |
| | ) |
| DANIEL E. CARPENTER | ) |
| | ) SEPTEMBER 5, 2017 |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION
FOR JUDGMENT OF ACQUITTAL PURSUANT TO F. R. CRIM. P. 29**

**I.    MR. CARPENTER IS ENTITLED TO A JUDGMENT OF ACQUITTAL BASED
ON THE RULE OF LENITY**

The Rule of Lenity should be applied any time that the Court finds a defendant possibly

lacked notice that his conduct was subject to criminal sanction. *See Liparota v. United States,*

471 U.S. 419, 427 (1985) (The rule of lenity "ensures that criminal statutes will provide fair

warning concerning conduct rendered illegal and strikes the appropriate balance between

legislature, the prosecutor, and the court in defining criminal liability."); *Bouie v. City of*

*Columbia,* 378 U.S. 347, 350-51 (1964) (Due Process requires that a criminal statute "give fair

warning of the conduct that makes it a crime."). "[B]efore a man can be punished as a criminal

under the Federal law his case must be 'plainly and unmistakably' within the provisions of some

statute." *United States v. Plaza Health Labs Inc.,* 3 F.3d 643, 649 (2d Cir. 1993), *quoting United*

*States v. Gradwell,* 243 U.S. 476, 485 (1917).

In this case, there was no Mail and Wire Fraud based on the intent to cause "tangible

harm" theory. *See United States v. Finazzo,* 850 F.3d 94 (2d Cir. 2017), *citing United States v.*

*Mittelstaedt,* 31 F.3d 1208 (2d Cir. 1994).   Nor has the government shown how **paying**

premiums to a carrier could possibly be in furtherance of a "scheme to defraud" to "obtain" a

victim's "money or property" based on the Supreme Court's recent decision in *Honeycutt v. United States,* 137 S. Ct. 1626 (2017) and *Skilling v. United States,* 130 S. Ct. 358 (2010).

In the government's Opposition Brief (Doc. No. 262) ("Gov. Opp.") to Mr. Carpenter's Rule 29 Motion for a Judgment of Acquittal (Doc. No. 229), the government seems to suggest that Mr. Carpenter had plenty of "Fair Warning" that lying on a life insurance application might have a person facing up to 20 years in prison; that he had constitutional "Fair Notice" of the "bright-line" that he and his alleged co-conspirators were somehow crossing, and that he was not entitled to the Rule of Lenity because the law in this case is very clear and the evidence against him was "overwhelming" so there is no reason to grant Mr. Carpenter's Judgment of Acquittal. As the Court knows from Mr. Carpenter's initial brief, the government failed to prove all of the elements beyond a reasonable doubt, and Mr. Carpenter contends they did not prove any of the five elements described in Charles Doyle's report to Congress by any standard. See Exhibit One for excerpts from Charles Doyle's report to Congress.

Not only do none of the obscure cases listed by the government (many of which are unpublished opinions) have anything to do with lying on a **life insurance application**, much less "funding" STOLI policies, the government fails to recognize at this late date that the only questions that are truly "**material**" on a life insurance application are Age, Gender, and Health. Not even the defendants in *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015) lied about Age, Gender, and Health. And unlike in this case, the *Binday* defendants readily admitted upfront to having lied about the potential sale of the policy to investors, the reason for buying the insurance, and the wealth of the insured. The *Binday* defendants declared that these were not "material" deceptions because the carriers actually wanted and encouraged "STOLI" business, and if there was no loss to the carriers, that would mean there was no fraud. Most of the cases mentioned by

-2-

the government on Pages 51-52 of the Gov. Opp. are prior to *Neder* and *United States v. Brennan*, 183 F.3d 139 (2d Cir. 1999), and all of them are prior to the Second Circuit's creation of the "*Shellef* Doctrine" (*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007)).

Contrary to the government's Opposition, the "Fair Warning" requirement mandates that "no man shall be held criminally responsible for **conduct which he could not reasonably understand to be proscribed**." *United States v. Lanier*, 520 U.S. 259, 260-61 (1987)(emphasis added). This principle is reflected in at least two tools of statutory construction. First, the "rule of lenity ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Lanier* at 266. Second, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.* Mr. Carpenter respectfully asserts that, prior to October 2015 with the Second Circuit's decision in *Binday*, no one knew that lying on an insurance application was criminal, but even after *Binday* there is no case in any circuit making the **funding** of alleged "STOLI" policies criminal. It is beyond dispute that Mr. Carpenter did not fill out, sign, or submit to a carrier any of the applications in this case. Therefore, even assuming *arguendo* that the government's theory that the Charter Oak Trust was an elaborate scheme for funding STOLI policies in disguise, which of course Mr. Carpenter vehemently denies, the government can point to no case where funding premiums for any type of life insurance policy could be considered a crime. Additionally, the legal maxim "knowledge of the agent is knowledge of the carrier" has been used by insurance managers since Lloyds was a coffee house. To dispute Mr. Carpenter's reliance on the Supreme Court's decision in *Stipcich v. Metropolitan Life Ins. Co.*, 277 U.S. 311 (1928) and *Brennan*, the government can offer only Judge Bryant's opinion in *Northwestern Mutual v. Gil*, No. 3:07-CV-00303, 2009 WL 276086

(D. Conn. Feb. 5, 2009), which involves the rescission of the $15 million policy on the life of a true fraudster, Andrew Kissel, because Kissel lied about his drug usage on the application. The government's reliance on *Gil* is totally unavailing and, in fact, supports Mr. Carpenter's argument because Judge Bryant recognizes that the knowledge of the agent is the knowledge of the carrier, and because Northwestern Mutual was allowed to void the policy for reasons having nothing to do with the insured's death (e.g., rescinding the policy of a smoker who lied about smoking but died in a plane crash). *Gil* totally supports Mr. Carpenter's premise that the "knowledge of the agent is the knowledge of the carrier" and that Lincoln believes there were no lies on the Spencer applications.

The government's proposed interpretation of the mail and wire fraud statutes in this case is a novel construction based on the *Binday* decision that resolves what is, at best, a "grievous ambiguity" in favor of criminality rather than lenity. Thus, the Fair Warning requirement and the Rule of Lenity bolster the conclusion that the government's broad and novel interpretation of the federal fraud statutes should be rejected. The Court should grant Mr. Carpenter's Judgment of Acquittal based on the lack of Fair Warning for an issue that no one in 2007 knew was an issue until the *Binday* decision of 2015. But even as of today, no one in America has Fair Warning or Fair Notice that funding life insurance policies could be considered criminal.

## II.   THE GOVERNMENT'S OPPOSITION BRIEF DEMONSTRATES THE GOVERNMENT'S CONSTRUCTIVE AMENDMENT OF THE INDICTMENT

The only thing truly "overwhelming" about this case is the government's efforts to secure an unjust verdict, in clear disregard of the Supreme Court's admonition in *Berger* that the government's "interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). The evidence presented in this case is insufficient to warrant a conviction, and Mr. Carpenter should never have been indicted in

-4-

the first place. Not only is there no crime here, it is submitted that the government had not

produced any credible witnesses to point out even one lie or misrepresentation allegedly told by

Mr. Carpenter. Because the government failed to properly allege a conspiracy much less prove it

beyond a reasonable doubt, the government needed to constructively amend the Superseding

Indictment in this case to be all about what Mr. Carpenter **did not** tell the carriers to fit into their

inapposite scenario that the conduct of Mr. Carpenter, Grist Mill Capital, and the Charter Oak

Trust was similar to that of the defendants in *Binday*. The government received ample fair notice

from the Second Circuit in numerous cases regarding how it should draft indictments involving

fraud claims, especially when a conspiracy is alleged:

> In order to avoid [constructively] amending an indictment in violation of the Fifth
> Amendment, the government in fraud cases should think through the nature of the crime
> it wishes to alleged and then spell out the offense in a carefully drafted indictment,
> instead of confronting the defendant with its theory of criminality for the first time at
> trial. *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988), *citing United States v.
> Rosenblatt*, 554 F.2d 36, 40 (2d Cir. 1977), *quoting Grunewald v. United States*, 353 U.S.
> 391, 404 (1957).

Consequently, based on instructive Second Circuit precedent, there has been a full-

fledged Constructive Amendment in this case. In support thereof, Mr. Carpenter requests that

the Court review the recent decision in *United States v. Davis*, No. 13-CR-923 (LAP), 2017 WL

3328240 (S.D.N.Y. Aug. 3, 2017):

> The theory of "constructive amendment" is based on the fundamental principle that "after
> an indictment has been returned its charges may not be broadened through amendment
> except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215-16 (1960).
> Although the Court must permit "significant flexibility in proof," the defendant must be
> provided with "notice of the core criminality to be proven at trial." *United States v.
> LaSpina*, 299 F.3d 165, 181 (2d Cir. 2002). A constructive amendment is a per se
> violation of the Fifth Amendment, *LaSpina*, at 181, and constructive amendments have
> been found when the government alleges one theory of the case in the indictment but
> argues another at trial. *See, e.g. Stirone*, 361 U.S. at 217.
>
> In considering the issue of constructive amendment, the Court is mindful that it is a fairly
> narrow doctrine in this Circuit. *See United States v. Lee*, 833 F.3d 56, 70 (2d Cir. 2016)

(explaining that "this court has proceeded cautiously in identifying [constructive amendment]") Indeed, the Court is aware of only six cases since 1988 in which the Court of Appeals has found constructive amendments. *See Mollica* at 730; *United States v. Zingaro*, 858 F.2d 94, 99 (2d Cir. 1988); *United States v. Milstein*, 401 F.3d 53, 65 (2005); *United States v. Wozniak*, 126 F.3d 105, 111 (2d Cir. 1997); *United States v. Dhinsa*, 243 F.3d 635 (2d Cir. 2001); *United States v. Hassan*, 578 F.3d 108 (2d Cir. 2008). Even after taking this background into account, however, the Court concludes that a constructive amendment occurred here.

The reason that *Davis* is so important to Mr. Carpenter's Rule 29 Motion for a Judgment of Acquittal is that the court in *Davis* granted the defendant's Rule 29 and Rule 33 motions based on both a Constructive Amendment theory as well as a Prejudicial Variance theory, and also granted conditional motions for a new trial pursuant to Rule 29(d) and Rule 33(a). Unlike in this case, *Davis* involved real corruption in the rebuilding of the World Trade Center Freedom Tower in Manhattan by Davis and his company DCM involving fraudulent invoices and a fraudulent Minority Business Enterprise (MWBE) status. The outright business fraud was examined in *Davis* through the lens of a drug case, *Wozniak*, where a marijuana user was also accused of being in a conspiracy to distribute cocaine and methamphetamine.

In *Davis*, the government added the "Right to Control" theory and the "No-Sale" theory of fraud to its post-trial briefs (just as the government has done here) and created a new theory of potential economic harm, that the Minority Business Enterprise status was an essential element of the bargain and that the Port Authority would not have entered into the contract if they had known that Davis and DCM did not agree to meet the Port's goals regarding MWBE participation. It was that "broadening" of the government's theories of possible economic harm that resulted in the Constructive Amendment and Rule 29 in *Davis*. The court in *Davis* does an analysis of why *Davis* is just like the Constructive Amendments in *Stirone* and *Wozniak*, but Mr. Carpenter wishes to direct the Court's attention to whether the "Right to Control" theory was addressed in the indictment in *Davis* because those words are not in Mr. Carpenter's indictment:

Turning to the right to control theory first, either the right to control theory was contained in the core of criminality of the indictment or it was not. If the right to control theory was within the core criminality charged in the indictment, then the indictment is insufficient because *Shellef* teaches that when a right to control theory involving a contract is alleged in an indictment there must also be an allegation that the misrepresentation had "relevance to the object of the contract" or an equivalent allegation, that there was a "discrepancy between benefits reasonably anticipated and actual benefits received," or that the misrepresentation went to "the nature of the bargain." *Shellef* at 108; *see also United States v. Binday*, 908 F. Supp.2d 485, 491 (S.D.N.Y. 2012)("Given the '*Shellef*' language in the present indictment, there is no danger that a jury might improperly convict the defendants based on a misrepresentation[] that had no relevance to the object of the contracts in question."), *aff'd*, 804 F.3d 558 (2d Cir. 2015). This indictment contained none of this language or anything approximating it.

If, however, the right to control theory was not part of the core of criminality contained in the indictment, then offering evidence, argument, and an instruction based on such a theory constitutes an impermissible constructive amendment. Here, the indictment did not contain within its core of criminality the Government's right to control theory of harm. *See Davis* at 35-36.

As the Court is well aware, the words "right to control" and "deprivation of valuable economic information" are nowhere to be found in either of Mr. Carpenter's indictments. Therefore, it is surprising to find on page 13 of the government's Opposition Brief, the statement that "Indeed, the evidence reviewed by the Court supported the Court's finding that misrepresentations **contemplated deprivation of economically valuable information**." The problem with this statement is that the words "deprivation of economically valuable" information are nowhere to be found in either of Mr. Carpenter's indictments. Mr. Carpenter's Fifth Amendment Constructive Amendment claim is that the government had to constructively amend the indictments in this case because they realized that they had charged Mr. Carpenter with a non-crime, and they had to amend Mr. Carpenter's indictment to conform to the Second Circuit's "Right to Control" theory of fraud in its October 2015 decision in *Binday*; they did so to cover conduct that has never been found to be criminal, the funding of various life insurance policies, however they were procured. Mr. Carpenter did not fill out the applications here, and **NONE** of

the investors in *Binday* were indicted for the funding of the policies. No one has ever been indicted for funding insurance policies anywhere.

The essence of mail and wire fraud is the use of the mails and wires "in furtherance" of a scheme to defraud to "obtain" someone else's "money or property" through the use of "material" misrepresentations. The purpose of this Reply is to point out to the Court that the "economically valuable information" (see Gov. Opp. at 13) that other people like Mactas, Waesche, or Induddi-Westcott might have deprived the carrier of was not rightly "money or property" cognizable as "money or property" under the fraud statutes. *See Skilling*, describing the mirror image of fraud where "the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other." *Skilling* at 400, *citing Starr* at 101. Moreover, while Mr. Carpenter believes *Binday* was wrongly decided, that is not Mr. Carpenter's point in these post-trial motions. His point is that even if all of the terrible things the government alleges are true, which of course Mr. Carpenter again denies, the government's indictment still does not describe a crime and the *Binday* decision did not occur until two years after Mr. Carpenter's indictment and 54 months after Agent Allen's raid on 100 Grist Mill Road. Therefore, the government has had to scramble to create a "*Binday*-like" "STOLI" crime, where none existed. Moreover, not only did *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016) discuss the difference between a "scheme to deceive" which is not criminal and a "scheme to defraud", the Second Circuit's recent decision in *Finazzo* discusses at length the requirement for the defendant to have **contemplated** "**tangible harm**" to the alleged victim. *See Finazzo* at 108, *citing Mittelstaedt*. The government **has not even discussed the intent to cause** "tangible harm" to the alleged victims in this case, much less prove it beyond a reasonable doubt. Additionally, the Second Circuit's recent decision in *Countrywide* provides that when a contract is involved, like the insurance contracts in this case,

-8-

that mail and wire fraud cannot exist unless the persons signing the contract intended not to follow through on their part of the bargain at the time the contract was signed. *United States v. Countrywide*, 822 F.3d 650, 658 (2d Cir. 2016). The Second Circuit also relied on and cited more than once, the case of *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791-92 (1st Cir. 1990), for the proposition that "the common law requires proof—other than the fact of breach—that, at the time a contractual promise was made, the promisor had no intent ever to perform the obligation." *Countrywide* at 660, *quoting Sanchez v. Triple-S*, 492 F.3d 1, 11 (1st Cir. 2007):

> A defendant's failure to disclose information, without more, cannot make out a violation of the mail and wire fraud statutes. *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000)....We nevertheless observed that "[i]t would be a truly revolutionary change to make a criminal out of every salesman (assuming the use of the mails or telephone) who did not take the initiative to reveal negative information about the product and who—a jury might find—secretly harbored in his heart the hope that the buyer would never ask."

As *Countrywide* is the law of the Second Circuit, its holding is doubly beneficial to Mr. Carpenter as it is beyond dispute that he was not an applicant, agent, or a signatory to the insurance applications in this case.

## III.   MR. CARPENTER IS ENTITLED TO A JUDGMENT OF ACQUITTAL BASED ON THE DECISION IN *WEIMERT*

The Seventh Circuit's decision in *United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016) has been cited in hundreds of articles across the country for its analysis of the mail and wire fraud statutes. In *Weimert*, the Seventh Circuit reversed a banker's conviction for mail and wire fraud because they felt the materiality element of the federal fraud statutes was being stretched too far "to criminal deception about a party's negotiating positions." *Weimert*, 819 F.3d at 357. While it is clear that Weimert did lie to parties on both sides of a transaction to purchase a property from Anchor Bank, those lies actually caused Anchor Bank to pay him a large bonus so

-9-

that he could purchase his equity stake in the property that he was in charge of selling for Anchor

Bank, and also caused the purchaser to pay more than they would have, had Mr. Weimert not

been involved. Once again, unlike Mr. Carpenter, it is undisputed that Mr. Weimert lied to both

his employer – the Seller – and to his future "partner" – the Purchaser – in this transaction, and

clearly his lies caused his future "partner" to pay more than they needed to, but also "harmed"

his employer by the amount of the bonus that went into Weimert's pocket and the diversion of

proceeds from the increased cost of the transaction.  For his negotiation deceptions, and for

inserting himself in the transaction, Mr. Weimert was indicted on six counts of wire fraud and

found guilty of five counts. In reversing Weimert's conviction the Seventh Circuit declared that

the mail and wire fraud statutes had been stretched "far beyond where they should go." *Weimert*

at 355.  The Seventh Circuit further stated:

> "In commercial negotiations, it is not unusual for parties to conceal from others their true
> goals, values, priorities, or reserve prices in a proposed transaction.  When we look
> closely at the evidence, the only ways in which Weimert misled anyone concerned such
> negotiating positions.  He led the successful buyer to believe the seller wanted him to
> have a piece of the deal.  He led the seller to believe the buyer insisted he had a piece of
> the deal.  All the actual terms of the deal, however, were fully disclosed and subject to
> negotiation.  There is no evidence that Weimert misled anyone about any material facts
> or about promises of future actions.  *Weimert* at 354.

Therefore, the Seventh Circuit, using a "car sales" analogy similar to *Takhalov*'s "Deceitful

Neighbor" example, concluded that "Weimert's dealing in selling Chandler Creek were sharp

and self-interested, but they did not amount to wire fraud." *Weimert* at 370. The mail and wire

fraud statutes do not cover all behavior which strays from the ideal." *Weimert* at 357.

## CONCLUSION

For the reasons stated above, Mr. Carpenter respectfully moves the Court to grant his

Motion for a Judgment of Acquittal.

**Respectfully submitted,**
Defendant, Daniel Carpenter

By_____

    Richard Brown, Esq.
    Brown Paindiris & Scott, LLP
    100 Pearl Street, 2nd Floor
    Hartford, CT 06103
    Tel  860.522.3343
    Fax 860.522.2490
    Fed Bar No. Ct00009
    rbrown@bpslawyers.com

## CERTIFICATION

This is to certify that on September 5, 2017, a copy of the foregoing Reply was served by email to all parties by operation of the Court's electronic filing system or by email on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed. Bar No. Ct00009

-12-