# EXHIBIT ONE



# Mail and Wire Fraud: An Abridged Overview of Federal Criminal Law

**Charles Doyle**
Senior Specialist in American Public Law

July 21, 2011

Congressional Research Service
7-5700
www.crs.gov
R41931

**CRS Report for Congress**
*Prepared for Members and Committees of Congress*

# Introduction

The federal mail and wire fraud statutes outlaw schemes to defraud that involve the use of mail or wire communications. Both condemn fraudulent conduct that may also come within the reach of other federal criminal statutes. Both may serve as racketeering and money laundering predicate offenses. Both are punishable by imprisonment for not more than 20 years; for not more than 30 years, if the victim is a financial institution or the offense is committed in the context of major disaster or emergency. Both entitle their victims to restitution. Both may result in the forfeiture of property.

# Elements

The mail and wire fraud statutes are essentially the same, except for the medium associated with the offense – the mail in the case of mail fraud and wire communication in the case of wire fraud. As a consequence, the interpretation of one is ordinarily considered to apply to the other. In construction of the terms within the two, the courts will frequently abbreviate or adjust their statement of the elements of a violation to focus on the questions at issue before them. As treatment of the individual elements makes clear, however, there seems little dispute that conviction requires the government to prove:

1. the use of either mail or wire communications in the foreseeable furtherance
2. of a scheme to defraud
3. involving a material deception
4. with the intent to deprive another of
5. either property or honest services.

**Use of Mail or Wire Communications:** The wire fraud statute applies to anyone who transmits or causes to be transmitted by wire, radio, or television communication in interstate or foreign commerce any writings for the purpose executing a scheme or artifice. The mail fraud statute is similarly worded and applies to anyone who for the purpose of executing a scheme or artifice causes use of the mails.

The statutes require that a mailing or wire communication be in furtherance of a scheme to defraud. It need not be an essential element of the scheme, as long as it is incident to an essential element of the scheme. A qualifying mailing or communication, standing alone, may be routine, innocent or even self-defeating, because the relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time, regardless of whether the mailing later, through hindsight, may prove to have been counterproductive. The element may also be satisfied by mailings or communications designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect.

A defendant need not personally have mailed or wired a communication; it is enough that he caused a mailing or transmission of a wire communication in the sense that the mailing or transmission was the reasonable foreseeable consequence of his intended scheme.

**Scheme to Defraud**: The mail and wire fraud statutes both prohibit, in pertinent part, any scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, or deprive another of the right to honest services by such means. From the beginning, Congress intended to reach a wide range of schemes to defraud, and has expanded the concept whenever doubts arose. It added the second prong – obtaining money or property by false pretenses, representations, or promises – after defendants had suggested that the term "scheme to defraud" covered false pretenses concerning present conditions but not representations or promises of future conditions. More recently, it added Section 1346 to make it clear the term "scheme to defraud" encompassed schemes to defraud another of the right to honest services. Even before that adornment, the words were understood to refer to wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.

The statutes condemn schemes to defraud—both the successful and the unsuccessful. Nevertheless, there may be some question whether the statutes reach those schemes designed to deceive the gullible though they could not ensnare the reasonably prudent. It is not uncommon for the courts to declare that to demonstrate a scheme to defraud the government needs to show that the defendant's communications were reasonably calculated to deceive persons of ordinary prudence and comprehension. One court considered these statements no more than an identification of a point at which the government has satisfied its burden in a particular case, without addressing whether a lesser quantum of evidence might suffice in other cases. In any event, the question may be more clearly present in the context of the defendant's intent and the materiality of deception, matters discussed below.

**Materiality**: Neither the mail nor the wire fraud statute include a reference to materiality. Yet materiality is an element of each offense, because at the time of the statutes' enactment, the word "defraud" was understood to require a misrepresentation or concealment of a material fact. A statement is material for mail or wire fraud purposes only if it has the natural tendency to influence or be capable of influencing the person to whom it was addressed.

**Intent**: Under both statutes, intent to defraud requires a willful act by the defendant with the intent to deceive or cheat, usually, but not necessarily, for the purpose of getting financial gain for one's self or causing financial loss to another. A defendant has a complete defense if he believes the deceptive statements or promises to be true or otherwise acts in good faith. A defendant has no such defense, however, if he blinds himself to the truth. Nor is it a defense if he intends to deceive but feels his victim will ultimately profit or be unharmed.

**Money, Property, or Honest Services**: The mail and wire fraud statutes speak of schemes to defraud or to obtain money or property. They clearly protect against deprivations of tangible property. Their protection of intangibles has not always been as clear. They do protect intangible *property* rights, although they do not apply to certain intangible rights in property that have no value in the hands of the victim of a scheme.

Some time ago, the Supreme Court held in *McNally v. United States* that the protection does not extend to "the intangible right of the citizenry to good government." Soon after *McNally*, Congress enlarged the mail and wire fraud statute coverage to include the intangible right to honest services, by defining the term "scheme or artifice to defraud" to include[s] a scheme or artifice to deprive another of the intangible right to honest services. Lest the expanded definition be found unconstitutionally vague, the Court in *Skilling v. United States* limited its application to cases of bribery or kickbacks.