UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 3:13CR226(RNC) |
| ) | |
| v. ) | |
| ) | |
| DANIEL E. CARPENTER ) | |
| ) | NOVEMBER 14, 2017 |

# MR. CARPENTER'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF MR. CARPENTER'S JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29

**PRELIMINARY STATEMENT**

This Motion for Reconsideration is made to protect Mr. Carpenter's constitutional rights and to prevent the manifest injustice that would occur if Mr. Carpenter was to be convicted for a second time based on an unlawful expansion of the Mail & Wire Fraud statutes, which are clearly ambiguous as applied to the circumstances of Mr. Carpenter's case. Indeed, it is well established law that before there can be a "scheme to defraud" there must be a "scheme to deceive," and the difference between the two is the "intent to harm" the victim. *See United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016):

> The Second Circuit has interpreted the wire-fraud statute in precisely this way. Their cases have "drawn a fine line between schemes that do no more than cause their victims to enter into transactions that they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes." *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007); *see also United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) ("Misrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim [that] affect[s] the very nature of the bargain itself. Such harm is apparent where there exists a discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver.") (internal quotation marks omitted); *United States v. Regent Office Supply Co.*, 421 F.2d 1174,

*ORAL ARGUMENT REQUESTED*

1182 (2d Cir. 1970) ("[W]e conclude that the defendants intended to deceive their customers but they did not intend to defraud them, because the falsity of their representations was not shown to be capable of affecting the customer's understanding of the bargain nor of influencing his assessment of the value of the bargain to him, and thus no injury was shown to flow from the deception."). Moreover, the Second Circuit's interpretation of the wire-fraud statute is not a parochial interpretation of an ambiguous provision of federal law. Their interpretation follows as a matter of logic from Congress's decision to use the phrase "scheme to defraud" rather than "scheme" or "scheme to deceive." We therefore adopt that interpretation as our own. A jury cannot convict a defendant of wire fraud, then, based on "misrepresentations amounting only to a deceit." *Shellef*, 507 F.3d at 108. Thus, even if a defendant lies, and even if the victim made a purchase because of that lie, a wire-fraud case must end in an acquittal if the jury nevertheless believes that the alleged victims "received exactly what they paid for." *Takhalov* at 1314-15, citing *Shellef*, 507 F.3d at 108.

Unlike the defendants described in *Takhalov* above, Mr. Carpenter has not been proven to have lied to anyone, nor has any carrier come forward to accuse Mr. Carpenter of lying, as was the case in *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015). Whereas the Second Circuit has referred to the standard for the intent to harm as "actual concrete harm", *see, e.g., United States v. Rossomando*, 144 F.3d 197 (2d Cir. 1998) (mail fraud conviction vacated because there was no proof that the defendant intended any harm to the victim so that the defendant's good faith was unimpaired despite the jury's verdict), or recently as the Second Circuit concluded in *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017) *citing United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994) that "[t]he common thread of these decisions is that misrepresentations or non-disclosure of information **cannot support a conviction** under the 'right to control' theory **unless** those misrepresentations or non-disclosures **can or do result in tangible economic harm**." *Finazzo* at 111, there was no proof of any harm to the carriers offered at Mr. Carpenter's trial. Moreover, the government has not shown how paying $100 million to the carriers could possibly cause "**tangible economic harm**." These words are nowhere to be found in Mr. Carpenter's trial transcript.

2

Therefore, as a result of the insufficient evidence at trial and the offered new and intervening controlling law, like *Finazzo* and *United States v. Countrywide*, 822 F.3d 650 (2d Cir. 2016), Mr. Carpenter respectfully moves this Court to grant this Motion to Reconsider and schedule a hearing to argue the points made in this Memorandum and Mr. Carpenter's original Rule 29 Motion for a Judgment of Acquittal.

I. **THE COURT SHOULD FURTHER CONSIDER THE SECOND CIRCUIT'S DECISION IN *BINDAY* AND HOW IT IS DISTINGUISHABLE IN THIS CASE**

Although Mr. Carpenter's Indictment was a carbon copy of the indictment in *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015), the cases could not be more different. While it might be said that the defendants in *Binday* misled or lied or misrepresented vital economic factors to the carriers, no evidence was offered to support that Mr. Carpenter had lied or misrepresented anything to anyone. In fact, under the common law rule that "knowledge of the agent is the knowledge of the principle," everything that Mr. Carpenter purportedly told to the Lincoln and Phoenix agents, the Lincoln executives like Ken Elder, and the Lincoln Officers and OSJ's like Fred Prelle and Charles Induddi-Westcott, is imputable to the carrier. *See, e.g., Stipcich v. Metropolitan Life*, 277 U.S. 311 (1928).

Not only did the evidence show that Mr. Carpenter had not filled out or signed any insurance applications in this case, all the evidence offered at trial supports that he told everyone that it was "Split-Dollar" and not "premium financing," and it was therefore impossible to be STOLI, because the only person that could buy the policy from the Charter Oak Trust was the Insured and only the Insured. The Charter Oak Trust had an insurable interest in every participant, also making STOLI impossible in this case. As Ken Elder testified at trial, "[Mr.

3

Carpenter] was **incredulous** that we [Lincoln] could think that STOLI could be part of a 419 plan." See T. Tr. Vol. XI at 2054-55 attached as Exhibit One (emphasis added).

As Bruce Mactas stated in the Universitas Arbitration, and Mr. Carpenter testified to at trial, all of the STOLI questions were answered truthfully, honestly, and accurately. But, for the purposes of this motion, assuming that the questions were not answered accurately, not one witness took the stand at trial and testified that Mr. Carpenter knowingly lied to anyone. Without an intent to deceive, there cannot be a "scheme" to deceive, and without a "scheme to deceive," there cannot be a "scheme to defraud" as a matter of law in the Second Circuit:

> Essential to a scheme to defraud is fraudulent intent. *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994). It is not sufficient that defendant realizes that the scheme is fraudulent and that it has the capacity to cause harm to its victims. *United States v. Gabriel*, 125 F.3d 89, 97 (2d Cir. 1997). Instead, the proof must demonstrate that the defendant had a "conscious knowing intent to defraud ... [and] that the defendant contemplated or intended some harm to the property rights of the victim." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999).

Also from *D'Amato* are the notable citations to *Starr, Regent Office,* and even *Mittelstaedt*:

> Therefore, an essential element of any mail fraud prosecution is proof of a "scheme or artifice to defraud." *Id.; see also United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987)....However, the government must show "that some actual harm or injury was contemplated by the schemer." *Regent Office Supply Co.*, 421 F.2d at 1180; *see also United States v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir. 1994); *Starr*, 816 F.2d at 98. *D'Amato* at 1256-57.

The reason that this is crucial in Mr. Carpenter's case is that the government (as well as the Court) has based Mr. Carpenter's theory of guilt on the Second Circuit's opinion in *Binday*, but this is what *Binday* had to say about these preeminent issues concerning Mail & Wire Fraud:

> It is not sufficient, however, to show merely that the victim would not have entered into a discretionary economic transaction but for the defendant's misrepresentations. The "right to control one's assets" does not render every transaction induced by deceit actionable under the mail and wire fraud statutes. Thus, we have repeatedly rejected application of the mail and wire fraud statutes where the purported victim received the full economic benefit of its bargain. *Binday* at 570.

4

Clearly the worst thing that can be said about STOLI is that it is "unsavory" or perhaps "disreputable," but it is not illegal. In fact, it was not until 2011 that people had to become licensed to do life settlements and every day senior citizens are pitched to sell their life insurance policies by commercials on television. Mr. Carpenter's point, here are essentially threefold:

1. There was no evidence offered at trial that the defendant lied or intended to deceive anyone;

2. Anything the defendant told to the carriers' agents in this case, he also told the **"carriers"** as a matter of common law;

3. The law of the Second Circuit as described in *Binday, Countrywide, Finazzo*, and *Mittelstaedt* is contrary to both his prosecution and conviction for Mail & Wire Fraud.

## II. NONE OF THE MAILINGS OR WIRES IN THE INDICTMENT WERE IN FURTHERANCE OF ANY SCHEME TO DEFRAUD

Just as there was no "scheme to defraud" in this case, none of the mailings or wires were in furtherance of any scheme at all. In *Binday*, the alleged mailings and wires all involved the original applications sent to the carriers. Here, because of the time delay in the prosecution, the government could not use applications sent in to the carrier in 2006 or 2007 to sustain an indictment in May of 2014. Therefore, the government had to use "premium payments" as the mailings and wires for the indictment, but none of the alleged mailings and wires were in furtherance of the fraud as required by law. *See, e.g., United States v. Tavares*, 844 F.3d 46 (1st Cir. 2016). Moreover, it is also axiomatic that any mailing or wire sent after the fraud has been completed cannot be in furtherance either. *See United States v. Altman*, 48 F.3d 96 (2d Cir. 1995), as well as the Supreme Court's decisions in *Kann v. United Sates*, 323 U.S. 88 (1944), *Parr v. United States*, 363 U.S. 370 (1960), and *United States v. Maze*, 414 U.S. 395, 400 (1974) (mailing must be for the purpose of executing the scheme, as the statute required.).

With respect to the mailing element, the Supreme Court has written:

5

The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law. *Kann* at 95.

A mailing cannot be said to be in furtherance of a scheme to defraud when it occurs after the scheme has reached fruition. See *Kann*, 323 U.S. at 94. Obviously, such a mailing cannot be considered even as incident to an essential part of the scheme. In the *Kann* case, the defendants cashed fraudulently obtained checks at various banks, knowing that the checks would be forwarded to a drawee bank for collection. The court held that the mailing was not material to the consummation of the scheme, and therefore concluded that there was no mail fraud. Id. To the same effect was *United States v. Maze*, 414 U.S. 395, 401-02, in which the Court determined that the mailing element was not satisfied by the mailing of credit card invoices for payment following the use of a stolen credit card to obtain goods and services. *See also Parr v. United States*, 363 U.S. 370 (1960)(mailing element not satisfied either by mailing of credit card statements by oil company to school district defrauded by unauthorized use of card or by mailing of checks in payment of the statements). *Altman* at 102-103.

Based on *Kann, Parr,* and *Maze*, mailings in or wiring premiums due are certainly not mailings or wirings in furtherance of any scheme to defraud. However, not only did the government use the wrong mailings and wires to prosecute this case, even the ones that it used are not found within the Statute of Limitations. See the table below:

|  | INSURED | STATE | CARRIER | COUNTS | APP DATE | POLICY DATE | CHARGE DATE |
|---|---|---|---|---|---|---|---|
| Straw 1 | Carrin, Marvin | NY | PHX | 1,2,3,4 | 7/18/06 | 8/14/06 | 6/16/09 |
| Straw 2 | Esparo, Vito | CT | PM | 5 | 7/11/07 | 2/28/08 | 4/14/10 |
| Straw 3 | Knobloch, Miriam | NY | PM | 6 | 6/30/08 | 8/1/08 | 8/29/08 |
| Straw 4 | Martinez, Teresa | CA | PM | 7,8,9,10 | 5/23/08 | 9/26/08 | 3/25/09 |
| Straw 5 | Paulsrud, Luella Mae | AZ | PHX | 11,12,13,14 | 3/14/08 | 7/4/08 | 2/1/10 |
| Straw 6 | Amsterdam, Judith | NJ | SUN | 15,16,17,18 | 3/11/08 | 5/27/08 | 8/21/09 |
| Straw 7 | Cooper, Henry | NY | PHX | 19 | 4/5/07 | 6/22/07 | 5/10/10 |
| Straw 8 | Goelzer, Ronald | TX | LFG | 20, 21 | 12/24/08 | 12/28/08 | 12/30/08 |
| Straw 9 | Musiker, Judith | NY | LFG | 22 | 3/2/07 | 3/29/07 | 3/26/09 |
| Straw 10 | Pennington, Joan | TX | LFG | 23, 24, 25 | 9/9/08 | 9/18/08 | 8/26/09 |
| Straw 11 | Jacobson, Rosa | TX | LFG | 26,27,28 | 6/19/08 | 7/7/08 | 11/4/09 |
| Straw 12 | Zahner, Beat (CT) | CT | PHX | 29,30,31,32 | 4/8/08 | 5/7/08 | 5/6/09 |
| Straw 13 | Spencer, Sash | FL | LFG | 34,48,59 | 12/17/06 | 12/22/06 | 6/3/09 |
| Straw 14 | Lambert | GA | LFG | 51 | 11/14/08 | 1/6/09 | 6/2/09 |
| Straw 15 | Sanders | TX | LFG | 54, 55 | 6/11/08 | 7/21/08 | 6/17/09 |

Moreover, Insureds 13, 14, and 15 were only inserted into the Superseding Indictment to support the money laundering counts. If there is no scheme to defraud or mailings or wires in furtherance concerning the Sash Spencer policy, then there is no mail or wire fraud to support the money laundering counts in the Indictment.

### III. MR. CARPENTER'S EVIDENCE IN SUPPORT OF HIS GOOD FAITH DEFENSE SHOULD PREVAIL IN THIS CASE

Not only did the government fail to prove Mr. Carpenter's intent to defraud beyond a reasonable doubt, they also failed to overcome Evidence offered in support of Mr. Carpenter's "Good Faith" in this case. In the Second Circuit, Good Faith is a complete defense to allegations of Mail & Wire Fraud:

> Good faith would be a complete defense: the burden is on the government to show lack of good faith beyond a reasonable doubt. *United States v. Bronston*, 658 F.2d 920, 930 (2d Cir. 1981).

Therefore, Mr. Carpenter respectfully asks the Court to hold an evidentiary hearing where Mr. Carpenter can present witnesses to further support and prove his good faith defense if necessary, which would also further support the evidence on the record that he did not intend to deceive anyone, nor had he ever lied to any carrier.

### CONCLUSION

Therefore, based on the arguments above and the other substantive arguments made in Mr. Carpenter's original Motion for a Judgment of Acquittal pursuant to Rule 29, Mr. Carpenter respectfully asks the Court to grant this Motion for Reconsideration, hold a hearing, and grant Mr. Carpenter's Judgment of Acquittal.

Wherefore, it is so moved.

**Respectfully submitted,**
Defendant, Daniel Carpenter

By _____
    Richard Brown, Esq.
    Brown Paindiris & Scott, LLP
    100 Pearl Street, 2nd Floor
    Hartford, CT 06103
    Tel 860.522.3343
    Fax 860.522.2490
    Fed Bar No. ct00009
**ORAL ARGUMENT REQUESTED**     rbrown@bpslawyers.com

## CERTIFICATION

This is to certify that on November 14, 2017, a copy of the foregoing Memorandum was served by email to all parties by operation of the Court's electronic filing system or by email on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009