UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 3:13CR226(RNC) |
| ) | |
| v. ) | |
| ) | |
| DANIEL E. CARPENTER ) | |
| ) | NOVEMBER 14, 2017 |

## MR. CARPENTER'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF MR. CARPENTER'S REQUEST FOR A NEW TRIAL PURSUANT TO RULE 33

**PRELIMINARY STATEMENT**

The defendant respectfully requests the Court reconsider the denial of his Rule 33 as the interests of justice support a new trial order in this case. First, the circumstances of Mr. Carpenter's trial incarceration made it difficult for him to assist in his own defense. Mr. Carpenter being awoken every trial day at 4:00 a.m. and transported to the Court in a cramped van in shackles until he became seriously ill and the Doctor at Wyatt intervened to ensure he was only handcuffed. Most evenings, Mr. Carpenter would not get back to Wyatt until 8:00 p.m., just in time for a quick meal and lockdown at 9:00 p.m. Any time there was a break in the trial proceedings, Mr. Carpenter was promptly returned upstairs to his holding cell without access to any files, evidence, or counsel.

Through this Motion for Reconsideration, Mr. Carpenter respectfully asserts that he was deprived of his constitutional access to counsel as a result of his significant health concerns and the circumstances surrounding his incarceration. Therefore, because Mr. Carpenter was prevented from putting on his best defense and from unlimited access to his counsel, as provided

*ORAL ARGUMENT REQUESTED*

by the Sixth Amendment, the Court should grant both this Motion for Reconsideration and Mr. Carpenter's Motion for a New Trial in the interest of justice pursuant to Rule 33.

## I. LEGAL STANDARD

Unlike the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure do not expressly provide for reconsideration. Nonetheless, the District of Connecticut's Local Rules of Criminal Procedure do contemplate the use of motions for reconsideration in criminal cases. *See* D. Conn. L. Crim. R. 1(c) ("The following Local Civil Rules shall apply in criminal proceedings: ... 7(c) (Motions for Reconsideration)."). The Local Criminal Rules in the District of Connecticut specifically provide for Motions for Reconsideration pursuant to Rule 7(c). "Because no rule of criminal procedure addresses motions for reconsideration, courts typically adopt the standards applied to such motions in civil cases....Reconsideration is appropriate only "if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." *United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir. 1994)." *Lucarelli*, 490 F.Supp.2d at 296-97. It is asserted that this Motion is necessary to "prevent manifest injustice" in this case.

## II. THE GOVERNMENT CONSTRAINED MR. CARPENTER'S ACCESS TO HIS COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT

Based on the government's complaints that Mr. Carpenter could be overheard talking to his attorneys during the presentation of the government's case, the Court instructed Mr. Carpenter to not speak to his attorneys so loudly because, as the Court stated:

> "...I don't hear what you're saying, but I am distracted by your whispering, and I notice that Mr. Novick is as well. Please understand, imagine you're going to a movie and you're trying to pay attention to the movie and the person in the row behind you is talking. It makes it difficult for you to focus on the movie and it can actually get to be annoying, and that's what I'm experiencing as I'm trying to listen to the testimony and you're whispering with your counsel." See T. Tr. Vol. III at 659-660 attached as Exhibit One.

2

Later on in the trial proceedings, the issue came up again, and defense counsel asked for a mistrial based on Mr. Novick overhearing Mr. Carpenter's protected and privilege conversations with his counsel. See Tr. T. Vol. XI at 1969-75, attached as Exhibit Two. In this particular piece of dialogue from Mr. Carpenter's trial, Mr. Novick states that he is just trying to do his job, and because Mr. Carpenter is whispering things to his attorney, "...it just becomes extremely difficult for me to do my job...." See T. Tr. Vol. XI at 1970.

Compare this statement by Mr. Novick:

"The Court's admonished the defendant to this effect, I have told counsel that it's distracting. I've looked over there to try and suggest that, please be quiet. It has not been a perpetual thing where I can hear contents. It's mostly a sort of din of noise." See T. Tr. Vol. XI at 1971.

with the following statement by Mr. Novick on the same page of the Trial Transcript:

"And, moreover, Your Honor, the particular thing that I made mention of, the whole point of my discussion was that I thought it was irrelevant to the trial and the whole line of questioning and the comments were irrelevant to the line of inquiry."

Thus, while Mr. Novick assured the Court that he did not hear what Mr. Carpenter was saying to his attorneys, he then states what Mr. Carpenter was talking about was "irrelevant to the trial and the whole line of questioning." T. Tr. Vol. XI at 1971. Therefore, it is reasonable to believe that the government had overheard at least some conversations between the defendant and his trial counsel.

Simply put, Mr. Carpenter was disadvantaged by the government during trial by failing to ensure that Mr. Carpenter had adequate opportunity to participate in his defense, have access to the necessary discovery, and have adequate ability to communicate with counsel at trial.

### III. MR. CARPENTER DESERVES A NEW TRIAL IN THE INTERESTS OF JUSTICE

Now that Mr. Carpenter is no longer incarcerated as a result of his prior conviction, the interests of fairness and justice necessitate allowing him a new trial. During every break in the trial proceedings Mr. Carpenter was escorted back to a holding cell by the marshals, further limiting his access to counsel during trial. For all of the reasons stated in Mr. Carpenter's several Rule 33 Motions, a new trial is appropriate for Mr. Carpenter. Moreover, it is respectfully suggested that the Court hold a hearing and grant this Motion for Reconsideration based on the fact that Mr. Carpenter's case is unique and he did not receive a fair trial with full assistance of counsel and he was not allowed to put on his "best defense" as guaranteed by the Constitution and the Supreme Court.

As the Supreme Court said in *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942), "[The defendant] must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court." *Id.* at 279. American courts have traditionally followed Blackstone's "ancient" English rule, that "[O]ne at the trial should have the unrestrained use of his reason, and all advantages, to clear his innocence. Our American courts adhere pretty closely to this doctrine." *See Deck v. Missouri*, 544 U.S. 622, 627 (2005).

Moreover, the remedy here is to give Mr. Carpenter unfettered access to the discovery in this case, unfettered access to his attorneys at a new trial, including lunch, without being taken back to a holding cell.

## CONCLUSION

For the reasons stated in his prior motions and for the reasons above, Mr. Carpenter respectfully moves this Court to grant this Motion for Reconsideration and order a new trial for Mr. Carpenter in this case.

Wherefore, it is so moved.

**Respectfully submitted,**
Defendant, Daniel Carpenter

By _____
Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009
rbrown@bpslawyers.com

**ORAL ARGUMENT REQUESTED**

# EXHIBIT ONE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

------------------x
                  :
UNITED STATES OF AMERICA    :   No.  3:13CR226(RNC)
                            :
      vs.                   :
                            :
DANIEL CARPENTER, ET AL,    :
                            :   HARTFORD, CONNECTICUT
          Defendants.       :   February 19, 2016
                            :
------------------x

BENCH TRIAL
VOLUME III

BEFORE:

   HON. ROBERT N. CHATIGNY, U.S.D.J.

Darlene A. Warner, RDR-CRR
Official Court Reporter

1   yesterday, but I take Mr. Brown at his word that he's
2   doing his best to provide me with the information to the
3   extent that it exists.
4       At some point though, Your Honor, I do believe
5   we're -- I don't like the idea of precluding. I want to
6   protect this record here. I want the defendant to be able
7   to put on whatever defense he wants to put on, but at some
8   point it just becomes unreasonably unfair to the
9   government.
10      THE COURT: Mr. Brown, how much time do you need
11  to do this realistically?
12      MR. BROWN: Probably by the middle of next week,
13  Your Honor.
14      THE COURT: Then that's the deadline, okay? I
15  think that that helps everybody, because it gives you a
16  deadline, it the government reassurance.
17      MR. NOVICK: Thank you, Your Honor.
18      THE COURT: Last thing, Mr. Carpenter, please
19  understand that I want you to be able to confer with your
20  counsel whenever you need to and whenever you want to, but
21  I can hear you. I don't hear what you're saying, but I am
22  distracted by your whispering, and I notice that
23  Mr. Novick is as well.
24      Please understand, imagine you're going to a
25  movie and you're trying to pay attention to the movie and

1  the person in the row behind you is talking. It makes it
2  difficult for you to focus on the movie and it can
3  actually get to be annoying, and that's what I'm
4  experiencing as I'm trying to listen to the testimony and
5  you're whispering with your counsel.
6  　　　Again, I don't want to curb your consultations,
7  but I must ask that somebody do something to deal with
8  this problem because it's a problem.
9  　　　THE DEFENDANT: From what I understand, Your
10 Honor, they turned around the microphone and I was totally
11 unaware that I was causing any distraction. So my counsel
12 here turned around the microphone and gave me a -- so
13 hopefully it's a solved problem, and I apologize.
14 　　　THE COURT: No, no, there's no need for you to
15 apologize. I appreciate your consideration. But even as
16 late as the very end of this last witness's testimony when
17 you were conferring with Mr. Brown, Mr. Novick was having
18 difficulty hearing the witness because of the
19 interference.
20 　　　Am I right, Mr. Novick?
21 　　　MR. NOVICK: Yes, Your Honor.
22 　　　THE COURT: It's been a problem for me and I
23 believe it's been a problem for other people. So I don't
24 know what we can do differently, but we need to do
25 something.

1           MR. BROWN:  Actually we we can shut off this
2    microphone.
3           MR. NOVICK:  I don't know it's the microphone,
4    Your Honor.
5           THE COURT:  I think you have a deep voice that
6    tends to carry.
7           MR. BROWN:  We'll do our best to make sure it
8    doesn't happen.
9           THE COURT:  It may be that you can -- well,
10   let's see how it goes.
11          THE DEFENDANT:  We're going to use the yellow
12   sticky notes and things like that; and once again, I
13   apologize and we'll definitely be careful with the
14   microphones.
15          THE COURT:  Okay, thank you.
16                (Proceedings adjourned at 4:47 p.m.)
17
18
19
20
21
22
23
24
25

# EXHIBIT TWO

```
1                UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF CONNECTICUT

3

4

5    - - - - - - - - - - - - - - - x
                                   :
6    UNITED STATES OF AMERICA       :   No.  3:13CR226(RNC)
                                   :
7                vs.                :
                                   :
8    DANIEL CARPENTER, ET AL,       :
                                   :   HARTFORD, CONNECTICUT
9                    Defendants.    :   March 3, 2016
                                   :
10   - - - - - - - - - - - - - - - x

11

12
                       BENCH TRIAL
13                     VOLUME XI

14

15

16        BEFORE:

17             HON. ROBERT N. CHATIGNY, U.S.D.J.

18

19

20

21

22

23

24                              Darlene A. Warner, RDR-CRR
                                Official Court Reporter
25
```

10:00 A.M.

THE COURT: Good morning.

Mr. Novick?

MR. BROWN: Good morning, Your Honor, we're all set.

THE COURT: Mr. Brown?

MR. BROWN: Your Honor, there's a concern that's been raised, Your Honor, and I feel we need to -- actually this is part of the problem.

The Court notes, I turn the microphone around when I'm sitting at the desk with my client and co-counsel, and I do that, quite frankly, in part because of the Court's comments on the first day of trial. We're trying to obviously respect the Court's hints in terms of communication. We've been trying to do our best to, for obvious reasons I might add, self-serving reasons, to keep our communications confidential.

Yesterday counsel for the government in making an argument and trying to I suppose influence the Court on a particular issue did comment that he had overheard some conversation between counsel and the defendant, or the defendant sometimes, in attempting to talk to counsel apparently. And our concern is of course that one thing is sacred, and that is communication between counsel and

1  client. And we were disturbed to learn that for whatever
2  reason counsel has been hearing some of our conversations,
3  and I don't know what the extent of those conversations
4  were. I don't know if it turns out to be a violation of
5  the Sixth Amendment, effective assistance of counsel, if
6  it's not really confidential, Your Honor. And I would ask
7  the Court to inquire of counsel exactly what he's heard.
8      I just don't know whether or not this should be
9  a motion for mistrial or whatever because I don't have
10 enough information yet.
11     THE COURT: Thank you.
12     Mr. Novick?
13     MR. NOVICK: Your Honor, first of all, I
14 apologize for the comment yesterday. It was imprudent.
15 And it was in part, Your Honor -- I should not act out of
16 frustration, but it is frustrating, because I don't want
17 to hear what the defendant is saying, and I hope the Court
18 understands that.
19     It's very difficult to both try to listen to
20 counsel and at the same time have in the background,
21 noise, outbursts, things like that, and I am doing my best
22 not to listen. And then sometimes when I hear argument on
23 one side and argument on the other side, it just becomes
24 extremely difficult for me to do my job, which is to
25 concentrate on what counsel is saying and what the witness

1  is saying.
2  　　　　I have gone so far as to move closer to
3  Mr. Patel, to turn my chair to face the other way.  So I'm
4  taking the steps that I know how to do.
5  　　　　The Court's admonished the defendant to this
6  effect, I have told counsel that it's distracting.  I've
7  looked over there to try to suggest that, please be quiet.
8  It has not been a perpetual thing where I can hear
9  contents.  It's mostly a sort of din of noise.
10  　　　　It was just on that particular occasion what was
11  frustrating is I'm hearing one argument on one side and
12  one argument on the other side, and it occurred to me to
13  be some disingenuity, which was frustrating for me trying
14  to assess how to respond to particular arguments.
15  　　　　I will continue to try to tune it out.  It's
16  certainly not my intention to -- never my intention to
17  invade the defense camp.
18  　　　　And moreover, Your Honor, the particular thing
19  that I made mention of, the whole point of my discussion
20  was that I thought it was irrelevant to the trial and the
21  whole line of questioning and the comment were irrelevant
22  to the line of inquiry.
23  　　　　So again, Your Honor, I apologize, it was an
24  imprudent remark, and I will continue to do my best to
25  avoid hearing anything.  That's all, Your Honor.

1    MR. BROWN: Your Honor, the -- and I appreciate
2    those words, Your Honor, but my concern really is whether
3    or not in fact he overheard any private conversation
4    because that could affect our defense, Your Honor. So I
5    don't know if it's just he heard noise or if he actually
6    heard.
7    So I would simply ask the Court, he's an officer
8    of the Court, I have no reason to believe he would
9    misstate the truth, but I certainly would need to know and
10   my client wants to know whether or not he actually
11   overheard us discuss any strategy or any comments.
12   The fact that my client and I have a
13   conversation, I wouldn't necessarily characterize it, by
14   the way, as any kind of disagreements or anything, which
15   is he writes notes because of that's the way we're trying
16   to do things in order to keep the noise level at a
17   minimum. But certainly at times during a witness's
18   testimony, it's not unusual for him, and I actually want
19   him to do it, is to alert me if he believed the witness is
20   not being accurate in terms of some of the information
21   being conveyed to the Court.
22   So that's what goes back and forth, Your Honor.
23   We're not talking about baseball or other things. We're
24   just simply trying to do our best to prepare to
25   cross-examine these witnesses, Your Honor. And I simply

1 need to know on the record whether or not counsel for the
2 government overheard specifics in any conversation I had
3 with my client.
4        THE COURT: Mr. Novick?
5        MR. NOVICK: Certainly. I recall nothing else
6 specific. To be clear, I do not hear Mr. Brown at all,
7 and perhaps that's just Mr. Brown's years of experience,
8 he modulates his voice. And that's one of the issues
9 going on here. I'm not at all suggesting that this is the
10 defendant's fault. This is a difficult contrived
11 situation that we find ourselves in all trying to work in
12 the same area, but trying to have our own private
13 conversations, and I recognize it's difficult. We do the
14 same thing on our side and make sure that when we're
15 talking, we are doing so in hushed tones and with our
16 hands over our mouths, and I expect the same of the
17 defense.
18        There's nothing else that I can report to the
19 Court that I've heard. Just noise.
20        THE COURT: Have you -- picking up on
21 Mr. Brown's specific request, have you overheard any
22 attorney/client discussions of defense strategy?
23        MR. NOVICK: No, Your Honor.
24        THE COURT: Do you feel you have in any way
25 gained an unfair advantage as a result of whatever you

1  have picked up?

2  MR. NOVICK: No, Your Honor. If anything, I
3  feel I've gained a disadvantage by having my attention
4  diverted in multiple directions during the course of
5  trial.

6  THE COURT: I do regret that the physical set up
7  in the courtroom and the acoustics are such that this
8  issue arises.

9  I will say that I can understand Mr. Novick's
10  position because that's what was happening for me. I
11  didn't want to hear what was being said, but I could hear
12  the noise, for lack of a better word, and I wish I had a
13  better word.

14  So I credit Mr. Novick's explanation and I don't
15  think there's a basis for a mistrial.

16  MR. NOVICK: Just to add to the record here,
17  Your Honor, I don't know where this will go, but as Your
18  Honor is aware, I've been here for trial in the past and
19  I've never had the issue before. I've appeared in this
20  courtroom before Your Honor, before Judge Droney, I've
21  appeared in the other courtroom, south courtroom, before
22  Judge Thompson for several trials in the past, and never
23  had the same issue and it's the same set up.

24  This is a new issue for me, so I don't think
25  that the courtroom set up in here is any different or

1    anything out of the ordinary that all of the defendants
2    have to sit through trial in.
3        THE COURT: Yes, I didn't mean to suggest that I
4    think that anybody's at fault.
5        At any rate, I think we should proceed.
6        Do you have your witness for us?
7        MR. NOVICK: We do. We call Ken Elder.
8        THE COURT: Good morning. If you would please
9    stand at the chair, our clerk will swear you in.
10       THE CLERK: I'm going to ask you to raise your
11   right hand.
12
13                   KENNETH ELDER,
14       called as a witness, having been first duly
15       sworn or affirmed, was examined and testified as
16       follows:
17
18       THE CLERK: Please be seated.
19       Please state your name and spell your last name
20   for the record.
21       THE WITNESS: Kenneth Elder, E-L-D-E-R.
22       THE CLERK: Your business address, please?
23       THE WITNESS: 100 North Green Street,
24   Greensboro, North Carolina, 27401.
25       THE CLERK: Thank you. Please be seated.

## CERTIFICATION

This is to certify that on November 14, 2017, a copy of the foregoing Motion was served by email to all parties by operation of the Court's electronic filing system or by email on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

/s/ Richard Brown
Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009