# EXHIBIT ONE

## CHERNESKI *JENCKS* STATEMENT



**DEPARTMENT OF THE TREASURY**
**Internal Revenue Service**
**Criminal Investigation**

## Memorandum of Interview

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000230004 | **Location:** | NOVA/Benistar |
| **Investigation Name:** | Guy Neumann | | 100 Grist Mill Road |
| **Date:** | April 20, 2010 | | Simsbury, CT 06070 |
| **Time:** | ~9:05 - 11:10 am | | |
| **Participant(s):** | Stephen Cherneski, Witness | | |
| | Jeffrey A. Hencke, Special Agent | | |
| | Crystal Brinson, Special Agent | | |

On the above date and approximate time, Special Agent Crystal Brinson and I met with Stephen Cherneski at the above stated location. We identified ourselves to Cherneski and I explained to him that we were assisting the United States Attorney's Office located in the Eastern District of Wisconsin with a Grand Jury investigation and wanted to ask him some questions. Cherneski agreed to answer our questions, however, at one point during the interview Cherneski asked if he was required to answer the questions. I explained to Cherneski that he was not required to answer the questions and could choose not to answer some questions or stop the interview at any point. In response to our questions, Cherneski provided the following information.

1. Cherneski currently resides at 6-C Talcott Forrest Road, Farmington, CT. His cell phone number is ███████. Cherneski received a bachelor's degree in economics with a minor in finance from Central Connecticut State. Cherneski was previously a professional hockey player.

2. Cherneski described his role for NOVA Benefit Plans/Benistar as providing technical and educational support for employers and advisors. Cherneski currently receives his paycheck from Benistar Admin Services and has been working for Benistar Admin Services since February, 2005. Cherneski believes that all employees located at 100 Grist Mill Road, Simsbury, CT receive their paycheck from Benistar Admin Services even though there are various businesses being operated out of the building. Cherneski is paid $60,000 per year plus bonuses. Cherneski became employed by Benistar Admin Services because of his friendship with Guy Neumann.

3. Cherneski had no prior knowledge or experience with 419 welfare benefit plans prior to his employment for Benistar Admin Services and his work for NOVA/Benistar. Cherneski learned about 419 welfare benefit plans through on the job training and read various books and tax law to educate himself to do his

Memorandum   Page 1 of 6                                               U.S. Treasury Criminal Investigation

IRS00221

job. Cherneski reports to Guy Neumann and Wayne Bursey. No person reports to Cherneski.

4. US Benefits Group is a business that provides information on various employee plans to a network of brokers. US Benefits Group does not administer welfare benefit plans. Cherneski stated that US Benefits Group is run by a collection of people and no one person. Cherneski stated that many individuals work for various companies operating out of the building at 100 Grist Mill Road, Simsbury, CT. Cherneski believes that US Benefits Group was started prior to his employment.

5. Benistar is a 3rd party administer of various retirement plans. Benistar was started prior to Cherneski's employment. Molly Carpenter is the chair person of Benistar. Cherneski stated that he does not deal with Benistar plans and is not familiar with its' plans.

6. Benefit Plan Advisors previously administered 419(e) welfare benefit plans, including the Grist Mill Trust. Cherneski stated that as of January 1, 2010, all 419 plans are administered by NOVA Benefit Plans. (NOVA)

7. NOVA currently administers all 419 welfare benefit plans. Prior to 1/1/2010, NOVA only administered NOVA 419A(f)(6) plans. NOVA was started prior to Cherneski's employment. NOVA is operated through a board containing Cherneski, Guy Neumann, Wayne Bursey, Dan Carpenter, Molly Carpenter, and Kathy Kehoe. NOVA administers its 419A(f)(6) plans through four (4) trusts. These trusts are SADI, LTC, Life 1, and Life 5.

8. A 419A(f)(6) welfare benefit plan is a plan containing 10 or more employers. In a 419A(f)(6) plan, the employer can deduct the amount of the contribution as a business expense, with no limitation.

9. In a NOVA 419A(f)(6) welfare benefit plan, a company/employer contributes money for the benefit of one or more employees (covered employee) of that company. In the plan, a trust (i.e. SADI) is the owner and beneficiary of the policy. The covered employee than designates a beneficiary for the plan. The trust then purchases an annuity or life insurance policy with the proceeds contributed to the trust by the employer. The trust does keep 6% of the amount contributed and the employer is required to pay an additional $1,500 enrollment fee to NOVA. The initial contribution by the company/employer is given to the trust (i.e. SADI). The trust would then deposit the check and write a separate check to the appropriate insurance company in which the trust has purchased the annuity and life insurance from.

10. Beneficiaries in 419A(f)(6) plans administered by NOVA received benefits from the plan through either a qualifying event or death. The death benefit for the 419A(f)(6) plans is discussed in the plan documents, but is usually the value of the annuity or life insurance. A qualifying event is a permanent disability or disfigurement to the covered employee. An employer can also terminate the

plan. If the employer terminates the plan, the policy becomes an asset of the trust and the employer never receives any contributed money back. The covered employee can continue in the plan by purchasing the plan from the trust for the fair market value (FMV) of the annuity or life insurance policy purchased with the amount originally contributed by the employer. Revenue Procedure 2002-25 defines how the FMV of a life insurance policy is valued. The trust will also make a loan arrangement with the covered employee to assist the covered employee in purchasing the plan. In this loan arrangement, the covered employee is required to pay three years of interest up front. If NOVA loans money for the covered employee to purchase the plan, NOVA puts a collateral assignment on the policy. Collateral assignments are placed on both annuities and life insurance policies. Cherneski stated that he does not know much about the loan documents.

11. If the employer terminates the plan and the covered employee does not choose to continue in the plan, the money contributed by the employer is forfeited. Cherneski believes that money has been forfeited in the past but can not cite specific examples.

12. If an annuity is purchased with the employer contribution and there is a qualifying event, the covered employee receives money based upon a created formula. This money is paid out over 60 months after a one year waiting period. The formula is based upon the amount of the contribution and the amount of time in the plan. Cherneski stated that the covered employee can receive more money than what was initially contributed. Cherneski stated that the list of what qualifies as a disability of disfigurement is written in the plan documents, but does not know what the plans rely on for their definition of disability or disfigurement.

13. If a covered employee wishes to make a disability or disfigurement claim, the covered employee submits a claim form along with documents from the employer and a doctor. Wayne Bursey, the trustee, makes the decision to either accept or not accept the claim. Cherneski does not know if there have been any claims denied.

14. Cherneski stated the money contributed by employers into NOVA plans are comingled into trust accounts, (i.e. SADI) Cherneski stated that he does not deal with the accounting side of the client funds.

15. Cherneski is not familiar with the covered employee being able to pay 10% of the FMV of an annuity policy and obtain the proceeds of the annuity. (10% buy-out) Cherneski believes that 10% buyouts were allowed in prior to his employment, but a 100% buy-out has been required since Cherneski began his employment. Cherneski stated when he talks to clients, he advises them to never buy-out of the plans, however the plan documents do state the covered employee can pay 100% of the FMV to purchase the plan. Cherneski does not know of any employee of NOVA/Benistar that is allowing a 10% buy-out.

Memorandum   Page 3 of 6                                           U.S. Treasury Criminal Investigation

IRS00223

16. I explained to Cherneski that I believed that 10% buy-outs were still happening in the last few years. Cherneski stated that he is close to 100% sure that there are no 10% buy-outs. Cherneski again stated that he did not promote 10% buy-outs and has not heard of 10% buy-outs in the last 3 or 4 years. Cherneski stated that clients may ask about a 10% buy-out, however Cherneski would tell the client that there is only 100% buy-outs.

17. I explained to Cherneski that lying to a federal agent is a crime. Cherneski stated that he understood.

18. Cherneski stated that he does not believe that the NOVA 419 plans can be abused because the covered employee is required to pay 100% of the fair market value of the policy. Cherneski stated that he does not know of any way plans can be used as abusive tax shelters.

19. I showed Cherneski a document titled, "Sickness Accident Disability Indemnity Plan & Trust." (Attachments 1 - 24) Cherneski stated that the document describes the SADI plan, however the document shown to him is an old version. The new version would show a revision date on the cover page.

20. I showed Cherneski a copy of a letter dated April 18, 2005 to NOVA Benefit Plans, LLC from John Reid of Edwards & Angell LLP. (Attachments 25 - 38) Cherneski stated he is familiar with the letter, but does not give the letter to clients unless the client requests it. Cherneski has never met John Reid.

21. Cherneski is not aware of the insurance companies from whom they purchase annuities or life insurance contract having had concerns with the collateral assignments and any Forms 1099 to be issued by them.

22. Cherneski is aware that Benistar 419 Plan and Trust is in a dispute with the IRS and the dispute is being resolved through the courts. The Benistar 419 Plan & Trust is a pre-2003 plan.

23. Cherneski stated that the SADI plan is not a listed transaction. Cherneski stated there is a document that explains why NOVA plans are not listed transactions. I then showed Cherneski a document title "NOVA Benefit Plans LLC and "Why we not a Tax Shelter..." (Attachments 39 - 55) Cherneski stated this document explains why NOVA plans are not listed transactions. Cherneski does not know who prepared the document, however the document I showed to him is an old version. The new document does not contain the statement in the third paragraph about being audited if one files a Form 8886.

24. The difference between Grist Mill trust and the NOVA plans is in the timing of the deduction. In the Grist Mill Trust, the employer is able to only deduct qualifying costs. Also, in the Grist Mill Trust, the trust files Forms 8886 for clients even though it may not be required. The Forms 8886 are filed as a precaution.

25. Other individuals that do the same type of work as Cherneski, include Guy Neumann, Rich Belding and Ron Lanza.

26. Neumann and Belding provide technical and education support for employers and advisors. Neumann also runs a life insurance business call Rex Insurance. Cherneski is not involved in Rex Insurance

27. Wayne Bursey is the trustee for all of the 419 plans. Bursey works full time at the offices locate at 100 Grist Mill Road, Simsbury, CT.

28. Kevin Slattery does not know much about 419 plans. Slattery handles much of the administrative stuff involving benefits.

29. Dan Carpenter is a consultant and outside counsel for all of the businesses. Carpenter also operates a business named ARIA.

30. Molly Carpenter is the Chairman of Benistar Admin Services, Inc. (BASI) Molly runs the day to day operations of the various businesses.

31. Cherneski stated that some of its clients are or have been audited by the IRS. Attorney Ira Stechel is representing Benistar Plan clients with the IRS.

32. STEP plans are older plans and are not currently sold.

33. Physical files for the clients are kept on site. Kathy Kehoe handles the administrative side of the business. Cherneski is now aware of files being stored off-site. Cherneski stated that a lot of the plan and client information is stored on the computers.

At approximately 11:10 am, Supervisory Special Agent Kathy Enstrom entered the room and stated that an attorney outside of the building wished to speak with Cherneski. The interview was then concluded.

I prepared this memorandum on April 23, 2010, after refreshing my memory from notes made during and immediately after the interview with Stephen Cherneski.

Memorandum Author *[signature]*
Jeffrey A. Hencke
Special Agent

*Crystal J Brinson*
Crystal Brinson
Special Agent

# EXHIBIT TWO

SYNOPSIS OF THE CASE

## Synopsis of the Case

NOVA Benefit Plans is a company located in Simsbury, CT. Per its brochure, the company offers comprehensive welfare benefit plans – with plans offering single or multiple benefits, ranging from sickness & accident to long term care and life coverage.

NOVA Benefit Plans was incorporated in 2004 in the state of Delaware. Numerous companies related to NOVA have also been identified, including Benistar, Benefit Plan Advisors, and US Benefits Group. It is believed that all of the companies are run by the same individuals and that the head of these companies is Wayne Bursey.

419 Plans, or Welfare Benefit Plans, are non-qualified plans which businesses can establish to compensate employees in the event of situations such as sickness, disability, and/or disfigurement. Due to the fact that the plans are non-qualified, as opposed to a qualified plan like a 401K, there are no funding limits for the Plan and employers do not have to fund the plan for all employees. Employers can be selective and fund the Plan for as few as one or two employees. Money that is contributed to the plans can be written off by the business as an expense in the year that the contribution is made. NOVA Plans sells its 419 Plans as "10 or more employer plans", meaning that purportedly at least 10 employers contribute to the same plan which is then considered a single plan. If an employer is invested in a 10 or more employer plan, the IRS allows the business to expense an unlimited contribution amount.

The funding of a 419 plan works as follows:
- A business signs up for the 419 Plan and sends a contribution to a trust administered by NOVA.
- The business then claims an expense for the full amount of the contribution.
- The trust, for its part, purchases an annuity or life insurance policy from an insurance company with the covered employee as the beneficiary.

If the plan is administered properly, beneficiaries of the 419 Plans are only able to receive a distribution by filing a valid claim for a sickness, disability, or disfigurement. Per IRS regulations, if a valid claim is approved, the beneficiary receives a distribution from the plan, usually tax free.

Information received from a reliable cooperating witness (CW), indicates that NOVA Benefit Plans is promoting and administering abusive 419 Plans. The CW is an independent broker who sold NOVA 419 Plans to numerous clients in the Milwaukee, WI area. The CW has been selling 419 and 412i Plans through NOVA and their predecessor Benistar since 2002. The CW said that 412i plans were similar to 419 plans; however in 2005, IRS rules changed and 412i plans became less attractive compared to 419 Plans. The CW provided information on 14 clients who he assisted in setting up NOVA and/or Benistar 419 Plans. The 14 Plans had contributions totaling well over $8 million.

Per the CW, NOVA knowingly administers their 419 Plans in a way that allows clients to use the plans as abusive tax shelters. The CW explained that he sold the 419 Plans to his clients as a disability plan with the option to get money out of the plan tax free. NOVA is allowing beneficiaries to abuse the Plans in at least two ways:

- First, per the CW, NOVA approves just about any claim that is filed by a beneficiary no matter how frivolous. For example, one of the CW's clients filed a claim for having a mole removed that left a small scar. NOVA approved the claim and is currently paying out the full contribution amount, less fees, over 60 months. The CW has had conversations with Wayne Bursey where Bursey said that if a beneficiary wants to get money out of the plan, NOVA encourages them to file a claim because they have made it so easy for a claim to be approved.

- Secondly, NOVA allows businesses to terminate their 419 Plans. If a business terminates the plan, NOVA gives the beneficiary the option of purchasing the Plan for 10% of its cash value. Once the beneficiary buys out the plan, they receive a 1099 from the insurance company that held the annuity. The 1099 will reflect the basis of the original purchase amount; however that is not the proper basis for the beneficiary. The beneficiary should have no basis in the annuity since the business, not the beneficiary, made the contribution. Due to the incorrect basis, the taxpayer is told that they owe little or no taxes. The CW said that NOVA knows that 1099's issued to the beneficiary by the insurance company are incorrect.

Of the 14 plans set up by the CW, eight plans, totaling well over $4 million in contributions, have been terminated and cashed out. In addition, multiple claims totaling approximately $1 million have been approved.

Due to the ease of getting money out of the plans virtually tax free, by filing a claim or terminating, the plans are being sold as abusive tax shelters.

Continued ... Enforcement Action Review Form

The fact that NOVA's 419 Plans qualify for the 10 or more employer exemption is also in question. In a 10 or more employer plan, the contributions of all of the employers are supposed to be pooled together and accounted for as one plan. However, NOVA appears to be treating each employer separately. For example, NOVA purchases an annuity for each individual beneficiary. If the beneficiary files a claim or terminates the plan they are only entitled to what they contributed.

This investigation utilized a Three Contact Operation and also a Group II Undercover Operation. The undercover contacts confirmed the CW's allegations regarding NOVA. The end result of the abusive 419 plans is that individuals are able to circumvent IRS regulations and obtain money from businesses that they have an interest in virtually tax free. By using a 419A(f)(6) plan, a business can contribute money, which is deductible as a business expense, to the plan on behalf of a covered employee. Then, with the assistance of NOVA, at a later date the covered employee is able to obtain the money contributed to the plan tax free either through a ginned-up disability (disability payments are generally not includable in income under Section 104 of the Internal Revenue Code) or through a misstated basis when the 419A(f)(6) plan is terminated. In essence, NOVA is providing a blue print, and the means, for business owners and individuals to underpay their taxes.

### A) Significance Evaluation

Per contacts with Neumann, NOVA has thousands of clients and over a billion dollars invested for those clients. The CW provided information that he alone has 14 clients who have invested over $8 million in the 419 Plans. Due to the statements of Neumann and the information provided by the CW, the tax loss associated with NOVA's clients is anticipated to be very significant.

SB/SE has identified some 419 Plans as Abusive Tax Avoidance Transactions. Per their website, promoters are offering plans that purport to provide employee pre-retirement or post-retirement benefits, such as death, medical, dental, life insurance, disability and severance pay. Promoters claim that employer contributions to these plans are tax-deductible when paid, relying on the use of single employer plans under IRC Section 419(e), the 10 or more employer exception in IRC Section 419A(f)(6) or the Bargaining Agreement exception in IRC 419A(f)(5). Arrangements providing welfare benefits may have tax consequences different than what the promoter claims. Depending on the facts and circumstances, a particular arrangement could instead be providing dividends to the owners of a business that are includible in the owners' income and not deductible by the business. The arrangement could also be subject to the split dollar regulations or be a nonqualified deferred compensation plan.

LMSB has an open Promoter Case, or "6700 Investigation", on Wayne Bursey and NOVA. Currently, the case is stalled due to the fact that Bursey has not complied with a summons issued for his testimony. LMSB is currently pursuing summons enforcement activities in order to force Bursey to comply. LMSB believes that the summons enforcement process could take several months.

Pursuant to an ongoing project, LMSB is currently disallowing NOVA 419 Plan contributions for companies that expense the contributions. The contributions may also be includable as income on the personal tax returns of beneficiaries in the year that the contributions are made.

The LMSB case on NOVA is related to an earlier investigation of a company by the name of Benistar. NOVA was created by the operators of Benistar. The CW believes that NOVA may have been created because the IRS was having issues with Benistar's 419 Plans.

### B) Intrusiveness Evaluation

It is unlikely that records, including customer lists, pertinent to the investigation would be obtained through the use of a subpoena. LMSB currently has an open 6700 investigation on NOVA and Wayne Bursey. The case is stalled due to the fact that NOVA and Wayne Bursey have not complied with an IRS summons for documents and testimony. Due to the noncompliance with the summons, it is anticipated that a subpoena would garner the same result. Further, based on the investigation to date, it appears that NOVA makes a living out of impeding the IRS. Therefore, NOVA's cooperation with a criminal investigation is highly unlikely.

# EXHIBIT THREE

SEARCH WARRANT

United States District Court

DISTRICT OF _____CONNECTICUT_____

In the Matter of the Search of
(Name, address or Brief description of person,
property or premises to be searched)

SEARCH WARRANT

CASE NUMBER:

The office of NOVA BENEFIT PLANS LLC, also known as BENISTAR, located at 100 Grist Mill Road, Simsbury, Connecticut.

To: Shaun Schrader, IRS-CID and any Authorized Officer of the United States

Affidavit(s) having been made before me by _Special Agent Shaun Schrader_ who has reason to believe that on the person of or _x_ on the property or premises known as (name, description and/or location)

The office of NOVA BENEFIT PLANS LLC, also known as BENISTAR, located at 100 Grist Mill Road, Simsbury, Connecticut, 06070. The property is described as a single story office building. The lower portion of the building consists of red brick and windows, while the upper portion of the building consists of horizontal gray siding. The property is accessed by a short driveway off of Grist Mill Road. At the bottom of the driveway is a red brick structure with a sign attached to it that says "100 GRIST MILL RD." At the top of the driveway, as you approach the parking lot, is a wooden sign that reads "DIRECTORY, ENTRANCE 1, BENISTAR." There is no signage on the exterior of the building itself.

in the _____ District of _____CONNECTICUT_____ there is now concealed a certain person or property, namely (describe the person or property to be seized)

*See* Attachment B.

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before *April 25, 2010*

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime – 6:00 A.M. to 10:00 P.M.) ~~(at any time in the day or night as I find reasonable cause has been established)~~ and if the person or property be found there to seize same, leaving copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to THOMAS P. SMITH, UNITED STATES MAGISTRATE JUDGE as required by law.

April _16_, 2010 at _1:05 p.m._            at ___HARTFORD, CONNECTICUT___
Date and Time Issued                                City and State

THOMAS P. SMITH
UNITED STATES MAGISTRATE JUDGE            _[signature] Thomas P. Smith_
Name and Title of Judicial Officer                Signature of Judicial Officer

# EXHIBIT FOUR

## SEARCH WARRANT OPERATION PLAN

INTERNAL REVENUE SERVICE – CRIMINAL INVESTIGATION
SEARCH WARRANT PLAN

## Search Warrant Date and Time

Date: April 20, 2010
Staging Time: 8:15 AM
Execution Time: ~ 9:00 AM

## Case Name and Number

Guy Neumann
#1000230004

## Case Agent

Shaun Schrader
    Cell:
    Ofc:

## Search Warrant Site

NOVA Benefit Plans AKA Benistar
100 Grist Mill Road
Simsbury, CT 06070

## Primary Objectives

1) To ensure the safety of Agents and other individuals present during the execution of the search warrant.
2) To secure evidence of abusive 419 welfare benefit plans.
3) Secure evidence of Title 26 violations and Title 18 Klein Conspiracy violations.
4) To interview key employees

## Background of Investigation

NOVA Benefit Plans is a company located in Simsbury, CT. Per its brochure, the company offers comprehensive welfare benefit plans – with plans offering single or multiple benefits, ranging from sickness & accident to long term care and life coverage.

NOVA Benefit Plans was incorporated in 2004 in the state of Delaware. Numerous companies related to NOVA have also been identified, including Benistar, Benefit Plan Advisors, and US Benefits Group. It is believed that all of the companies are run by the same individuals and that the head of these companies is Wayne Bursey.

1

INTERNAL REVENUE SERVICE – CRIMINAL INVESTIGATION
SEARCH WARRANT PLAN

NO PHOTO

Name: Kevin P Slattery
Occupation: NOVA Salesman
DOB: 1972          Height: 6' 3"
DL#:               Weight: Unknown
SSN:
Residence: 54 Oxford Street Apt C3, Hartford, CT 06105-2917

**Criminal History:**
07/24/1993 – Theft by unauthorized taking
09/27/2003 – Dispensing controlled drug - GHB

## Other Individuals at Site

NOVA Benefit plans/Benistar operates a financial services company. It is anticipated that up to 70 employees will be on site upon execution of the search warrant.

The business will be shut down for the duration of the search warrant.

Individuals present will be led to the front entrance where they will provide identification, contact information, and position with the company to the agents assigned to occupant control prior to exiting the building.

Employees will not be allowed to re-enter the building once they exit.

Interviews with the following individuals will be attempted before they leave:
- IT STAFF (CIS will handle)
- Stefan Cherneski
- Kevin Slattery
- Richard Belding
- Others willing to provide information to agents

## Use of Multiple Businesses Entities and Trusts

**Known Businesses and Trusts**
NOVA Benefit Plans, LLC
NOVA Sickness, Accident, Disability & Indemnity Trust (SADI)
NOVA Long Term Care Trust (LTC)
NOVA Life One Plan & Trust
Benistar
Benistar 419 Advantage Plan
Benistar 419 Plan & Trust
Grist Mill Trust

7

14176956.1

INTERNAL REVENUE SERVICE – CRIMINAL INVESTIGATION
SEARCH WARRANT PLAN

US Benefits Group, Inc
Benefit Plan Advisors

**Unknown Businesses and Trusts**
The above list may not be all inclusive. Be aware for other businesses and trusts promoting or administering 419 plans/welfare benefit plans.

The investigation has shown that some businesses being run out of the building *may* be legitimately providing insurance and other financial services including: Rex Insurance Services.

**Inventory Procedures**

Due to the large amount of evidence that is expected to be seized, multiple evidence loggers will be utilized. Three TFIAs will be utilized to log evidence. Once all evidence has been logged, the three TFIAs will merge their data into one complete inventory.

**Evidence Custodian**

SA Stegenga will be the on-site evidence custodian.

At the conclusion of the search, all seized evidence will be loaded into the rental truck which SA Stegenga will have control of. SAs Stegenga and Leming will transport the evidence back to Milwaukee.

**Legal Records and Taint Team**

NOVA and BENISTAR are currently under civil investigation, therefore it is anticipated that there will be attorney/client type documentation at the search warrant site. We are authorized to take legal documents such as legal opinions related to 419 plans. However, if any document appears to have attorney/client type privilege, it should be tagged and given to the taint team for review as to whether we will take the documents. They will make the decision of whether it contains privileged information. If they are unsure, it will be logged into evidence, boxed separately and later reviewed by an independent AUSA in Milwaukee.

**Medical Emergency**

911 Should be the first call

**Nearest Medical Facility**

St. Francis Hospital
114 Woodland Street
Hartford, CT 06105

8

14176956.1

# EXHIBIT FIVE

## ATTORNEY GUARNIERI
## *BRADY/JENCKS* LETTER

## BROWN PAINDIRIS & SCOTT, LLP

Attorneys at Law

RICHARD R. BROWN
NICHOLAS PAINDIRIS
RONALD T. SCOTT
JOHN D. MAXWELL
KATE W. HAAKONSEN
SIMON J. LEBO
SEAN M. PEOPLES
DAVID S. RINTOUL
J. LAWRENCE PRICE
DAVID K. JAFFE
BARRY F. ARMATA †
BRIDGET C. GALLAGHER
BRUCE E. NEWMAN ▫
REGINA VON GOOTKIN
KRISTINA M. LENDA
CHERYL L. V. CASSELLA
CODY N. GUARNIERI
LINDSAY E. WEBER †
STEPHEN P. SOBIN

100 PEARL STREET

HARTFORD, CONNECTICUT 06103

(860) 522-3343

FAX (860) 522-2490

www.bpslawyers.com

2252 MAIN STREET
GLASTONBURY, CT 06033
(860) 659-0700
FAX (860) 652-4382

42 EAST HIGH STREET
EAST HAMPTON, CT 06424
(860) 267-2044

747 STAFFORD AVENUE
BRISTOL, CT 06010
(860) 589-4417

†ALSO ADMITTED IN MA
•ALSO ADMITTED IN NY
▫ALSO ADMITTED IN CA

February 2, 2016

A.U.S.A. David Novick
Office of the U.S. Attorney
157 Church Street
New Haven, CT 06510

Re: **U.S.A. v. Daniel E. Carpenter**

Dear Attorney Novick:

This letter, in part, follows up with my letter to you of December 24, 2015. As noted therein, and in response to the Government's tentative witness list of December 16, 2015, it has come to our attention that we do not have in our possession any reports of interviews conducted with Terry Sevold or Frank Best. We also do not have such reports related to David Siewert. Would you kindly confirm that no such interviews were conducted or, alternatively, forward any such interview reports to my attention at your earliest convenience.

Additionally, the defense respectfully requests that any other Jencks Act, 18 U.S.C., §3500 materials which have not been provided to date be forwarded at your earliest convenience. In this regard, I also note that we have been provided only 16 pages of notes and memos taken or authored by Federal authorities investigating this case. Please confirm that no further responsive materials are forthcoming, as well as the identity(ies) of the author(s) of the handwritten notes received to date, (misc. 000003-6, 8-9).

Finally, as a matter of procedure, in anticipation of trial, we would like to inquire if it is your office's preference that exhibits which the defendant expects to offer at trial contain the necessary BATES number, where possible.

Thank you for your kind attention to this matter.

Sincerely,

## BROWN PAINDIRIS & SCOTT, LLP

November 28, 2017
Page 2

Cody N. Guarnieri, Esq.

cc: Richard R. Brown, Esq.
    Daniel E. Carpenter, #90792-038