UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DANIEL E. CARPENTER )<br>) | CRIMINAL NO. 3:13CR226(RNC)<br><br><br>DECEMBER 5, 2017 |

**MR. CARPENTER'S REPLY TO THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL FOR ALLEGED *BRADY-GIGLIO-BAGLEY* VIOLATIONS**

I. **THE *BRADY-GIGLIO-BAGLEY* VIOLATIONS IN THIS CASE WARRANT DISMISSAL OF THE INDICTMENT OR AT THE VERY LEAST A NEW TRIAL**

In its Omnibus Brief (Doc. 313), the government confuses its obligations under the *Jencks* Act, 28 U.S.C. §3500, with its duties and obligations under *Brady-Giglio-Bagley* and their progeny to provide material exculpatory evidence to the defendant prior to trial so the defendant has the opportunity to effectively use it in his defense. This the government did not do, as it is clear that the government did not provide Mr. Carpenter with the Cherneski *Jencks* Statement or the Synopsis of the Case prior to his trial.

At the very same time the government filed its legally unsupportable opposition brief, the Honorable Emmet G. Sullivan, the distinguished jurist in the Senator Ted Stevens case, wrote a succinct editorial in the Wall Street Journal praising the New York Courts for instituting a mandatory *Brady* order in all New York cases to limit the abuse of the *Brady* disclosure obligations by New York prosecutors. See Judge Sullivan's editorial attached as Exhibit One. Similarly, in recent years Judge Sullivan wrote an extensive letter to the Honorable Richard C. Tallman, Chairman of the Judicial Conference Advisory Committee on the Rules of Criminal Procedure,

1

advocating that all federal courts adopt the same mandatory *Brady-Giglio-Bagley* rules that Judge Sullivan ordered locally for his court after the Senator Ted Stevens matter. Because Judge Sullivan quotes from a plethora of major Supreme Court decisions so eloquently, Mr. Carpenter insisted that we quote at length from Judge Sullivan's letter to Judge Tallman as follows:

> Dear Judge Tallman:
>
> Earlier this month, Attorney General Eric H. Holder, Jr., for whom I have the highest regard, took the highly unusual, if not unprecedented, step of moving to set aside the verdict and dismiss the indictment with prejudice in the case of *United States v. Theodore F. Stevens*, Crim. No. 08-23 I (EGS) (D.O. C.). At a hearing on that motion, the government informed me that during the course of investigating allegations of misconduct, which included several discovery breaches, and preparing to respond to the defendant's post-trial motions, a new team of prosecutors had discovered what the government readily acknowledged were two serious *Brady* violations.
>
> These *Brady* violations, revealed for the first time five months after the verdict was returned, came to light only after an FBI agent filed a complaint alleging prosecutorial and other law enforcement misconduct, a new Attorney General took office, and a new prosecutorial team was appointed to respond to the defendant's post-trial motions. Attorney General Holder's response to these issues has been commendable, and I understand that he has since discussed instituting training for prosecutors regarding their discovery obligations and has publicly reminded prosecutors that their obligations to fairness and justice are paramount to all other concerns:
>
>> Your job as assistant U.S. attorneys is not to convict people, said Holder. Your job is not to win cases. Your job is to do justice. Your job is in every case, every decision that you make, to do the right thing. Anybody who asks you to do something other than that is to be ignored. Any policy that is in tension with that is to be questioned and brought to my attention. And I mean that. (quoting remarks by Attorney General Holder at his swearing-in ceremony). *See* Nedra Pickler, *U.S. Attorneys Told to Expect Scrutiny; Senator's Case Leaves Taint, Holder Says*, The Boston Globe, Apr. 9, 2009, at 8.
>
> The importance of the government's disclosure obligations cannot be overstated. Indeed, as articulated by the U.S. Supreme Court in *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999):
>
>> In *Brady*, this Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). We have since held that the duty to disclose such evidence is applicable even though there has been no request by the

accused, *United States v. Agurs*, 427 U.S. 97 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682; *see also Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). Moreover, the rule encompasses evidence "known only to police investigators and not to the prosecutor." *Id.* at 438. **In order to comply with *Brady*, therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police."** *Kyles* at 437. (Emphasis added.)

These cases, together with earlier cases condemning the knowing use of perjured testimony, illustrate the special role played by the American prosecutor in the search for truth in criminal trials. Within the federal system, for example, we have said that the United States Attorney is **"the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."** *Berger v. United States*, 295 U.S. 78, 88 (1935) (emphasis added).

In a decision issued today, the Supreme Court reiterated these principles in equally strong terms. Both the language used by the Supreme Court, and the fact that the Court was face with yet another case raising important *Brady* issues, strongly countenance in favor of the Rule 16 amendment previously proposed by the Rules Committee:

Although the Due Process Clause of the Fourteenth Amendment, as interpreted by *Brady*, only mandates the disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations. *See Kyles* at 437 ("[T]he rule in *Bagley* (and, hence, in *Brady*) requires less of the prosecution than the ABA Standards for Criminal Justice Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993)"). *See also* ABA Model Rule of Professional Conduct 3.8(d) (2008) ("The prosecutor in a criminal case shall" "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal"). As we have often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure. *See Cone v. Bell*, 129 S.Ct. 1769, 1783 n.15 (2009), *quoting Kyles* at 439; *Bagley* at 711, n.4; *Agurs* at 108.

A federal rule of criminal procedure requiring all exculpatory evidence to be produced to the defense would eliminate the need to rely on a "prudent prosecutor" deciding to "err on the side of transparency," *id.*, and would go a long way towards furthering "the search for

3

the truth in criminal trials" and ensuring that "justice shall be done." *Strickler* at 281. I welcome the opportunity to discuss this issue further.

Respectfully,
Emmet G. Sullivan

Judge Sullivan's words are reflected in the recent Supreme Court decision in *Turner v. United States*, 137 S.Ct. 1885 (2017), which also quotes *Cone v. Bell*, 556 U.S. 449, 469-70 (2009), citing the standard for *Brady-Bagley* evidence under *Kyles*:

> The Government does not contest petitioners' claim that the withheld evidence was "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler* v. *Greene*, 527 U.S. 263, 281–82 (1999). Neither does the Government contest petitioners' claim that it "suppressed" the evidence, "either willfully or inadvertently." *Id.* at 282. It does, as it must, concede that the *Brady* rule's "'overriding concern [is] with the justice of the finding of guilt,'" *United States* v. *Bagley*, 473 U.S. 667, 678 (1985) (quoting *United States* v. *Agurs*, 427 U.S. 97, 112 (1976)), and that the Government's "'interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done,'" *Kyles* v. *Whitley*, 514 U.S. 419, 439 (1995) (quoting *Berger* v. *United States*, 295 U.S. 78, 88 (1935)). Consistent with these principles, the Government assured the Court at oral argument that subsequent to petitioners' trial, it has adopted a "**generous policy of discovery**" in criminal cases under which it discloses any "information that a defendant might wish to use." Tr. of Oral Arg. 47–48. As we have recognized, and as the Government agrees, *id.*, "[t]his is as it should be." *Kyles, supra,* at 439 (explaining that a "'prudent prosecutor['s]'" better course is to take care to disclose any evidence favorable to the defendant (quoting *Agurs, supra,* at 108)). *Turner* at 1893 (emphasis added).

Not only does the government's conduct in this case not live up to Judge Sullivan's standards, it falls far short of the standards promised in *Turner* above and as outlined by Supreme Court Justice Clark writing for the Second Circuit in *United States v. Mele*, 462 F.2d 918 (2d Cir. 1972):

> While Attorney General of the United States I noticed an inscription that was carved in the oak panel of my anteroom and embossed in gold: "The United States wins its point whenever justice is done its citizens in its courts." We regret to say that the record here does not comport with that high standard. The judgment is Reversed. *Mele* at 926.

## II. THE GOVERNMENT'S OPPOSITION BRIEF IGNORES THE "BEYOND A REASONABLE DOUBT" STANDARD FOR CONSTITUTIONAL ERROR

In its attempt to distinguish legal precedent of the Second Circuit in regards to *Jencks*, the government recites a litany of cases from other circuits on pages 8-11 of its Opposition Brief before it ends with the premise that a "new trial is only warranted if the government deliberately suppressed the material" *citing United States v. Zhao Wue Chen*, 332 F.App'x. 43, 48 (2d Cir. 2009). However, that is not the correct standard for either a *Jencks* violations, or for a *Brady-Bagley* violation. *See, e.g., Turner* at 1893: "Neither does the Government contest petitioners' claim that it suppressed the evidence **either willfully or inadvertently**." (Emphasis added).

Moreover, the government's argument in its brief fails to make logical sense, as it assumes that the IRS and the DOL in this case are not merely separate agencies of the same government, but rather makes the unique claim that the AUSAs in this case are only responsible for information held by the DOL and not by the IRS, despite clear evidence of the interactions between the two over the past seven years. See, e.g., Gov. Opp. at 15-18. This is not supported by reference to the law in any Circuit, and certainly not in the Second Circuit where Mr. Carpenter can cite to a Second Circuit case cited in the government's own brief; See *United States v. Payne*, 63 F.3d 1200 (2d Cir. 1995). The government has a duty to search for *Brady-Giglio-Bagley* information possibly held by or with all branches and agencies of the government, even including the local police:

> Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense. The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation. [The] prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. Where the government's suppression of evidence amounts to a denial of due process, the prosecutor's good faith or lack of bad faith is irrelevant. *Payne* at 1208, *citing Kyles v. Whitley* at 437.

5

There are a number of other notable Second Circuit cases citing the same premise and referring to *Strickler* and *Kyles*. In the Second Circuit, under *Brady* and its progeny, the government has an affirmative duty and obligation to discuss with all of the investigators on a case the potential for any and all *Brady-Giglio-Bagley* evidence. *See, e.g., United States v. Martoma*, 869 F.3d 58 (2d Cir. 2017) (discussing the need to search the files of the SEC for *Brady-Giglio-Bagley* evidence), *United States v. Gil*, 297 F.3d 93 (2d Cir. 2002) (stating that the government had a duty to turn over a memo from the New York City Off-Track Betting Corporation ("OTB") prior to the start of the trial involving mail fraud and inflated invoices.) *Brady* material must be disclosed in time for its effective use at trial. The critical *Brady* evidence in *Gil* was a memo that was provided in a Box marked "3500 material" along with 2700 other pages a day before the trial began. The Second Circuit also went on to say that:

> The Government is reasonably expected to have possession of evidence in the hands of investigators, who are part of the "prosecution team." See *Kyles* at 438. The government thus constructively possessed the [OTB] memo long before it was turned over to the defense. *Gil* at 105-07.

The government was patently aware of the commando raid of April 20, 2010, because, as the government acknowledges, AUSA Michael Gustafson assisted AUSA Gordon Giampietro with the creation of the facially defective Warrant. See the Constitutionally Defective Search Warrant attached as Exhibit Two. Moreover, AUSA Novick subpoenaed 39 boxes of documents from that unlawful raid of April 20, 2010, (attached as Exhibit Three). Much of the evidence used at Mr. Carpenter's trial was clearly "fruits of the poisonous tree" from the Raid of April 20, 2010. But, even if there was only one piece of paper unlawfully seized, Mr. Carpenter is entitled to a new trial. *See United States v. Wey*, 256 F.Supp.3d 355 (S.D.N.Y. 2017).

Additionally, the government was fighting Mr. Carpenter in the *Bivens* action in Judge Underhill's court and even told Judge Hall, in a different matter, to unseal the Search Warrant

Affidavit that Mr. Carpenter was "anti-government" because of a book he had written describing the unconstitutional attacks on 100 Grist Mill Road. But now, more than seven years after the raid, the government makes the untenable argument that it is not responsible for any statements or information taken by the IRS, but only by the DOL. See Gov. Opp. at 18-20. However, the excerpt of Shaun Schrader's Search Warrant Plan of Operation that was filed under seal as part of Doc. 97 was not provided to Mr. Carpenter while at USP Canaan, to the best of his recollection, nor was it properly disclosed to Mr. Carpenter's defense team as "*Brady*" evidence. The fact that it was filed under seal in November of 2014 and not specifically referenced as "*Brady* Material" should preclude the government from now suggesting it was produced as "*Brady* Material". Nor is it even remotely comparable to the materiality of the Synopsis of the Case. See Synopsis of the Case attached as Exhibit Four.

Compare this to the same pages that Mr. Carpenter submitted in Doc. 243 from Shaun Schrader's civil deposition concerning the Search Warrant Plan of Operation, attached as Exhibit Five. It is clearly prohibited by the Constitution to unlawfully seize 322 boxes and 12 computer servers and then to make copies of that unlawfully-seized information and then do a data dump back to Mr. Carpenter's defense team and state that they have satisfied their obligations under *Brady-Giglio-Bagley*. "The government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials." *United States v. Thomas*, 981 F.Supp.2d 229, 239 (S.D.N.Y. 2013), *citing United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *aff'd in part and vacated in part on other grounds*, 561 U.S. 358 (2010).

However, the government's conduct in this case is even worse than the infamous conduct in the Senator Ted Stevens case. As opposed to the government's assertions in its Memo in Opposition not only did the government possess the "Cherneski *Jencks* Statement" – see copy

7

attached as Exhibit Six, it also clearly possessed the Synopsis of the Case, which was sent to the IRS higher-ups in Washington to get permission for the unlawful commando raid in the first place. Moreover, the very documents the government submitted to the Court with its memorandum clearly state that they will be **interviewing** Guy Neumann, Kevin Slattery, and Richard Belding, as well as the **testifying witness, Stefan Cherneski**. Therefore, the government cannot now claim that it had no knowledge of the Cherneski *Jencks* Statement "interview" of April 2010, when it submitted the Agent Schrader Search Warrant Plan under seal with Doc. 97 in November 2014, and that document clearly shows the intent of the government to interview and get a statement from Stefan Cherneski. And now the government states for the first time that they had a possible *Brady-Giglio-Bagley* statement from Erik Scheider that was also never turned over to Mr. Carpenter. See Gov. Opp. At 19. This is the point the government fails to understand, and the point it does not even consider in its Opposition Brief. Even assuming that the Cherneski *Jencks* Statement was not "*Jencks*", it was patently *Brady-Giglio-Bagley* information that was necessary to disclose prior to trial so that it could be effectively used in Mr. Carpenter's defense. The government misunderstands and misconstrues its heavy burden in overcoming a *Jencks* and *Brady-Bagley* violation.

In demonstrating harmless error when a constitutional violation occurs, "it is not enough to negate an effect on the outcome of the case." Rather, the government must prove that the error was **harmless beyond a reasonable doubt**. *United States v. Johnson*, 850 F.3d 515, 522 (2d Cir. 2017), *quoting United States v. Tien*, 720 F.3d 464, 469 (2d Cir. 2013), and *United States v Dominguez Benitez*, 542 U.S. 74, 81 n.7 (2004) (emphasis added). There are three components of a true *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching **(both are applicable here)**; that evidence must have been

8

suppressed by the State, **either willfully or inadvertently**; and prejudice must have ensued. *United States v. Rivas*, 37 F.3d 195, 199 (2d Cir. 2004) *quoting Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). To establish prejudice, a plaintiff need only show **materiality**:

> A showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). The touchstone of materiality is a reasonable probability of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but *whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. Poventud v. City of New York,* 750 F.3d 121, 133 (2d Cir. 2014), *quoting Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (emphasis in *Poventud*).

While *Brady-Giglio-Bagley* and their Second Circuit progeny are meant to ensure a fair trial, a defendant's right to pre-trial disclosure under *Brady* is not limited or conditioned on his ability to demonstrate that he **would** or even **probably would** have prevailed at trial if the evidence were disclosed, much less that he is in fact innocent. "The remedy for a *Brady* claim is therefore a new trial, as proof of the constitutional violation need not be at odds with his guilt." *Poventud* at 133. This, the government fails to understand. Even assuming *arguendo* that the Cherneski *Jencks* Statement was not *Jencks* evidence *per se*, it clearly was **material** *Brady-Bagley* evidence and it was inadvertently suppressed by the government and never turned over to Mr. Carpenter. Therefore, the government must prove this constitutional error was **"harmless" beyond a reasonable doubt**. Because those words are mentioned nowhere in the government's brief, much less argued or proven beyond a reasonable doubt, Mr. Carpenter is entitled to a new trial as a matter of law.

Since the Cherneski *Jencks* Statement was also clearly *Brady-Giglio-Bagley* evidence, as well as "*Jencks*" evidence, the government had an affirmative duty to present that statement to Mr. Carpenter before his trial began. While the Synopsis of the Case (Exhibit Five) and the Cherneski

9

*Jencks* Statement (Exhibit Six) are exculpatory because they both support Mr. Carpenter's innocence, they were both created after the Charter Oak Trust had run its course, and both directly contradict some foundational facts underlying the Court's June 6, 2016 Opinion. Moreover, the Cherneski *Jencks* Statement is also "**impeaching**" under *Bagley* because of all of Mr. Cherneski's contradictory statements; and now it is clearly *Giglio* evidence as well because the substantial contradictions between what Mr. Cherneski said in April 2010 versus what he said at Mr. Carpenter's trial in February 2016, and what is actually the truth of the matter are three totally different things. Mr. Carpenter respectfully submits to the Court that Mr. Cherneski submitted false testimony at Mr. Carpenter's trial to protect his wife – and possibly himself – from indictment due to their substantial involvement with REXIS. Therefore, Mr. Carpenter is entitled to a new trial as a matter of law pursuant to *Brady-Giglio-Bagley* and *Napue*, as well as *Jencks*.

**Respectfully submitted,**
Defendant, Daniel Carpenter

By_____
Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009
rbrown@bpslawyers.com

**ORAL ARGUMENT REQUESTED**

## CERTIFICATION

This is to certify that on December 5, 2017, a copy of the foregoing Reply was served by email to all parties by operation of the Court's electronic filing system or by email on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009