# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| ) | |
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 3:13CR226(RNC) |
| ) | |
| v. ) | |
| ) | |
| DANIEL E. CARPENTER ) | |
| ) | DECEMBER 11, 2017 |

## MR. CARPENTER'S REPLY TO THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF A MOTION FOR A NEW TRIAL PURSUANT TO RULE 33

Once again, in its Omnibus Opposition Brief (Gov. Opp.) (Doc. 318), the government misunderstands and misconstrues Mr. Carpenter's Motion for Reconsideration of the Court's summary dismissal of all of his post-trial motions during the November 6, 2017 conference call (Doc. 312). Mr. Carpenter is not seeking a new trial "in the interests of justice" merely because the government might have overheard Mr. Carpenter talking to his attorney (Gov. Opp. at 6), but because the process and procedure in this case negatively impacted Mr. Carpenter's ability to effectively communicate with his attorneys outside the courtroom, and further prevented Mr. Carpenter from presenting his best defense. Mr. Carpenter asserts that he is entitled to a new trial pursuant to the Rule 33 "interest of justice" standard due to a myriad of constitutional violations, all of which are subject to the "harmless beyond a reasonable doubt" standard, which the government fails to adequately address – or mention – in its Omnibus Opposition Brief.

Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). Ironically, one of the cases that the government mentions in its Opposition Brief

involves the conviction reversals of two dreaded killers – members of the vicious MS-13 gang that were responsible for murders and terrorizing communities in both the United States and Ecuador. *See* Gov. Opp. at 6, *citing United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011) for violations of the Confrontation Clause. The Second Circuit's decision in *Mejia* is also particularly insightful for Mr. Carpenter's case because of the Second Circuit's description of the relatively minor violation of the Confrontation Clause in that case based on *Crawford v. Washington*, 541 U.S. 36 (2004) and *Davis v. Washington*, 547 U.S. 813, 826 (2006), as opposed to the more substantial violations present in this case:

> For similar reasons, some of Alicea's testimony also violated *Crawford*. In *Crawford*, 541 U.S. 36, the Supreme Court held that the Confrontation Clause of the Sixth Amendment prohibits the introduction into evidence of the out-of-court testimonial statements made by an absent witness unless that witness is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 54. While the Court did not provide a comprehensive definition for the term "testimonial," it placed custodial interrogations within the "core class" covered by the rule it had just announced. *Id.* at 51; *see also Davis v. Washington,* 547 U.S. 813, 822 (2006) (explaining that a custodial police interrogation after a Miranda warning "'qualifies under any conceivable definition' of an 'interrogation.'" In fact, when the inadmissible hearsay at issue is a testimonial statement, the Supreme Court has recognized that Rule 703 hearsay claims and Sixth Amendment Crawford claims "are generally designed to protect similar values."
>
> Having found error in much of Alicea's testimony, vacatur is required unless we are "convinced that the error was **harmless beyond a reasonable doubt**." *Mejia* at 199, *citing United States v. Reifler*, 446 F.3d 65, 87 (2d Cir. 2006) (emphasis added).

## I. THE COURT'S JUNE 6, 2016 OPINION INCORPORATES THE OUT-OF-COURT TESTIMONY OF ERIK SCHNEIDER, WHICH VIOLATES THE CONFRONTATION CLAUSE OF THE CONSTITUTION

As described above, the conviction of a group of well-known MS-13 killers was overturned by the Second Circuit essentially because they had one of the investigating officers testify to hearsay evidence. In this case, the Court's June 6, 2016 Opinion spends a number of pages discussing the Sash Spencer insurance policies of 10 years ago. Significantly, the Court includes the false allegation from the government's Superseding Indictment that Mr. Carpenter

2

used the Sash Spencer proceeds to buy a beach house in Rhode Island. See Doc. 212 at 77. This is just one of several significant factual errors contained in the Court's Opinion. This erroneous information was derived from Stef Cherneski's perjurious testimony, in which Mr. Cherneski cited hearsay of Erik Schneider, who was never called as a witness. Moreover, the Court inquired if Schneider "will be a witness." See T. Tr. Vol. II at 261 attached as Exhibit One. Significantly, the Court asked Mr. Cherneski directly "Is the basis for your testimony your recollection of the statements they made to you?" Exhibit One at 260.

Due to this violation of *Crawford* and the Confrontation Clause, a constitutional error has resulted that would require the Court to find that this error was "harmless beyond a reasonable doubt" and did not affect the Court's analysis of the case. *See, e.g., United States v. Lee,* 549 F.3d 84, 86-87 (2d Cir. 2008) ("We hold that the district court's erroneous admission of the Clarke statement was not harmless beyond a reasonable doubt, and therefore vacate the defendants' murder for hire conspiracy convictions."). Mr. Carpenter respectfully represents that if the police interview was enough to overturn the convictions of two known MS-13 murderers in *Mejia* and the murder-for-hire conspiracy in *Lee,* then clearly the lies told by Stef Cherneski based on the out-of-court unfounded hearsay of Erik Schneider support the granting of a new trial for the Defendant in this case.

Mr. Carpenter is passionate about this argument for three primary reasons. First, the government at trial, as detailed in the Court's Opinion, made repeated references to the unlawfully-seized email from Mr. Carpenter to Mr. Bursey with the familiar Irish toast "May you be in Heaven before the Devil knows you're dead." See Doc. 212 at 71-72. If Mr. Carpenter did not in fact want Wayne Bursey to talk to anyone about the Sash Spencer death proceeds, why would Mr. Carpenter then disclose anything to Erik Schneider? Second, due to the delay of Mr.

Carpenter's trial from 2014 to 2016, Mr. Bursey's death in March of 2015 prejudiced Mr. Carpenter by permanently silencing Mr. Carpenter's best witness to offset Mr. Cherneski's blatant perjury and Erik Schneider's hearsay.   Third, nowhere in the Court's decision are the words *"mens rea"* or "criminal intent" on the part of Mr. Carpenter, as the Supreme Court has required in all cases since *Morissette v. United States*, 342 U.S. 246 (1952). *See, e.g., Elonis v. United States*, 135 S. Ct. 2001 (2015), *citing Staples v. United States*, 511 U.S. 600 (1994) and *Liparota v. United States*, 471 U.S. 419 (1985).

If Mr. Carpenter's company, Grist Mill Capital, had the wherewithal to pay over $100 million to the carriers through the Charter Oak Trust, Mr. Carpenter had the wherewithal to purchase the house in Rhode Island without Mr. Spencer's death proceeds.   In fact, Mr. Carpenter was interested in the Rhode Island house long before Mr. Spencer died or the funds were received.   See Ed Waesche's FBI 302 Report attached as Exhibit Two, discussing the Rhode Island Beach House in 2007.   Moreover, it is also factually incorrect that Mr. Carpenter held any control over TPG Group, despite the government's mischaracterization of an unlawfully-seized email sent by Mr. Carpenter's wife.   See Doc. 212 at 25.   The unlawfully-seized bank records show that TPG Group collected millions of dollars in commissions **each month**, and if Mr. Carpenter really "controlled" TPG Group and the other Benistar entities as the government suggests, then he could easily have siphoned off a million dollars from TPG Group to buy the beach house, or perhaps secured a loan from Bruce Mactas or Robert Pacini, each of whom made millions in commissions from their sales of insurance policies in the Charter Oak Trust.

Therefore, contrary to the government's argument that no new hearing is necessary to correct the factual and legal infirmities in the Court's Opinion, the reason that a hearing is

necessary on these Motions is that the government denied Mr. Carpenter's right to put on his best defense at trial and then deprived Mr. Carpenter of his Right to Confrontation by depriving him of the Cherneski *Jencks* Statement and substituting the truth with Erik Schneider's totally false out-of-court second-hand statements. Moreover, the defense has just learned that there is another possible *Brady* violation in the Erik Schneider statement from June 2010, the same month that Erik Schneider left Benistar. Now, the government has compounded its constitutional violations by acknowledging that they have a statement from Erik Schneider taken in June of 2010, well after the Raid of April 2010 and after he was fired from Benistar, that neither Mr. Carpenter nor his attorneys were made aware of. See Doc. 313 at 19.

This admission is doubly significant to Mr. Carpenter's new trial motions, because Erik Schneider should have been called as a witness, which would have made it another *Jencks* violation. As it stands now, and at the very least, this statement by Erik Schneider mentioning the Charter Oak Trust is *Brady-Giglio-Bagley* evidence that should have been turned over to the Defense before trial.

As stated previously, Mr. Carpenter is guaranteed by the Constitution a trial that is fair, speedy, and public. To date, the government has prevented Mr. Carpenter from having any of these constitutional guarantees. A criminal defendant has a constitutional right under the Sixth Amendment's Compulsory Process and Confrontation Clauses and the Fifth and Fourteenth Amendment's Due Process Clause to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). "Indeed, '[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense.'" *Hawkins*, 460 F.3d at 243 (*quoting Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

5

Therefore, a new hearing is essential to preserving Mr. Carpenter's constitutional rights and it is respectfully submitted that the Court should grant this Motion for Reconsideration and grant Mr. Carpenter's Motion for a New Trial pursuant to Rule 33 in the interests of justice. The above-mentioned constitutional errors in this case cannot stand and a new trial is required unless the government can prove the errors are "**harmless beyond a reasonable doubt**." *See Lee* and *Mejia.* As the government does not address the "harmless beyond a reasonable doubt" standard in either of its two Omnibus Opposition Briefs, the Court should grant Mr. Carpenter's Motion for Reconsideration, and a new trial pursuant to Rule 33 should be granted in the "interest of justice."

## CONCLUSION

Mr. Carpenter respectfully requests that the Court grant this Motion for Reconsideration, vacate its June 6, 2016 Opinion, and order a new trial pursuant to Rule 33 for some time in the Spring of 2018.

**Respectfully submitted,**
Defendant, Daniel Carpenter

By_____
       Richard Brown, Esq.
       Brown Paindiris & Scott, LLP
       100 Pearl Street, 2nd Floor
       Hartford, CT 06103
       Tel  860.522.3343
       Fax 860.522.2490
       Fed Bar No. ct00009
       rbrown@bpslawyers.com

**ORAL ARGUMENT REQUESTED**

## **CERTIFICATION**

This is to certify that on December 11, 2017, a copy of the foregoing Reply was served by email to all parties by operation of the Court's electronic filing system or by email on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009