**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 3:13CR226(RNC) |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL E. CARPENTER | ) | |
| | ) | DECEMBER 11, 2017 |

**MR. CARPENTER'S REPLY TO THE GOVERNMENT'S OPPOSITION TO
THE DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S
DENIAL OF MR. CARPENTER'S MOTION FOR A NEW TRIAL DUE TO THE
VIOLATION OF HIS RIGHTS TO FAIR WARNING AND FAIR NOTICE**

Contrary to the government's Omnibus Opposition Brief (Gov. Opp.) (Doc. 318), Mr.

Carpenter had no Fair Warning or Fair Notice any of the alleged conduct occurring between

January 2007 and December 2009 could possibly be declared criminal and against the law a

decade later.

**I.    THE HOLDING IN *WEIMERT* IS DISPOSITIVE CONCERNING THE
ABSENCE OF FAIR NOTICE AND FAIR WARNING IN THIS CASE**

In support of the fact that Mr. Carpenter could not possibly have been on notice that his

conduct was somehow unlawful in the Seventh Circuit's decision in *United States v. Weimert*,

819 F.3d 351 (7th Cir. 2016).  In *Weimert*, the Seventh Circuit Court of Appeals, in reviewing

the issue of materiality in negotiations between sophisticated parties, held that under the wire

fraud statute, statements in such negotiations cannot be material as a matter of law.  Given the

dearth of evidence of any crime adduced by the government at Mr. Carpenter's trial, the Seventh

Circuit's analysis in *Weimert* is directly on point in this case, particularly where the Seventh

Circuit states:

Buyers and sellers negotiate prices and other terms. To state the obvious, they will often try to mislead the other party about the prices and terms they are willing to accept. Such deceptions are not criminal.

To take a simple example based on price, suppose a seller is willing to accept $28,000 for a new car listed for sale at $32,000. A buyer is actually willing to pay $32,000, but he first offers $28,000. When that offer is rejected and the seller demands $32,000, the buyer responds: "I won't pay more than $29,000." The seller replies: "I'll take $31,000 but not a penny less." After another round of offers and demands, each one falsely labeled "my final offer," the parties ultimately agree on a price of $30,000. Each side has gained from deliberately false misrepresentations about its negotiating position. Each has affected the other side's decisions. If the transaction involves interstate wires, has each committed wire fraud, each defrauding the other of $2,000? Of course not. But why not?

The...answer is that negotiating parties, and certainly the sophisticated businessmen in this case, do not expect complete candor about negotiating positions, as distinct from facts and promises of future behavior. Deception about negotiating positions—about reserve prices and other terms and their relative importance—should not be considered material for purposes of mail and wire fraud statutes. *Weimert* at 357-58.

In commercial negotiations, it is not unusual for parties to conceal from others their true goals, values, priorities, or reserve prices in a proposed transaction. When we look closely at the evidence, the only ways in which Weimert misled anyone concerned such negotiating positions. He led the successful buyer to believe the seller wanted him to have a piece of the deal. He led the seller to believe the buyer insisted he have a piece of the deal. All the actual terms of the deal, however, were fully disclosed and subject to negotiation. There is no evidence that Weimert misled anyone about any material facts or about promises of future actions. *Weimert* at 354.

Consistent with fair notice and fair warning principles encapsulated by the Due Process Clause, the decision in the instant case must take into account the utter absence of evidence that anyone believed the conduct alleged was unlawful at the time it occurred, and where a distinguished Court of Appeals has explained that even worse conduct was not unlawful. *See Weimert* at 358 ("[W]e know of no other case in which a court has found that deceptive statements about negotiating positions amounted to a scheme to defraud under the mail or wire fraud statutes. This absence is consistent with more general understandings in the law."). *See, also, Weimert* at 370: ("Weimert's dealings in selling Chandler Creek were sharp and self-interested, but they did not amount to wire fraud. . . . [A]ll terms of the deal were on the table.

IDI might have been able to secure a better deal if it had known the underlying priorities of prospective buyers and Weimert, but that is . . . a matter for the corporate boardroom and civil law, not a federal criminal trial.").

The significance of *Weimert*, in light of the lack of evidence of **any** crime in this case is made even clearer when the testimony of the government's witnesses is considered. To the point, it is fundamentally unfair to hold Mr. Carpenter to a standard that no one else in the District of Connecticut has ever been prosecuted for, when the evidence at trial has shown that no witness believed that Mr. Carpenter's conduct was criminal at the time implicated. In view of *Weimert* and the evidence, this case should be dismissed as a violation of Due Process.

Moreover, in *Weimert*, the defendant actually lied to both his current employer and his future partner, costing each millions of dollars, and some of which ended up in his own pockets. In this case, Mr. Carpenter did not lie to anyone at any time, and instead of having an intent to cause "**tangible economic harm**" to the carriers, he fulfilled his company's part of the bargain by paying exactly the premiums required by the carriers. As the Second Circuit stated in *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015) in discussing the "Right to Control" Theory of fraud, not all lies or deceptions result in Mail and Wire Fraud:

> "It is not sufficient, however, to show merely that the victim would not have entered into a discretionary economic transaction but for the defendant's misrepresentations. The "right to control one's assets" does not render every transaction induced by deceit actionable under the mail and wire fraud statutes. Thus, we have repeatedly rejected application of the mail and wire fraud statutes where the **purported victim received the full economic benefit of its bargain.**" *Binday* at 570 (emphasis added).

Mr. Carpenter has submitted a number of cases from the Second Circuit, as well as other Circuits, establishing that he is innocent as a matter of law of all charges in the Indictment. It is beyond peradventure that he did not fill out, sign, or send in any of the allegedly false applications in this case. Therefore, he is unlike the defendants in *Binday*, who did fill out the

3

applications and did, in fact, lie on the applications. As such, Mr. Carpenter appears to be the

only person in America facing conviction for alleged lies on an insurance application that he did

not personally fill out, submit, or even have knowledge of at the time they were submitted. This

is a classic violation of the Due Process Clause and the Ex Post Facto Clause, as the Defendant

would not be in his present situation if not for the Second Circuit's October 2015 expansion of

the reach of the Mail and Wire Fraud statutes in *Binday*, cited above.

## II.   NONE OF THE CASES CITED BY THE GOVERNMENT GAVE MR. CARPENTER ADEQUATE FAIR NOTICE OR FAIR WARNING

The Supreme Court has stated many times in many cases that before someone is found

guilty of a crime, the government must prove that they knew what they did was criminal. *See*

*Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005): "The underlying principle is

that no man shall be held criminally responsible for conduct which he could not reasonably

understand to be proscribed." *quoting United States v. Harriss*, 347 U.S. 612, 617 (1954).

The government repeatedly refers to the cases below, however, they fail to rebut the

"bright line rule" that Oliver Wendell Holmes described in *McBoyle v. United States*, 283 U.S.

25 (1931):

> "it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle* at 27.

Not only are the cases cited by the government and relied upon by the Court obscure, they do not

stand for what the government claims, and they do not support that Mr. Carpenter received Fair

Warning or Fair Notice that what he did was criminal in this case.

*United States v. Anzalone*, 783 F.2d 10, 11 (1st Cir. 1986):
> Anzalone lied about previous accident and health claims on multiple applications with multiple companies to collect excess disability payments.

4

*United States v. Stevens*, 210 F.3d 356, 2000 WL 419938, at *2 (2d Cir. Apr. 7, 2000):
Workers Compensation Fraud committed by Payroll Services Company for leasing temporary employment company. Defendants prevented carriers from auditing payroll records.

*United States v. Mancuso*, 444 F.2d 691, 693 (5th Cir. 1971):
Involved husband and wife lying about health status and previous claims on their applications for medical and hospital insurance. Sentences were vacated.

*United States v. Ware*, 282 F.3d 902, 904-905 (6th Cir. 2002):
Ware and his girlfriend submitted false statements on 12 different Hospital Indemnity Policies and then submitted false claims and were charged with healthcare fraud.

*United States v. Williams*, 545 F.2d 47, 49 (8th Cir. 1976);
Williams purchased multiple health, accident, disability, and hospitalization policies and then submitted false claims to collect "easy money" from carrier.

*United States v. Minkin*, 504 F.2d 350, 351 (8th Cir. 1974);
False automobile insurance claim that car was stolen and damaged in a fire.

*United States v. Sanders*, 187 F.3d 650, 1999 WL 439415, at *1 (9th Cir. Jun. 22, 1999);
Fraudulent applications and false claims on a Truckers Liability Policy. Defendant knowingly misrepresented the number of trucks he intended to use under the policy.

*United States v. Wardwell*, 56 F.3d 78, 1995 WL 330756, at *1 (10th Cir. May 25, 1995);
Another "Unpublished Opinion" or Table Decision as government refers to it. Automobile insurance – false claim that Jeep had been stolen.

*United States v. Colwell*, 140 F. App'x 64, 65, 71 (11th Cir. 2005);
Another case not selected for publication. Workers Compensation fraud after insurance company cancelled coverage.

*United States v. Corey*, No. 3:04-cr-349(EBB), 2006 WL 1281824, at *1 (D. Conn. May 9, 2006)
Defendant filled out 28 life insurance applications on his sister Joyce Corey without telling the carriers that his sister was a heroin addict and she did in fact die of a heroin overdose. He caused $2,400,000 in fraudulent death benefits to be paid by various carries. He pled guilty to mail and wire fraud and insurance fraud but challenged the forfeitures.

Therefore, since the government can point to no case that gave Mr. Carpenter constitutional "fair notice" or "fair warning" as required by the Supreme Court's unanimous decision in *Arthur Andersen*, and even the *ex post facto* judicial expansion of the Mail and Wire Fraud statutes under *Binday* happened eight years after the alleged conduct in this case, Mr.

Carpenter respectfully submits the decisions in *Weimert, Countrywide, Finazzo*, and even *Binday* all support his argument that the government's allegations in his prosecution were an unjust *ex post facto* over-extension of the Mail and Wire Fraud statutes that should not be countenanced by this Court.

## CONCLUSION

Because Mr. Carpenter received no fair warning or fair notice that his alleged conduct was criminal at the time that the conduct occurred from 2007 to 2009, this Court should grant Mr. Carpenter's Motion for Reconsideration and dismiss his Indictment as a violation of the Due Process Clause and the *Ex Post Facto* Clause.

**Respectfully submitted,**
Defendant, Daniel Carpenter

By_____

Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel  860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009
rbrown@bpslawyers.com

**ORAL ARGUMENT REQUESTED**

6

## CERTIFICATION

This is to certify that on December 11, 2017, a copy of the foregoing Reply was served by email to all parties by operation of the Court's electronic filing system or by email on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A.U.S.A. David Novick
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

A.U.S.A. Neeraj Patel
Office of U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

Richard Brown, Esq.
Brown Paindiris & Scott, LLP
100 Pearl Street, 2nd Floor
Hartford, CT 06103
Tel 860.522.3343
Fax 860.522.2490
Fed Bar No. ct00009