UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | No. 3:13 Cr. 226 (RNC) |
| ) | |
| DANIEL E. CARPENTER ) | |
| ) | June 25, 2018 |

**DEFENDANT DANIEL CARPENTER'S OPPOSITION MEMORANDUM TO THE GOVERNMENT'S MOTION FOR RESTITUTION**

Defendant Daniel Carpenter, by and through counsel, respectfully submits this memorandum in opposition to the Government's motion for an order requiring Defendant to pay restitution in the amount of $56,207,383.36.

The Government's restitution motion is based on an actual loss calculation that is wholly untethered from reality, rendering the restitution figure likewise fatally flawed.  As detailed in Defendant's sentencing memoranda, the Government's claim that Defendant caused roughly $56 million in actual loss is based on a loss theory that conflates insurers' cost of issuing life insurance policies generally (*i.e.*, the cost of their being in the life insurance business) with the far more limited harm that resulted from having been misled into issuing STOLI policies specifically.  The Government applies this but-for causation theory to calculate actual loss under the Sentencing Guidelines in connection with sentencing and to calculate victims' loss in connection with restitution.  (*See* Govt. Sent. Mem. at 32 (expressly applying a "but-for causation test")).  But *even if* but-for causation were appropriate for Guidelines purposes (and it is not), the Government's use of but-for causation for purposes of restitution squarely violates the Mandatory Victims Restitution Act's ("MVRA") requirement of proximate causation for measuring victims' loss.  Thus, irrespective of whether or not the Court adopts Defendants'

1

actual loss arguments for purposes of the Sentencing Guidelines, the Government's restitution calculation is independently and irretrievably invalid.

Of course, the Government's restitution figure also suffers from the same flaws as the actual loss model on which it is predicted, a model that (i) contravenes fundamental criminal law principles that require a proximate causal connection between fraud and loss; (ii) has been criticized by nearly every court presented with it, including by two Second Circuit panels expressly seeking a better alternative; and (iii) conflicts with the Government's own litigation position in other STOLI prosecutions as well as the Court's findings in this case about the specific economic harms flowing from the issuance of STOLI policies believed to be non-STOLI, *i.e.*, losses arising from lower lapse rates and lower funding levels. Because the Government's actual loss calculation is erroneous, its restitution figure too is unreliable.[1]

* * *

The MVRA provides for mandatory restitution to victims of offenses, *inter alia*, where a victim has suffered a "pecuniary loss." 18 U.S.C. §§ 3663A(a), (c)(1)(B). The "primary and overarching goal" of the MVRA is to make victims of crime whole; that is, "to compensate [victims] for their losses and to restore them to their original state of well-being." *United States v. Thompson,* 792 F.3d 273, 277 (2d Cir. 2015) (quoting *United States v. Qurashi*, 634 F.3d 699,

---

[1] During the May 8, 2018 telephonic conference regarding the bifurcation of sentencing, the Court indicated that it would afford the parties an opportunity to recalculate intended and actual loss amounts should the Court's rulings on the proper theoretical framework for applying the Sentencing Guidelines make that necessary. In the same vein, if the Court were to agree that this restitution figure is based on faulty calculations, including the erroneous inclusion of death benefits, then determining the correct restitution amount would likewise require recalculation. Under the MVRA, the Court has up to 90 days to determine a restitution amount if it cannot be determined before sentencing. *See* 18 U.S.C. § 3664(d)(5). Whether or not the Court imposes a sentence on June 27, 2018, if the Court agrees that the Government's actual loss number is incorrect or that it is unreliable for purposes of restitution, Defendant requests that the Court afford the parties an opportunity to calculate the correct restitution amount.

703 (2d Cir. 2011) (internal quotation marks and alterations omitted)).  In order "[t]o fulfill this objective without awarding the victim a windfall, *i.e.*, more in restitution than he actually lost, the MVRA caps the restitution award at the actual amount of the victim's loss."  *Id.* (quoting *United States v. Boccagna*, 450 F.3d 107, 117 (2d Cir. 2006) (internal quotation marks and alterations omitted)); *see also United States v. Coriaty*, 300 F.3d 244, 252 (2d Cir. 2002) ("Unlike loss calculations, a court's power to order restitution is limited to actual loss.").

Critically, a "victim" for the purposes of the statute is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."  18 U.S.C. § 3663A(a)(2).  "In restricting its definition of 'victim' to persons proximately harmed by the defendant's acts, the MVRA aims to limit restitution to those harms that have a sufficiently close connection to the conduct at issue."  *Thompson*, 792 F.3d at 277 (quoting *Robers v. United States*, 134 S. Ct. 1854, 1859 (2014) (recognizing that the MVRA "has a proximate cause requirement")) (internal quotation marks and alterations omitted).  This is consistent with the proximate cause requirement for fraud loss generally.  *See, e.g., United States v. Ebbers*, 458 F.3d 110, 128 (2d Cir. 2006) (holding that "loss must be the result of the fraud," and "[l]osses from causes other than the fraud must be excluded from the loss calculation."); *United States v. Ednie,* 707 F. App'x 366, 373 (6th Cir. 2017) ("To attribute an actual loss to a defendant, his or her conduct must be both a 'but for' cause and a proximate cause of the loss.").

Here, the Government acknowledges that its restitution figure is based principally on the purported actual loss to insurance company victims (plus expenses incurred in assisting the Government's investigation).  But the Government has *conceded* that its actual loss figure of roughly $56 million is based only on a but-for theory of loss causation.  (*See* Govt. Sent. Mem. at

3

32).  Given the MVRA's requirement that restitution be grounded in proximate causation, the Government's use of its actual loss figure to calculate restitution is manifestly erroneous.

The restitution calculation likewise suffers from the other flaws that Defendant has already identified in his submissions concerning the Government's actual loss amount:

- The actual loss amount is based on a model that lacks support in STOLI case law.  The model twice received a cold reception at the Second Circuit.  In both *United States v. Binday*, 804 F.3d 558, 597 (2d Cir. 2015), and *United States v. Quatrella*, 722 F. App'x 64, 69 (2d Cir. 2018) (summary order), the Second Circuit tolerated the model as not clearly erroneous but each time voiced a desire for "a better alternative," even taking pains to expressly "le[ave] open the possibility that on different facts, the method employed here may not provide a reasonable estimate of actual losses," *Binday*, 804 F.3d at 597.

- The Fifth Circuit has similarly rejected the Government's theory that everything about an insurance policy, including death benefits, becomes fraud-loss simply because the insurance company was deceived about whether the policy was STOLI.  *See United States v. Bazemore*, 608 F. App'x 207, 215-16 (2d Cir. 2015).  Instead, the Fifth Circuit instructed that a valid loss calculation would measure the "financial risk to the insurers beyond the risk they believed they were receiving in issuing life insurance to [the defendant's] applicants," *i.e.*, the "risk of financial harm to the insurers that would not have existed if the information provided in the insurance applications were true." *Id.*

- Defendant's actual loss model conflicts with the Government's own litigating position in a series of STOLI prosecutions in the Eastern District of New York. *See* 11 Cr. 134 (E.D.N.Y.).  In *United States v. Neuman*, *United States v. Lebovits*, and their companion cases, the Government pressed a loss calculation based (as Defendant here proposes) solely on the economic difference between STOLI and non-STOLI policies, which the Government there identified exclusively as a difference in lapse rates; death benefits were nowhere mentioned or accounted for, an implicit recognition that they are not losses caused by STOLI. (*See Neuman* Gov't Sent. Mem. at 2, Def. Sent. Mem. Ex. 4; *Lebovits* Gov't Sent. Mem. at 4, Def. Reply Sent. Mem. Ex. 3.)  Thus, despite the procurement of 111 STOLI policies worth "hundreds of millions of dollars[],"—more policies and a larger total than in the instant case—the Government stipulated that "a reasonable estimate of the loss suffered by the insurance companies was more than $120,000 but less than $200,000." (*Id.*; *Neuman, et al.* Gov't Bill of Particulars, at 3-6, Def. Reply Sent. Mem. Ex. 4.)

- The actual loss model flouts the Government's *own* proof and its *own* arguments and the Court's *own* finding about the economic harm to insurance companies from being deceived into issuing STOLI policies that they believed were non-STOLI.  In the Court's words, the "discrepancies between the benefits the [insurance companies] reasonably anticipated from issuing the policies and the benefits they actually received" (Verdict at

82) stem from *two* relevant ways in which "STOLI policies differ from traditional policies. . . . The first relates to the way the policies are funded, the second involves lapse rates." (Verdict at 12).

- Thus, an appropriate measure of the actual loss suffered by insurers that accounts for lost investment income from lower premium payments and lapse-rate-based loss demonstrates that there was *no* actual loss here.  As the Government's actual-loss chart demonstrates, roughly three-quarters of the policies here have lapsed, well beyond the typical rate of roughly 5%. (Def. Sent. Mem. at 38.) The gains to the insurers from this extraordinary lapse rate more than makes up for whatever minor loss might have resulted from any lost investment income based on minimum premiums.  The absence of any loss reflects reality far better than the Government's suggestion that Defendant walked away with $56 million from insurers.

For these reasons, Defendant urges the Court to reject the Government's restitution figure and afford the parties an opportunity to recalculate a legally and factually sound restitution amount.

                                           Respectfully submitted,

                                           /s/ James M. Cole
                                           James M. Cole, Esq.
                                           Michael A. Levy, Esq.
                                           Qais Ghafary, Esq.
                                           Sidley Austin LLP
                                           787 7th Avenue
                                           New York, NY 10019

## CERTIFICATE OF SERVICE

      I hereby certify that on June 25, 2018, a copy of foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      /s/ Michael A. Levy
      Michael A. Levy, Esq.
      Sidley Austin LLP
      787 7th Avenue
      New York, NY 10019
      212-839-7341
      MLevy@Sidley.com