UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:13CR226 (RNC) |
| | : | |
| v. | : | |
| | : | |
| DANIEL CARPENTER | : | February 22, 2019 |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR RESTITUTION**

The Government respectfully submits this reply memorandum in support of its motion for restitution and pursuant to the Court's Order of February 14, 2019 (the "February 14 Order"), directing the Government "to respond to [] the defendant's memorandum in opposition to restitution on or before February 22, 2019." ECF No. 444. The Order specifically directs the Government to "address 1) the defendant's claim that the requested restitution amount does not account for compensation that victims have received from reinsurers; and 2) whether the Court may rule on [] the government's motion for restitution after the 90-day deadline has passed." *Id.* The Government addresses these issues and Carpenter's other arguments below.

**I.     The Court may impose restitution after the 90-day deadline has passed.**

Under the Mandatory Victims Restitution Act ("MVRA"), an order of restitution should be entered within 90 days of sentencing. *See* 18 U.S.C. § 3664(d)(5). However, the Supreme Court and the Second Circuit have made clear that the Court "retains the power to order restitution" outside of the 90-day window so long as there is no prejudice to the defendant and the Court "made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." *Dolan v. United States*, 560 U.S. 605, 608 (2010) (upholding restitution order issued three months after the 90-day deadline); *see United States v. Gushlak*, 728 F.3d 184, 191-92 (2d Cir. 2013) (upholding restitution order imposed 18-months after sentencing); *see also United States v. Illarramendi*, 677 F. App'x 30, 31 (2d Cir. 2017) (affirming restitution order

imposed ten months after sentencing); *see also United States v. Zakhary*, 357 F.3d 186, 191 (2d Cir. 2004) (allowing restitution order to be imposed after 90 days unless defendant shows prejudice); *United States v. Catoggio*, 326 F.3d 323, 330 (2d Cir. 2003) (same).

Here, the Court has enough information to order restitution within 90 days of sentencing, which in this case would be March 4, 2019.[1] As explained below, Carpenter's arguments opposing restitution are without merit. However, if the Court needs additional time to determine the amount of restitution, the Court retains the power to order restitution after the 90-day deadline. The Court made clear at sentencing and in the Judgment that it intends to order restitution, leaving open only the amount. *See* ECF No. 411 (Judgment); Sentencing Tr. at 187-88, 190. Therefore, Carpenter is on notice that restitution will be imposed, and he is further on notice that the Government calculates restitution to be approximately $57 million. If the Court decides to enter the restitution order after the 90-day period, the Government respectfully asks the Court to find that there would be no prejudice to Carpenter.

## II.  The restitution amount should not be offset by reinsurance compensation.

In calculating the restitution amount, the Government included the death benefits that the insurance carriers paid out on policies where the insured had died. The Government did not reduce restitution by any amounts the carriers recovered through reinsurance.

There were a total of eight policies in which death benefits were paid: seven policies issued by Lincoln and one policy issued by Transamerica. Lincoln paid out $53,566,296 in death benefits and Transamerica paid out $5,077,736 in death benefits. All of the policies were partially reinsured, and Lincoln and Transamerica recovered $37,277,705 and $2,278,160, respectively, through insurance coverage it had on those policies from other insurance companies. Attached as

---

[1] The 90-days end on Sunday, March 3, 2019. Thus, the period is extended to March 4. *See* Fed. R. Crim. P. 4(a)(1)(C).

Exhibits A and B are breakdowns of those eight policies and the amounts Lincoln and Transamerica recovered through reinsurance.

In Carpenter's opposition, he argues that the amount of restitution the Government is seeking should be reduced by compensation the carriers received through reinsurance. *See* ECF No. 443 at 11. The Court's February 14 Order directs the Government to respond to this argument.

Carpenter's argument is foreclosed by 18 U.S.C. § 3664, which governs the issuance of restitution orders under the MVRA. *See* 18 U.S.C. § 3663A(d). Section 3664(f)(1)(B) expressly states that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." Section 3664(j)(1) further provides that "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation." *See United States v. Thompson*, 792 F.3d 273, 278 (2d Cir. 2015) (citing § 3664 and stating that where "a victim receives reimbursement for his or her losses from a third party prior to entry of a restitution order . . . such third-party compensation is irrelevant to a district court's calculation of the defendant's total restitution liability[,]" and that where "a third party has assumed the victim's losses by reimbursing the victim, the court must order a defendant to pay restitution directly to that third party[.]"); *United States v. Stevens*, 739 F. App'x 44, 46 (2d Cir. 2018) (same).

The rationale behind these provisions is obvious. If a defendant robs a bank for $100,000 and the bank subsequently recovers $80,000 of that loss from its insurance carrier, the defendant does not get to benefit from the bank's insurance coverage. The defendant still caused a loss of

3

$100,000: $20,000 to the bank and $80,000 to the bank's insurance company. The defendant must compensate the bank and the insurance company for the entire loss he caused.

Similarly here, Carpenter caused the fraudulent policies to be issued and is responsible for the entire loss borne by the carriers he defrauded and the reinsurance companies that compensated the carriers for any portion of those losses. Applying the plain language of 18 U.S.C. § 3664(f)(1)(B) to Carpenter's case, the amount of restitution should not be reduced by any compensation the insurance carriers recovered through insurance coverage—in this case reinsurance coverage—it had on the fraudulent policies on which it paid a death benefit. Rather, in the restitution order, the Court should direct that the amount the carriers recovered through reinsurance should be paid to the reinsurance companies. *See* 18 U.S.C. § 3664(j)(1).

Accordingly, after incorporating the losses and gains on all of the other Lincoln policies, and other recoverable expenses, the restitution that is owed on the Lincoln policies is $50,205,502.70.[2] However, the Court should order portions of that amount to be paid directly to its reinsurers. Similarly, the Government maintains that the restitution that is owed on the Transamerica policy remains $4,133,849.14, but the Court should order $2,278,160 of that total to be paid directly to its reinsurers. Further, pursuant to 18 U.S.C. § 3664(j)(1), the Court should direct that restitution be paid first to the all the victim insurance carriers and second to any reinsurers. Finally, the Government notes that it is no longer seeking restitution for the Metlife policies because at this point, Metlife has broken even on its policies.[3]

---

[2] In the Government's prior memorandum, the Government had calculated restitution on the Lincoln policies to be $50,273,120.24. *See* ECF No. 423 at 6. However, the Government incorrectly included the reinsurance premium of $67,617.54 for the Gordon policy that had recently paid out. As the Government noted in its original sentencing memorandum, the Government was not including reinsurance premiums as part of the loss calculation on policies in which a death benefit was paid since it would be paid back as part of the reinsurance proceeds. *See* ECF 352 at 33. Accordingly, the correct amount of restitution on the Lincoln policies should be reduced to $50,205,502.70.

[3] In the Government's prior memorandum, the Government stated the MetLife would break even in approximately 12 months. *See* ECF No. 423 at 8. However, it now appears that MetLife has already broken even due to additional

Attached as Exhibit C is a summary of the restitution amount owed to each carrier and reinsurer, totaling $57,683,736.86.[4]

## III. Carpenter's other arguments are without merit.

In his opposition memorandum, Carpenter makes a number of other arguments. He argues that (1) the Court should forgo restitution because the losses are too complex to calculate, *see* ECF No. 443 at 5-6; (2) Carpenter did not proximately cause any loss, *see id.* a 6-8; (3) the Government's methodology is erroneous, *see id.* at 9-13; (4) the restitution amount would violate the Eighth Amendment's Excessive Fines Clause, *see id.* at 14-18; and (5) restitution here is unconstitutional, *see id.* at 18-22. Each of these arguments is without merit and should be rejected.

### A. The loss calculation is not too complex.

Notwithstanding that restitution is mandatory under the MVRA, Carpenter asks the Court to forego restitution because he believes the loss calculation is too complex. *See* ECF No. 443 at 5-6. Contrary to Carpenter's claim, the loss calculation is straightforward. The Government based its restitution calculation on actual loss using the formula approved by the Second Circuit in *United States v. Binday*, 804 F.3d 558, 595 (2d Cir. 2015), which this Court adopted and found was "a reasonable estimate of the loss given the available information." Sentencing Tr. at 175-177.

Carpenter incorrectly suggests that the loss calculation is complex because it has taken three years since the trial to determine the loss. As the Court noted in its ruling denying bond pending appeal, the delay "was caused primarily by the defendant's own exorbitant post-trial submissions." ECF No. 445 at 5-6. In addition, "it was necessary to postpone the sentencing in order to obtain a psychiatric examination and report concerning the defendant's mental

---

premium payments it has received.

[4] This amount is slightly less than the amount set forth in its prior memorandum based on the changes noted in the two footnotes above.

5

condition[.]" *Id.* at 6. The post-trial delay had nothing to do with any complexity in calculating the loss in this case.

Carpenter's reliance on *United States v. Ferguson*, 584 F. Supp. 2d 447 (D. Conn. 2008) is misplaced. *See* ECF No. 443 at 5. That case dealt with restitution in a securities fraud case in which there were potentially thousands of unidentified individual investors. *Ferguson*, 584 F. Supp. 2d at 456. The court decided that determining the amount of restitution was "sufficiently complicated so as to make the MVRA inapplicable" where identifying all victims of securities fraud would "severely complicate and prolong the sentencing process," fashioning a restitution order would involve high level of "detail and precision," and the Government did not know the identity or location of all victims. *See id*. at 458. Here, by contrast, there are only a handful of victims, their identities are known, and the actual loss they suffered can be easily calculated using the methodology adopted in *Binday*.

B. **Carpenter directly and proximately caused approximately $57 million in loss.**

Carpenter argues that he should not be liable for any restitution because there is no proof that he proximately caused any of the carriers' losses. Carpenter's arguments are without merit.

First, he claims the carriers' did not suffer any pecuniary losses. This issue was already litigated at sentencing, and the Court accepted the Government's actual loss calculation estimating an actual loss of over $50 million.[5] Next Carpenter claims that he was not the cause of any

---

[5] As part of his argument, Carpenter refers to a letter his attorney sent the Government two years before trial where he claimed the carriers actually made a profit of $90 million while his company, Grist Mill Capital, lost $70 million. *See* ECF No. 443 at 6. His letter is evidence of nothing. Just because he says the carriers made money while he lost money does not make it true.

Carpenter also cites Lincoln's annual reports from 2007 to 2017 showing that Lincoln made a profit each year. *Id.* at 3. Whether Lincoln made money as a corporation is irrelevant to whether a defendant must pay restitution for the losses he caused. If a defendant robs a bank and steals $100,000, he does not get to escape the MVRA and avoid paying back the $100,000 because the bank made money from its other activities during the year.

6

insured's death, and therefore he should not be responsible for losses from any death benefits paid. *Id.* at 1-2, 7, 12-13. Carpenter's argument is absurd.

"A crime is the proximate cause of victims' losses where the nature of the scheme makes those losses reasonably foreseeable." *United States v. Marsh*, 820 F. Supp. 2d 320, 343 (E.D.N.Y. 2011) (citing *United States v. Marino*, 654 F.3d 310, 323-24 (2d Cir.2011); *see, e.g., United States v. Schwamborn*, 542 F. App'x 87, 89 (2d Cir. 2013) (finding defendant proximately caused victim's losses where "it was entirely foreseeable that the victims [] would lose their investments."); *United States v. Stein*, 846 F.3d 1135, 1155 (11th Cir. 2017) ("We also consider reasonable foreseeability when assessing proximate cause for purposes of actual loss under the MVRA.").

Here, as the Court found, the whole point of the Charter Oak Trust ("COT") was to defraud the carriers' and make money at their expense by fraudulently inducing them to issue life insurance policies they would not have issued. A life insurance policy's very purpose anticipates death. From the very outset, Carpenter's scheme contemplated that some of the insureds would die. "The prospective insureds were promised free life insurance for two years. They were told that if they died during the two-year period, the policy proceeds would be disbursed to their beneficiaries." Verdict at 42. Moreover, by 2007, Carpenter changed the trust documents so that the COT could take a cut of the death benefits. *See* Verdict at 51 (quoting Gov't Ex. 2189 where Carpenter stated "NOT premium financing . . . The Trust pays for everything and splits the death benefit 80-20."); *id.* at 72-73. In short, it was reasonably foreseeable that the carriers would incur losses and pay death benefits on the policies that Carpenter induced the carriers to issue, and the fact that he did not cause any of the insureds' deaths is irrelevant.[6]

---

[6] Carpenter cites *Lagos v. United States*, 138 S.Ct. 1684 (2018) for the proposition that large institutions should seek damages in a civil lawsuit rather than through criminal restitution. *See* ECF 443 at 6. He claims that in *Lagos*, the

7

### C. The Government's methodology is not erroneous.

Carpenter argues that the Government's methodology for calculating loss is erroneous and not based on accepted actuarial principles. *See* ECF No. 443 at 9-13. He attaches a report of a purported expert, Larry Stern, to support his argument. *See* ECF No. 443-3. However, it appears Mr. Stern did not review a number of significant documents that are critical to this case and the Government's loss calculations. Exhibit B to Mr. Stern's report contains a list of all the materials he reviewed. *Id.* at 23. Notably absent from his list are a number of critical documents, including:

- The Court's Verdict and Special Findings;

- The discovery (including financial information from the carriers) that underlies the Government's actual loss calculations;[7]

- The trial testimony of the insurance carrier representatives, which discussed how they priced the policies and how STOLI affected them;

- The sentencing transcripts from June 27, 2018 and December 3, 2018 where the parties and the Court discussed *Binday* and the various loss calculations. Mr. Stern only appears to have read the Court's statement at sentencing asking the Government to submit a memorandum about the active policies in order to avoid a windfall. *See* ECF No. 443-3 at 16, 23;

- The Government's sentencing memorandum discussing how it arrived at its actual loss calculations, which, in turn forms the basis of the restitution memorandum. Mr.

---

Supreme Court vacated a restitution order because the victim was not entitled to restitution and suggested the victim file a civil lawsuit. *Id.* Carpenter is mistaken. In *Lagos*, the Supreme Court only held that expenses the victim "incurred during its own investigation of the fraud and during its participation in [related] bankruptcy proceedings" were not recoverable through the MVRA, and suggested those could be recovered through a civil suit. *Lagos*, 138 S. Ct. at 1690. All other losses were still recoverable via restitution. *Id.* Accordingly, on remand, the Fifth Circuit only deleted approximately $5 million from the original $16 million restitution order. *United States v. Lagos*, 735 F. App'x 171 (5th Cir. 2018) (decision on remand); *United States v. Lagos*, 864 F.3d 320, 323 (5th Cir. 2017) (prior decision noting original $16 million restitution award). The rest of the restitution order remained intact. *Lagos*, 735 F. App'x 171.

[7] As the Court is aware, the Government produced extensive discovery prior to trial in a searchable database. After trial, as the Government prepared its loss calculations for sentencing and restitution, the Government continued to produce additional documents underlying its loss calculations as it received them from the carriers, including on January 4, 2018, March 28, 2018, June 15, 2018, and January 24, 2019. Mr. Stern's report makes clear he did not review any of these materials. *See* ECF No. 443-1 at 12 ("I have not had the opportunity to review any pricing or other discovery documents produced by the companies[.]"); *id.* at 23 (list of documents reviewed).

Carpenter's claim that he recently received documents pursuant to a *Brady* request is incorrect. Although Carpenter's counsel did send a letter on January 22, 2019 requesting documents, the Government had only just received documents that same week from the carriers and the Government was already in the process of sending them to defense counsel.

Stern appears to have reviewed the Government's loss chart submitted with the sentencing memorandum, but not the memorandum itself. *See id.* at 23.

The Government submits that this so-called expert cannot possibly opine on the Government's calculations without reviewing this information, particularly the data provided by the carriers.

Putting aside Mr. Stern's failure to review this information, he makes a number of other significant mistakes, which Carpenter repeats in his memorandum. For example, Mr. Stern's principal argument is that the Government failed to reduce the carriers' losses by reinsurance proceeds. As discussed above, however, 18 U.S.C. § 3664 expressly provides that reimbursement from insurance or other third-party compensation is irrelevant in determining restitution. He also claims that the restitution should not include the cost of doing business, that is the cost of issuing the STOLI policies. However, as the Court found, this is a fraudulent inducement case where the carriers did not want STOLI business. As such, the carriers should not have to bear any business expenses they incurred in issuing and maintaining those policies. The fees and expenses that the Government included were those that were connected to the issuance of the COT policies.[8]

Mr. Stern further claims the Government's methodology is flawed because the carriers could have taken steps to mitigate their losses by raising the cost of insurance rates and/or seeking to void the STOLI policies. Putting aside the fact that raising insurance costs simply means passing the losses on to other customers, which could have other detrimental effects, such as making their product less competitive and losing future customers, a victim has no duty to mitigate its damages in order to obtain restitution. *See e.g., United States v. Cordell*, 524 F. App'x 584, 589 (11th Cir. 2013) (finding no "authority establishing that a victim is not entitled to restitution if it does not attempt to mitigate its financial losses resulting from the defendant's illegal conduct."); *United*

---

[8] Mr. Stern claims there is no specific breakdown of "fees" on the Government's chart. This breakdown was included in the discovery the Government provided with its original sentencing memorandum and restitution motion.

*States v. Williams*, 292 F.3d 681, 688 n.3 (10th Cir. 2002) ("it is well settled restitution orders need not offset losses by amounts that could have been avoided through proper mitigation." (citation and internal quotations omitted)). Moreover, the cost of trying to void the policies would have caused the carriers to incur additional legal expenses, and there is no guarantee they would have been successful, especially if a third party claims it is a *bona fide* purchaser for value who purchased the policy on the life settlement market and was unaware of the fraud.

Mr. Stern makes a number of other inaccurate statements and asks a number of questions, most of which could have been answered had he bothered to look at the discovery that the Government provided to the defense. In short, Mr. Stern's report should be given no weight.

### D. There is no violation of the Eighth Amendment's Excessive Fines Clause.

Carpenter argues that the $57 million the Government seeks in restitution violates the Eighth Amendment's Excessive Fines Clause because the amount is grossly disproportionate to his offense conduct. *See* ECF No. 443 at 14-18. Carpenter's argument is without merit. Indeed, Carpenter cites no case law in which courts actually held that a restitution order violated the Excessive Fines Clause.

The primary purpose of restitution is compensatory, not punishment. As Carpenter himself notes, "'the primary purpose and overreaching goal' of the MVRA is to make victims of crime whole; that is, 'to compensate [victims] for their losses and to restore them to their original state of well-being.'" *Id.* (quoting *Thompson*, 792 F.3d at 277). The Government calculates that Carpenter's conduct caused an actual loss of approximately $57 million. There is nothing grossly disproportionate or excessive about requiring Carpenter to pay the carriers and reinsurers for the actual losses that his conduct caused.

In support of his argument, Carpenter spends several pages discussing *United States v. Bajakajian*, 524 U.S. 321 (1998). *See* ECF No. 443 at 14-18. That case, however, dealt with forfeitures, not restitution, and is therefore inapposite. In *Bajakajian*, the Government sought forfeiture of $357,144, which was the amount of money the defendant failed to report on a customs form when he boarded an international flight. Significantly, and fatal to the analysis here, the case did not involve compensating victims for their losses. The defendant's conduct, essentially filing a false form, did not cause any actual monetary loss or damage to any victim. Moreover, the currency itself was not the proceeds of any unlawful activity. Accordingly, the Court found that forfeiture of $357,144 was grossly disproportionate to his offense of failing to report currency.

Elsewhere in his memorandum, Carpenter correctly notes that in *Paroline v. United States*, 572 U.S. 434, 456 (2014), the Supreme Court observed that "[t]he primary goal of restitution is remedial or compensatory, but it also serves punitive purposes. That may be sufficient to bring it within the purview of the Excessive Fines Clause." (internal quotation marks and citations omitted). ECF No. 443 at 9. However, in *Paroline*, the Supreme Court was concerned with an individual defendant being held responsible for the full amount of a victim's losses collectively caused by thousands of actors, acting independently from one another, who trafficked in child pornography depicting the victim. 572 U.S. at 450.

The *Bajakajian* and *Paroline* cases are entirely inapposite to the issue here, where Carpenter (alone, as part of a conspiracy, and as an aider and abettor) has, in fact, caused an actual loss of approximately $57 million. Requiring Carpenter to compensate the victims for the actual loss he caused cannot be considered excessive or disproportionate. *See, e.g.*, *United States v. Lessner,* 498 F.3d 185, 205 (3d Cir. 2007) (finding no violation of the Excessive Fines Clause where district court ordered restitution in the amount of the actual loss that the government

sustained as a direct result of defendant's fraudulent acts); *United States v. Newsome*, 322 F.3d 328, 342 (4th Cir. 2003) (finding no Eighth Amendment violation for restitution order that was not disproportionate to the actual loss); *United States v. Dubose*, 146 F.3d 1141, 1145-46 (9th Cir. 1998) ("Where the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already built into the order. . . . We reject defendants' contention that the MVRA violates the Eighth Amendment's proscription against excessive fines, either facially or as applied."); *United States v. Graham*, 72 F.3d 352, 358 n. 7 (3d Cir. 1995) (dismissing "without merit" defendant's argument that restitution under 18 U.S.C. § 3663, in the approximate amount of the actual loss, violated the Excessive Fines Clause); *cf. United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016) ("purely 'remedial' forfeitures—i.e., those in rem forfeitures intended not to punish the defendant but to compensate the Government for a loss or to restore property to its rightful owner—fall outside the scope of the Excessive Fines Clause.")

Accordingly, Carpenter's excessive fine claim should be rejected.[9]

**E.     Restitution is not unconstitutional in this case.**

Carpenter argues that ordering restitution here would be unconstitutional. First, he claims that restitution would be unconstitutional under the Supreme Court's decisions in *Southern Union v. United States*, 132 S. Ct. 2344 (2012) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See* ECF No. 443 at 18-20. He argues that any fact that would increase his criminal penalty—which in his view includes restitution—needed to be charged in the indictment and proven beyond a reasonable doubt. *See id.* He predicts that "there is virtually no doubt after *Southern Union* that

---

[9] In arguing that restitution violates the Excessive Fines Clause, Carpenter also cites *Honeycutt v. United States*, 137 S.Ct. 1626 (2017) and states that the case "decided the question of forfeitures unanimously in Mr. Carpenter's favor." ECF 443 at 16. In that case, the Supreme Court opined on the validity of a forfeiture judgment under the "plain text and structure" of 21 U.S.C. § 853(a)(1). *Honeycutt*, 137 S.Ct. at 1634-35. The case is not even remotely applicable to Carpenter. The Government is not seeking forfeiture under 18 U.S.C. § 853, and there is no discussion whatsoever of restitution, the Eighth Amendment, the Excessive Fines Clause, or the Constitution.

all courts will view 'restitution' under the MVRA as additional punishment and require it to be listed in the indictment and found by a jury beyond a reasonable doubt, and not by a judge by a preponderance of the evidence[.]" *Id.* at 20.

Unfortunately for Carpenter, his prediction has already been proven wrong. The Second Circuit has repeatedly rejected this very argument. *See United States v. Bengis*, 783 F.3d 407, 412-13 (2d Cir. 2015) (rejecting argument that *Southern Union* and *Apprendi* apply to restitution and holding "judicial factfinding to determine the appropriate amount of restitution . . . does not implicate a defendant's Sixth Amendment rights[.]"); *Anderson v. United States*, 612 F. App'x 45, 46 (2d Cir. 2015) (same); *United States v. Espada*, 607 F. App'x 89, 91 (2d Cir. 2015) (finding *Southern Union* inapplicable and stating "restitution orders pursuant to the [MVRA], which are based on factual findings made by a judge rather than by a jury, are constitutional.").[10]

Carpenter next argues that restitution is unconstitutional as applied to him because he should only be accountable for losses that resulted from his crime, and the Court "should not lump everyone else's loss onto [him]." ECF No. 443 at 21. In support, he again cites *Paroline*. *See id.* As discussed above, in *Paroline*, the Supreme Court was concerned with an individual defendant being held responsible for the full amount of a victim's losses collectively caused by thousands of independent actors who trafficked in child pornography depicting the victim.

Here, the insurance carriers' losses were not caused by fraudsters acting independently from one another. The losses were caused by a single scheme that Carpenter himself designed, involving multiple co-conspirators that Carpenter orchestrated. Carpenter was charged as a principal, as a member of a conspiracy, and as an aider and abettor. Accordingly, he is responsible

---

[10] In support of this argument, Carpenter cites to the dissenting opinion in *Hester v. United States*, 139 S.Ct. 509 (2019), where the Supreme Court denied a petition for a writ of certiorari. As a dissenting opinion, it is not binding and does not overturn the decisions cited above, which are still controlling.

for all of the losses. To be clear, the Government does request that his restitution order be joint and several with co-conspirator Edward Waesche, who is scheduled to be sentenced in April.[11]

## IV. Conclusion.

For the reasons set forth in the Government's original motion for restitution and its supplemental memorandum, and for the reasons set forth above, the Court should grant the Government's motion for restitution in the total amount of $57,683,736.86, to be paid first to the insurance carriers, and then the reinsurers, in the amounts listed on Exhibit C. The Government also requests that restitution be paid jointly and severally with co-conspirator Edward Waesche when he is sentenced in April.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Neeraj N. Patel*
NEERAJ N. PATEL
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv04499
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: 203-821-3700
Email: Neeraj.Patel@usdoj.gov

*/s/ David E. Novick*
DAVID E. NOVICK
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv02874
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: 203-821-3700
Email: David.Novick@usdoj.gov

---

[11] At sentencing, the Court did not impose a fine. Carpenter argues that it was "constitutionally 'inconsistent' to say Mr. Carpenter is too poor to pay a fine" but then order him to pay restitution. ECF No. 443 at 14. The Court never said Carpenter was too poor to pay a fine. The reason the Court did not impose a fine was so that his money would go towards compensating the victims he defrauded rather than the Government. *See* Sentencing Tr. at 187 ("No fine is imposed because of Mr. Carpenter's obligation to pay restitution."). There is nothing constitutionally inconsistent about the Court wanting to ensure Carpenter's victims are compensated. In any event, restitution is mandatory under 18 U.S.C. § 3663A, while a fine is not. Moreover, 18 U.S.C. § 3664(f)(1)(A) requires restitution to be ordered "without consideration of the economic circumstances of the defendant."

CERTIFICATION OF SERVICE

       This is to certify that on February 22, 2019, a copy of the foregoing Government's Reply Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                        */s/ Neeraj N. Patel*
                                        NEERAJ N. PATEL
                                        ASSISTANT UNITED STATES ATTORNEY