UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  3:13CR226 (RNC) |
| | : | |
| v. | : | |
| | : | |
| DANIEL CARPENTER | : | April 8, 2019 |

## GOVERNMENT'S MEMORANDUM REGARDING RESTITUTION TO REINSURERS

The Government respectfully submits this memorandum in support of its request for restitution to reinsurers and pursuant to the Court's Order of March 6, 2019.  *See* ECF No. 473. As set forth below, the Court should amend the restitution order to award an additional $39,555,865.32 in restitution to the reinsurers who reimbursed the victim insurance providers who paid death benefits on the fraudulently procured insurance policies in this case.

## I.     BACKGROUND

On June 6, 2016, following a bench trial, this Court found Mr. Carpenter guilty on all 57 counts of the superseding indictment.  *See* Verdicts and Special Findings (ECF No. 212). The Court determined beyond a reasonable doubt that Mr. Carpenter devised and executed a scheme to defraud life insurance companies by using misrepresentations to induce them to issue universal life insurance policies that the companies would not have issued had they known the policies constituted stranger-originated life insurance ("STOLI") policies, so that Mr. Carpenter and his co-conspirators could sell the policies on the secondary market after two years.  *See id.* at 1.  On December 3, 2018, the Court sentenced Mr. Carpenter to 30 months of imprisonment to be followed by 36 months of supervised release.  *See* Judgment (ECF No. 411). The Court ordered supplemental briefing on restitution.  ECF No. 400.

In its final reply brief in support of restitution, the Government requested restitution in the amount of $57,683,736.86, *see* ECF No. 462 at 5, 14, which was based on the actual loss methodology approved by the Second Circuit in *United States v. Binday*, 804 F.3d 558, 595 (2d Cir. 2015) and adopted by this Court at sentencing, s*ee* Sentencing Tr. at 175-177.  The actual loss calculation was based on death benefits, commissions, and fees paid or incurred by the carriers on the policies that were terminated because of death, lapse, or other reason, minus premiums collected by the carriers on those policies. For active policies, the Government counted the commissions paid, but, in accordance with *Binday*, did not attempt to speculate what the ultimate loss or gain would be depending on when the insured died.

As the Government noted in its previous restitution memorandum, there were a total of eight policies for which death benefits were paid: seven policies issued by Lincoln and one policy issued by Transamerica.  *See* ECF No. 462 at 2. Lincoln paid out $53,566,296 in death benefits and Transamerica paid out $5,077,736 in death benefits.  *See id*.  These eight policies were partially reinsured, and Lincoln and Transamerica recovered $37,277,705 and $2,278,160, respectively from their reinsurers. *See id.*; ECF No. 462-1 (chart of Lincoln's recoveries from reinsurance); ECF No. 462-2 (chart of Transamerica's recoveries from reinsurance); *see also* Declaration of Glenn Stebbins, dated 4/1/2019, ¶ 7, attached as Exhibit A ("Lincoln Decl."); Declaration of Mark Woods, dated 4/1/2019, ¶ 7, attached as Exhibit B ("Transamerica Decl.").  Thus, of the total $57,683,736.86 that the Government requested in restitution, the Government requested that $18,127,871.54 be paid to the victim insurance companies and that $39,555,865.32 be paid to the reinsurers who reimbursed Lincoln and Transamerica for the death benefits they paid on the STOLI policies. *See* ECF No. 462-3.[1]

---

[1] The Government previously provided Mr. Carpenter's counsel with the information that the Government received from Lincoln and Transamerica regarding reinsurance.

On February 26, 2019, the Court granted in part the Government's restitution request. ECF No. 465. The Court ordered the Government to submit a proposed restitution order excluding from the payment due any sums included in the "Fees" column on the Government's actual loss chart. *Id.* Accordingly, on March 1, 2019, the Government submitted a proposed restitution order requesting total restitution in the amount of $52,420,891.50. ECF No. 468-1. This amount was comprised of $12,865,026.18 to be paid to the victim insurance companies and $39,555,865.32 to be paid to the reinsurers who reimbursed Lincoln and Transamerica. *Id.* at 8.

On March 4, 2019, the Court granted in part the proposed order. ECF No. 470. The Court ordered restitution to the victim insurance providers in the amount of $12,865.026.18. *Id.* at 1. The Court's restitution order did not include restitution to the reinsurers. The Court indicated that further proceedings were necessary on the issue of restitution to the reinsurers. *Id.* at 1 n.1. During a telephonic status conference on March 5, 2019, the Court ordered the Government to submit a supplemental memorandum regarding restitution to the reinsurers. ECF Nos. 472, 473. The Court indicated it needed more information on the timing and context of the reinsurance agreements between the insurance providers and the reinsurers.

## II.  **APPLICABLE LAW**

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, provides for mandatory restitution to victims of certain crimes, including offenses where a victim has suffered a "pecuniary loss." 18 U.S.C. §§ 3663A(a), (c)(1)(B). The procedure for imposing restitution is codified at 18 U.S.C. § 3664, which is incorporated into the MVRA at 18 U.S.C. § 3663A(d).

The primary goal of the MVRA is to "compensate [the] victims for their losses and to restore them to their original state of well-being." *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015) (citation and alterations omitted). Where "a victim receives reimbursement for his

or her losses from a third party prior to the entry of a restitution order, . . . the third-party compensation is irrelevant in calculating the defendant's total restitution." *Id.* at 278. Section 3664(f)(1)(B) provides that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." Rather, Section 3664(j)(1) provides that "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation[.]" However, any restitution owed to the victim "must be repaid in full before any payments may be diverted to a third-party compensator." *Thompson*, 792 F.3d at 278; 18 U.S.C. § 3664(j)(1) ("[T]he restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation."). In other words, "where a third party has already reimbursed the victim's losses, § 3664(j)(1) simply shifts *payment* of the restitution amount calculated under § 3663A(b) directly to that party." *Id.* at 279 (emphasis in original).[2]

## III.   **DISCUSSION**

The Court should amend its prior restitution order and order additional restitution in the total amount of $39,555,865.32 to be paid to the reinsurers who reimbursed Lincoln and Transamerica for death benefits they paid on the fraudulently issued STOLI policies.

Reinsurance is "simply insurance for insurance companies." *Continental Casualty Co., v. Stronghold Ins. Co.*, 77 F.3d 16, 20 (2d Cir. 1996). "Reinsurance occurs when a carrier (the 'reinsurer') agrees to cover losses experienced by an insurer for certain covered risks." *Utica Mut.*

---

[2] Third-party compensators are not themselves "victims" for the purposes of the MVRA, and therefore, "any losses suffered by those parties in the course of compensating a victim cannot increase a district court's calculation of the defendant's restitution obligations under § 3663A(b)." *Thompson*, 792 F.3d at 279.

*Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 15 (2d Cir. 2018).  "There are two types of reinsurance contracts: facultative and treaty.  A facultative reinsurer insures part or all of a single insurance policy, with underwriting occurring as to each reinsured policy.  A treaty reinsurer insures specified classes of a ceding insurer's policies." *Id.* (citations omitted); *see N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1199 (3d Cir. 1995) ("Under a reinsurance treaty, the reinsurer agrees to accept an entire block of business from the reinsured. Once a treaty is written, a reinsurer is bound to accept all of the policies under the block of business, including those as yet unwritten." (internal citations and quotation marks omitted)); *see also* Lincoln Decl. ¶¶ 4-6 (describing Lincoln's reinsurance treaties for life insurance policies); Transamerica Decl. ¶¶ 4-6 (describing Transamerica's reinsurance treaties for life insurance policies).

In this case, Lincoln and Transamerica had treaty reinsurance partially covering each of the eight STOLI policies on which they paid death benefits. *See* Lincoln Decl. ¶¶ 3-7; Transamerica Decl. ¶¶ 3-7.  The reinsurance treaties were in place before the STOLI policies were issued, and reinsurance coverage automatically went into effect the day each policy was issued. Lincoln Decl. ¶¶ 4-7; Transamerica Decl. ¶¶ 4-7.  Each policy was covered by multiple reinsurance treaties, where each treaty covered a specified share of all death benefit claims for all life insurance policies that fall within the scope of the treaty.  Lincoln Decl. ¶ 5; Transamerica Decl. ¶ 5; ECF No. 462-1; ECF No. 462-2. Lincoln and Transamerica periodically paid premiums to the reinsurance companies during the life of each policy, and in exchange, the reinsurance companies reimbursed Lincoln and Transamerica a portion of any reinsured death benefit claims that Lincoln and Transamerica incurred on life insurance policies covered under the treaties.  Lincoln Decl. ¶¶ 4, 6; Transamerica Decl. ¶¶ 4, 6.

Through its reinsurance treaties, Lincoln recovered $37,277,705.32, net of premiums it paid, on the seven STOLI policies on which it paid death benefits totaling $53,566,297. Lincoln Decl. ¶¶ 3, 7; ECF No. 461-1 (chart of amounts owed to each reinsurer). Similarly, Transamerica recovered $2,278,160 from its reinsurers for the STOLI policy on which it paid $5,077,736 in death benefits. Transamerica Decl. ¶¶ 3, 7.  ECF No. 461-2 (chart of amounts owed to each reinsurer).  The total amount recovered by Lincoln and Transamerica through reinsurance was $39,555,865.32. [3]

Accordingly, pursuant to 18 U.S.C. § 3664(j)(1), the Court should amend its prior restitution order and order additional restitution to the reinsurers in the total amount of $39,555,865.32.  A breakdown of the amount owed to each reinsurer is listed in Schedule A of the proposed restitution order that the Government previously filed.  ECF No. 468-1.  The amended restitution order should direct that the previously ordered restitution of $12,865,026.18 to the victim insurance companies be paid first, followed by the $39,555,865.32 in restitution to the reinsurers.  *See* 18 U.S.C. § 3664(j)(1).[4]

---

[3] The unreimbursed portion of the death benefit claims were included in the restitution amounts ordered to Lincoln and Transamerica.

[4] In Mr. Carpenter's prior memorandum in opposition to restitution, he attached a report of a purported expert, Larry Stern, who opined that restitution should not include amounts the victim insurance companies recovered from reinsurance. *See* ECF No. 443-3 at 3, 13. His opinion, however, ignores the plain language of 18 U.S.C. § 3664, which expressly provides that reimbursement from insurance or other third-party compensation for losses is irrelevant in determining restitution. Mr. Stern also opined that the true cost to the insurance company when a death benefit is paid is not the face amount of the policy or the death benefit, even though a check for the full amount is paid to the beneficiary, because the insurance company holds a reserve for each policy, which is later released and used to pay the death benefit when a claim is made. *See id.* at 7-8, 13. Again, his opinion is flawed. First, he ignores his own analysis that when the reserve for a policy is established, it is an expense to the company. *Id.* at 13. Second, and more significantly, the establishment of a reserve is just an accounting requirement that does not impact that physical amount of money that changes hands. As Mr. Stern himself recognizes, "the check paid to the beneficiary is the full amount" of the policy's face value. *Id.* at 7. In other words, the actual amount of money that goes from the insurance company to the beneficiary is the full amount of the death benefit, which would not have occurred absent the fraud. Therefore, under 18 U.S.C. §§ 3663A and 3664, the defendant must pay restitution to the insurance company or its reinsurer for that entire amount.

IV.     **CONCLUSION**

For the reasons set forth in the Government's original restitution memoranda, and for the reasons set forth above, the Court should grant the Government's request to order additional restitution in the total amount of $39,555,865.32 to be paid to the reinsurers in the amounts set forth in Schedule A of the proposed restitution order that the Government previously filed at ECF No. 468-1.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Neeraj N. Patel*
NEERAJ N. PATEL
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv04499
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: 203-821-3700
Email: Neeraj.Patel@usdoj.gov

*/s/ David E. Novick*
DAVID E. NOVICK
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv02874
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: 203-821-3700
Email: David.Novick@usdoj.gov

CERTIFICATION OF SERVICE

This is to certify that on April 8, 2019, a copy of the foregoing Government's Reply Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Neeraj N. Patel*
NEERAJ N. PATEL
ASSISTANT UNITED STATES ATTORNEY