# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| v. | ) | Crim. No. 13-cr-00226 |
|  | ) | |
| DANIEL E. CARPENTER | ) | April 29, 2019 |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO GOVERNMENT'S BRIEF ON RESTITUTION FOR REINSURERS

## ARGUMENT

In its recent memorandum on restitution (Dkt. No. 485), the government misunderstands both the life insurance industry and the clear wording of the MVRA.

Mr. Carpenter received a 22 Level Enhancement that the government is trying to justify even though the Exhibit (Dkt. 462, Ex. A) from Lincoln shows a profit to Lincoln of $37 million. Once applied, this Exhibit shows that there was no loss, and no victim. The law limiting the payment of restitution to only actual victims with real losses and the constitutional reach of the MVRA is very clear in the Second Circuit:

> Federal courts have no inherent power to order restitution, which is traditionally a civil remedy. *See United States v. Reifler*, 446 F.3d 65, 127, 137 (2d Cir. 2006). A sentencing court's power to order restitution, therefore, depends upon, and is necessarily circumscribed by, statute. *See United States v. Elkin*, 731 F.2d 1005, 1010-11 (2d Cir. 1984). In this case, the relevant statute is the MVRA. *United States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012).

The Supreme Court has made it clear in a number of decisions, even in difficult cases with a sympathetic victim, that restitution is only payable to a real victim that had a proven real loss caused by the defendant's illegal conduct, and no one else's. *See Paroline v. United States*, 572 U.S. 434 (2014), where the Supreme Court states that "the statute allows restitution only for those

losses that were the "proximate result" of [defendant]'s offense. *Id.* at 465.  *Paroline* also cites

*Burrage v. United States,* 134 S.Ct. 881, 887-88 (1992) for the proposition that:

> [T]he ordinary meaning of the term "results from" requires proof that the defendant's conduct was the "actual cause" of the injury….Congress has authorized restitution only for "the amount of the loss sustained by a victim as a result of the offense." §3664(e). *Id.*

> [The Supreme Court has] interpreted virtually identical language, in the predecessor statute to section 3664, to require "restitution to be tied to the loss caused *by the offense of conviction. Hughey v. United States*, 495 U.S. 411, 418 (1990)(citing §3580(a)(1982 ed.)). That is, restitution may not be imposed for losses caused by any other crime or any other defendant. *Paroline* at 465-66.

Unless there is a specific statute that covers restitution, it is clear error for a court to order

restitution. Therefore, this Court must adhere to the strict caps and limitations of the MVRA.

Those strict limits are best illustrated in the very case cited by the government to support its

proposition that the reinsurers are also victims of Mr. Carpenter's offense, when it is clear the

reinsurance claims were paid automatically by the reinsurers in accordance with their contracts

with the carriers.  The government cites *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir.

2015) as the authority for the proposition that the reinsurers, as contractual "third-party providers

of compensation", should be treated just like the alleged "actual victims" in this case.  However,

*Thompson* stands for the exact opposite of what the government claims:

> In this case, Thompson defrauded the Eardensohns of $65,143.47. He subsequently returned $30,400 of their lost property. Under the plain text of §3663A(b), his total restitution liability under the MVRA is thus the value of the stolen property ($65,143.47) minus the value of what he returned to the victims ($30,400), equaling $34,743.47. The fact that Wells Fargo and Citibank, as third-party providers of compensation, have already paid the Eardensohns a cumulative $43,284.47 - $8,541 more than what Thompson himself can be asked to pay - does not affect Thompson's legal liability under the MVRA. The sole effect of that compensation is to divert payment of Thompson's remaining obligation, since the Eardensohns have been fully compensated by the banks and Thompson's repayments, from the Eardensohns to the banks themselves.

> The government protests that deducting Thompson's $30,400 repayment from his remaining obligations to Wells Fargo and Citibank will have the anomalous effect of forcing the Eardensohns to use their own funds to repay the banks - a scenario that both

2

deprives the Eardensohns financially and violates §3664's provision that "[n]o victim shall be required to participate in any phase of a restitution order." §3664(g)(1). In fact, it will do no such thing. As neither the Eardensohns nor the banks are parties to the criminal proceeding, the government is correct that the district court lacks power to compel the Eardensohns to pay any money to the banks. Whether the Eardensohns have been unjustly enriched by receiving both repayments from Thompson and compensation from the banks is a question of state law, to be resolved, if the banks choose to pursue the matter, by the state courts.

To the extent that crediting the full value of Thompson's $30,400 payments to the Eardensohns against his restitution amount might at some point result in the Eardensohns' having to repay Citibank or Wells Fargo some portion of their prior reimbursements, that possibility does not unfairly force the Eardensohns to compensate the banks from their "own" property. It simply corrects for the banks' initial overpayment of the Eardensohns in light of new information about the status of their missing funds. Nor does that possibility violate §3664(g)(1)'s admonition that a victim may not be forced to "participate" in a restitution order. Where a victim who has previously been compensated by a third party for lost property subsequently regains some portion of that property, any duty she might have to return the insurer's money arises not as a "phase" of a restitution proceeding, but purely through the victim's own contractual or other relationship with the insurer. Any dispute between the Eardensohns and Wells Fargo and Citibank about the extra $8,541 gained by the Eardensohns and lost by the banks is a matter to be settled between those parties or resolved under state law, and does not affect Thompson's restitution obligations under the MVRA.

In short, because a defendant's restitution liability under the MVRA is capped at the actual loss incurred by his victims, and because third-party providers of compensation do not qualify as "victims" whose losses can expand that restitution amount, the district court erred in its restitution calculation by failing to subtract the entirety of Thompson's previous payments to the Eardensohns from the amount due to his victims. *Thompson* at 280-81.

In the above example from *Thompson*, it is very likely that both Wells Fargo and Citibank had their own insurance contracts for amounts lost to fraud, so according to the government, even the "reinsurers" to Wells Fargo and Citibank should be compensated as well, which of course is clearly prohibited by the MVRA as they are not victims of the fraudster's crime, and their claims must be settled between contracting parties according to state law and the Second Circuit's decision in *Thompson*.

Despite the clear-cut evidence that *Thompson* does not support the government's claims for restitution payments to the reinsurers, there are still a number of other problems for the

government to overcome.  For example, the primary goal of the MVRA is to "compensate these victims for their losses and to restore them to their original state of well-being."  *See United States v. Qurashi*, 643 F.3d 699, 703 (2d Cir. 2011).

Therefore, to avoid awarding the alleged victim a windfall, "the MVRA caps the restitution award at the actual amount of the victim's loss."  *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006).  In cases involving monetary loss, such as this case, the actual loss calculation must take into account the amounts paid into the policies, which the government has not done. §3663A(b)(1)(B)(ii).  Instead, the government has included the costs of doing business that have nothing to do with the criminal offense in this case by excluding the ongoing stream of payments to the carrier, and not taking into account the "windfall" from 75% of the policies lapsing, as well as the newly-discovered $37 million of profits from the reinsurance carriers.

Mr. Carpenter did not cause anyone's death, and the reinsurance profits are just like the money returned in *Thompson*.  Despite this clear-cut evidence that *Thompson* does not support the government's claims for restitution payments to the reinsurers, there are still a number of other problems for the government to overcome before any restitution can be awarded to the reinsurers as "third-party providers of compensations."

First, as *Thompson* makes clear, in the event that a "third-party provider of compensation" have made the alleged victim whole, it does not affect the defendant's total amount of restitution payable.  Moreover, *Thompson* explains that "[a]ny funds still owed to the victim,…must be repaid in full before any payments may be diverted to third-party providers of compensation." *Thompson* at 278. And, because the "third-party providers of compensations" are not "victims" for the purposes of the MVRA "any losses suffered by these parties in the course in the course of compensating a victim cannot increase a district court's calculation of the defendant's restitution

obligations under §3663A(b). *See Thompson* at 279. Neither of these two major principles of the MVRA are discussed in the government's analysis of the MVRA statute. In its attempt to pile onto the calculation of $10-12 million in MVRA restitution to the carriers, the government seeks to add another $39 million that cannot be paid until the first fictitious amount is first paid to the carriers.

Second, the government's calculations ignore the "proximate cause" requirement of the MVRA.  In *United States v. Gushlak*, 728 F.3d 184 (2d Cir. 2013), the Second Circuit made clear that a court's power to order any restitution is "limited to actual loss" and "only in *the amount* of losses directly and proximately caused by the defendant's conduct." *Gushlak* 194-95 (emphasis added).  Once again, this limiting factor is nowhere mentioned in the government's brief that also attacks one of America's leading actuaries.  The Supreme Court has similarly stated that there is a direct and proximate cause requirement:

> "A basic tenet of criminal law is that the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury." *United States v. Main*, 113 F.3d 1046, 1050 (9th Cir. 1997) (*quoting United States v. Spinney*, 795 F.2d 1410, 1415 (9th Cir. 1986)); *see Paroline v. United States*, 134 S.Ct. 1710, 1720 (2014) ("[A] requirement of proximate cause is more restrictive than a requirement of factual cause alone.").  Indeed, in applying proximate cause in the analogous restitution context, the Supreme Court has observed that "[p]roximate cause is a standard aspect of causation in criminal law and the law of torts"; so much so, in fact, that the Supreme Court "has more than once found a proximate-cause requirement built into a statute that did not expressly impose one." *Id.; see also Robers v. United States*, 134 S.Ct. 1854, 1859 (2014) ("[The Mandatory Victim Restitution Act, 18 U.S.C. §3663A,] has a proximate cause requirement," and "[t]he basic question that a proximate cause requirement presents is whether the harm alleged has a sufficiently close connection to the conduct at issue.").

> Third, the Second Circuit has also made clear that the "district court cannot properly order restitution under the MVRA unless the victim's harm resulted from the offense of conviction, including, with respect to a conspiracy offense, the defendant's conduct in the course of the conspiracy."  *See United States v. Reifler*, 446 F.3d 65, 127, 137 (2d Cir. 2006). In this case, it is indisputable that Mr. Carpenter did not fill out, sign, or send in any of the applications in this case.  Furthermore, Mr. Carpenter disputes that there are any material falsehoods in the applications, but if there are, he did not put them there; the licensed agents for the carriers did and they were the ones that received the commissions. In *Binday*, the Binday Agency received 100% of the commissions.  In this case, the government has failed to show even one commission check payable to Mr. Carpenter, and

yet they hold him responsible for the carriers paying commissions to their brokers in the normal course of business.  That is utter nonsense as a matter of law.

Fourth, it is clear that the MVRA does not permit awards "in excess of the victim's loss." *See United States v. Nucci*, 364 F.3d 419, 423 (2d Cir. 2004). Anything more than that would be considered an unlawful "windfall" which is not permitted by law. *See, e.g., United States v. Stanley*, 309 F.3d 611, 613 (9th Cir. 2002) (holding that the MVRA does not allow "double recovery by a victim.").  This, of course, causes two immediate problems for the government.  The first is that the $37 million in reinsurance profits Lincoln made on the Charter Oak Trust policies eradicates any possible "actual" loss required under the MVRA.

If the Court took out the commissions and death benefits that were not caused by any conduct of Mr. Carpenter - illegal or otherwise - all of the carriers would have no losses and huge profits from the Trust's policies, which explains why the carriers continue to support these policies to the present day.  That also means the Court's first award of restitution to the carriers could be found to be clear error and should be rectified immediately as none of the carriers had any actual loss caused directly and proximately by Mr. Carpenter's conduct.  Thus, anything the carriers receive at this point will be a "windfall" and a "double recovery", which is specifically prohibited under the MVRA.

The government's second problem is even worse though, because the reinsurance carriers automatically cover any and all qualified business written by the ceding carrier. So, unlike the victim of fraud in *Thompson*, the alleged "third-party providers of compensations" are making payments pursuant to an insurance contract; not to compensate for any fraud loss on the part of anyone much less Mr. Carpenter. As the government's own affidavits state, the reinsurance coverage is provided automatically by contract and without concern for why the carrier might have taken the risk in the first place, so once again, the reinsurance contract has nothing to do with Mr.

6

Carpenter's personal conduct - illegal or otherwise.   A restitution award is strictly limited to the damages caused by a STOLI policy, which according to *AEI v. Lincoln*, 892 F.3d 126 (2018) means zerobecause STOLI policies have proven to be more profitable than non-STOLI policies for the carriers, so the amount of restitution must be capped at only the "amount of losses directly and proximately caused by the defendant's conduct." *Gushlak* at 194-95, *citing Reifler* at 115.

Fifth, the Due Process Clause is plainly implicated at sentencing (*see Gushlak* at 193, *citing United States v. Martinez*, 413 F.3d 239, 244 (2d Cir. 2005)), and the defendant has a Due Process interest in paying restitution only sustained by actual victims. *See United States v. Zakhary*, 357 F.3d 186, 191 (2d Cir.2004). The Due process Clause is meant to protect the defendant from being sentenced on the basis of facts like those presented by the government in this case.  *See United States v. Delacruz*, 862 F.3d 163 (2d Cir. 2017), *citing Townsend v. Burke*, 334 U.S. 736 (1948):

> [W]hat the Due Process Clause does require is that a defendant not be sentenced on the basis of "materially untrue" assumptions or "misinformation," and that he have an opportunity to respond to material allegations that he disputes, in order that the court not sentence him in reliance on misinformation. *Delacruz* at 175, *citing Townsend* at 741.

Here, not only are the reinsurers not "victims", they are not "third-party providers of compensations" either.  As it turns out, they have eliminated the carriers from being "victims" of an actual loss "directly and proximately caused" by Mr. Carpenter's personal conduct.  Thus, Mr. Carpenter renews his objection to the sentencing addition of 22 Offense Levels based on the government's math as presented at sentencing despite his continuous objections. As it now turns out, none of the carriers experienced any loss, and all made substantial profits.

Sixth, the goal of restitution in the criminal context is to "restore a victim, to the extent money can do so, to the position he occupied before sustaining injury."  *United States v. Finazzo*, 850 F.3d 94, 117 (2d Cir. 2017) (quoting *Boccagna* at  115). Since the purpose of restitution is compensatory and the MVRA limits restitution to the amount of each victim's "losses", a

restitution order must be tied to the "victim's actual, provable, loss." *Finazzo* at 117, quoting *Zangari* at 91. *See, also, United States v. Quatrella*, 722 Fed.Appx. 64, 69 (2d Cir. 2018): "[A] defendant's restitution liability under the MVRA is capped at the actual loss incurred by his victims." *Thompson* at 280. In *Quatrella*, the government agreed that the carriers sustained no losses, and the only victims were the funders of the policies. In both *Binday* and *Quatrella*, none of the funders were indicted or prosecuted, and in *Quatrella*, the funders, like Mr. Carpenter, were considered to be the "victims" of the fraud. In this case, Mr. Carpenter and his company Grist Mill Capital were the real victims of the agents of the carriers.

Seventh, the MVRA prevents restitution awards based on "loss calculations that incorporate hypothetical or speculative losses" like the government's numbers in this case. *See Gushlak* at 195. Also, an order of restitution under the MVRA must "be based upon the loss directly and proximately caused by the defendant's personal offense conduct." The government bears the burden of establishing the loss amount under the MVRA. *Gushlak* at 195, citing §3664(e). Clearly the government has failed to carry its burden in the case of the reinsurers or even in the case of the carriers based on the profits that the carriers received from the reinsurers. Since "[f]ederal courts have no inherent power to order restitution....a sentencing court's power to order restitution therefore, depends upon, and is necessarily circumscribed by statute." *Zangari* at 91. The award of any restitution to the reinsurers (or now to the carriers) in this case would be plain error based on a "clearly erroneous finding of fact" (*i.e.* the government's numbers presented at sentencing). *See Boccagna* at 113.

Eighth, *Reifler* creates another problem for the government because the agents of the carriers are Mr. Carpenter's alleged co-conspirators, and therefore the carriers are coconspirators that cannot be compensated under the law, as the MVRA prohibits paying restitution to

coconspirators.  *See Reifler* at 125.  As Mr. Carpenter did not fill out, sign, or send in the applications, the only people that lied to the carriers were their own agents.  Since it is axiomatic that a carrier is responsible for the actions of its agents, paying anything to the carriers would be tantamount to paying restitution to the principal of a coconspirator which the MVRA prohibits. *See Quatrella* at 69 *citing Reifler* at 127 ("An order of restitution should not be granted that has the effect of treating coconspirators as victims, and thereby requires restitution payments to the perpetrators of the offense of the conviction.").

Finally, the MVRA is most likely unconstitutional after the Supreme Court's decision in *Southern Union v. United States*, 132 S.Ct. 2344 (2012) (*see, also,* Judge Acker's often-quoted *Alabama Law Review* article titled The Mandatory Victims Restitution Act is Unconstitutional: Will the Courts say so after *Southern Union v. United States*?), as it violates the Excessive Fines Clause of the Eighth Amendment (see Justice Gorsuch's opinion in *Hester v. United States*, 139 S.Ct. 509 (2019)), and certainly violates the Fair Warning and Fair Notice principle of *Marinello v. United States*, 138 S.Ct. 1101 (2018) because the word "restitution" was not mentioned in Mr. Carpenter's indictment, there was no evidence of carrier loss presented at trial, and restitution was never discussed at Mr. Carpenter's June 28, 2016 sentencing.

Additionally, the 90 day period started running in March 2018 when Mr. Carpenter was meant to be sentenced, but if not, then clearly the 90 day period had to have started in June. Discussing restitution now for a new party not mentioned at trial or in the PSR a year after the initial sentencing date clearly violates the MVRA.  The government's continued reliance on *Dolan v. United States*, 560 U.S. 605 (2010) is misplaced because it was a 5-4 split decision where the Chief Justice wrote the dissent stating:

> The Court appears to reason that §3664(d)(5) confers the authority to add a restitution
> provision for at least 90 days, and that once the camel's nose of some permitted delay

sneaks under the tent, any further delay is permissible. But that is not what §3664(d)(5) says. It provides 90 days for a final determination of the victims' losses, not a free pass to impose restitution whenever the trial court gets around to it. The court had no more power to order restitution 269 days after sentencing than it did to order an additional term of imprisonment and send Dolan back to prison. The Court finds Rule 35(a) inapplicable because the District Court was not "correct[ing]" a clear error in the sentence. True enough; but that is why the Government should lose. The limitation of Rule 35(a) to clear errors, corrected within 14 days of sentencing, does not leave trial courts free to make other changes to sentences whenever they choose. Rule 35(a) only makes sense against a background rule that trial courts cannot change sentences at will. *Dolan* at 624, 627-28.

The district court in *Dolan* had stated that some amount of restitution would be awarded, so there was no prejudice. Here, though, there is a large amount of miscalculated restitution based on the government's numbers.

## CONCLUSION

For all of the above reasons, this Court should not order restitution for the reinsurers and instead should *sua sponte* reconsider the Court's previous award of restitution to the carriers, none of whom experienced any loss, and where the reinsurance gains just for Lincoln wipes out and negates any loss for any of the carriers.

THE DEFENDANT
DANIEL E. CARPENTER
By /s/*Jonathan J. Einhor*n

Jonathan J. Einhorn, Esq.
Einhorn Law Offices
129 Whitney Avenue
New Haven, CT 06510
(203) 777-3777
einhornlawoffice@gmail.com
Fed Bar No 00163

**CERTIFICATION**

I hereby certify that on this 30th day of April, 2019, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Jonathan J. Einhorn*
Jonathan J. Einhorn, Esq.
Attorney & Counselor at Law
129 Whitney Avenue
New Haven, CT. 06510
tel: 203-777-3777
einhornlawoffice@gmail.com