

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 3:13CR226(RNC) |
| ) | |
| v. ) | |
| ) | January 12, 2021 |
| DANIEL E. CARPENTER ) | |

**PETITIONER DANIEL CARPENTER'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO STRIKE**

1

JAN 15 2021 PM2:40
FILED-USDC-CT-HARTFORD

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 3:13CR226(RNC) |
| ) | |
| v. ) | |
| ) | January 12, 2021 |
| DANIEL E. CARPENTER ) | |

**PETITIONER DANIEL CARPENTER'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO STRIKE**

When a diligent and well-respected prosecutor like AUSA Patel files a baseless motion to strike, which is clearly not favored in this district (see, e.g., *S.E.C. v. Ahmed*, 2020 WL 7321401 (D.Conn. Dec. 11, 2020) ("[M]otions to strike are generally disfavored, even when appropriately applied to the pleadings of a case. *See Britt v. Elm City Cmtys.*, 2018 WL 3574866, at *1 (D. Conn. July 24, 2018) ("[M]otions to strike are not favored.") (*quoting IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 2009 WL 5088750, at *1 (S.D.N.Y. Dec. 18, 2009)); *D'Alosio v. EDAC Techs. Corp.*, 2017 WL 1439663, at *2 (D.Conn. Apr. 21, 2017) ("Motions to strike under Rule 12(f) are generally disfavored."); *Cummings v. Bradley*, 2013 WL 1149985, at *1 (D.Conn. Mar. 19, 2013) ("Such motions [to strike] are disfavored.")); there can only be one reason, and that is the Petitioner is about to uncover serious prosecutorial misconduct in the Grand Jury transcripts that could lead to the dismissal of his indictment. If there were nothing to hide in the Grand Jury transcripts, AUSA Patel should have no problem in letting the Defendant see them now that the trial is over and he has been released from prison. Therefore, Petitioner would respectfully ask this Court to summarily deny the Government's Motion to Strike and have the Clerk turn over the Grand Jury transcripts for both the Original Indictment of December 13, 2013 as well as the Superseding Indictment of May 14, 2014 for the reasons stated below:

1. Clearly the Government must be hiding something. This is obvious because AUSA Patel knows better than to say that someone defending themselves cannot file *pro se*. Even if the Court takes only a cursory glance at Mr. Carpenter's docket in Boston, he will see a list of distinguished attorneys allegedly still "representing" him including Alan Dershowitz, Marty Weinberg, John Pappalardo, and Gary Greenberg of Greenberg Traurig fame. Additionally, local attorney Richard Order is still listed on Carpenter's docket in Massachusetts despite not filing anything for him during the past 15 years. It is significant, therefore, that Petitioner has been submitting motions *pro se* to both the District Court in Massachusetts and the First Circuit since 2015, and not once has a *pro se* filing been rejected by either court because he has had some of the best attorneys in the country representing him in the past. In fact, the Court can see that Mr. Carpenter has not one but two *pro se* appeals currently pending in the First Circuit to overturn his conviction.

2. As AUSA Patel points out, neither Dick Brown nor Cody Guarnieri has filed anything or represented Mr. Carpenter since before his sentencing, and Sidley Austin withdrew and has done nothing since the appeal ended in May of 2020. It was the Government who put the Restitution Appeal on hold, and while it is true that Jon Einhorn is representing Petitioner in that case, it is permanently on hold and has nothing to do with the present filings now before this Court.

3. In fact, this week, Petitioner made a significant discovery in order to respond to AUSA Patel's motion to strike. Ed Waesche pleaded guilty on December 9, 2013, and everything was under seal regarding his cooperation in Petitioner's prosecution. The only thing that Petitioner could find was the SIGTARP Press Release filing from 2019 that stated that Mr. Waesche got a light sentence because of his cooperation in the prosecution of Petitioner.

3

See SIGTARP Press Release attached as Exhibit One. Additionally, it was only this week that Petitioner saw Mr. Waesche's handwritten statement confessing his guilt to the Court filed on December 9, 2013. See Mr. Waesche's admission of guilt attached as Exhibit Two.

4. For the first time in 2021, Petitioner saw Ed Waesche's confession to being in a conspiracy to defraud insurance carriers from 2006-2013. Not only does this contradict Stef Cherneski's *Brady-Jencks* statement from April 20, 2010, but at no time did the Government turn this confession over as is their obligation under *Brady-Jencks-Giglio*. Certainly Petitioner was not involved in any conspiracy with Ed Waesche, and Guy Neumann, who was the accused for the purposes of the April 20, 2010 Raid, left with Stef Cherneski and Charlie Induddi-Westcott shortly after the raid in 2010. Nonetheless, this begs the question of who Petitioner was allegedly in a conspiracy with, and that question remains unanswered. Moreover, who was in the "Waesche conspiracy" that lasted until 2013? Certainly not Mr. Carpenter who suffered the Raids of April 20, 2010 and May 26, 2011. Petitioner was indicted only four days after Mr. Waesche confessed, so the chances are overwhelming that the Grand Jury was lied to by Ed Waesche about some fictitious conspiracy to defraud certain life insurance carriers. If it was a conspiracy against the insurance carriers that Ed Waesche lied about, then the Government will have a big problem, and Petitioner is probably entitled to having his indictment dismissed for egregious prosecutorial misconduct.

5. Moreover, in *Dennis v. United States*, the Supreme Court stated the importance of turning over the Grand Jury transcripts to the defense in a conspiracy case to determine who was involved in the conspiracy, and stated that in the Second Circuit, that course of action it is a matter of right:

> "A conspiracy case carries with it the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants. *See, e.g., United States v. Bufalino*, 285 F.2d 408, 417-18 (2d Cir. 1960). Under these circumstances, it is especially important that the defense, the judge and the jury should have the assurance that the doors that may lead to truth have been unlocked. In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations. For this reason, we cannot accept the view of the Court of Appeals that it is 'safe to assume' no inconsistencies would have come to light if the grand jury testimony had been examined. There is no justification for relying upon 'assumption.' In *Pittsburgh Plate Glass, supra*, the Court reserved decision on the question whether in camera inspection by the trial judge is an appropriate or satisfactory measure when there is a showing of a 'particularized need' for disclosure. This procedure, followed by production to defense counsel in the event the trial judge finds inconsistencies, has been adopted in some of the Courts of Appeals. **In the Second Circuit it is available as a matter of right.**" *Dennis v. United States*, 384 U.S. 855, 873-74 (1966) (emphasis added).

6. Contrary to AUSA Patel's assertions, not only is Petitioner entitled to both Grand Jury transcripts, according to the Supreme Court it is a matter a right in the Second Circuit. See *Dennis* at 874, *citing United States v. Hernandez*, 290 F.2d 86 (2d Cir. 1961) and *United States v. Giampa*, 290 F.2d 83, 85 (2d Cir. 1961). Furthermore, the cases that are described from the Second Circuit are all conspiracy cases because the accusation of conspiracy makes it easy to attribute criminal conduct to someone who is actually innocent, which is exactly what happened in this case. Petitioner could never have been in a conspiracy with Waesche since his and the other agents' fraud and lies on the applications hurt and disadvantaged not only the Charter Oak Trust, but Mr. Carpenter's company Grist Mill Capital as well. It is beyond dispute that Petitioner did not fill out, sign, or send in any of

the disputed applications. It is also beyond dispute that Christiana Bank held and controlled all of the policies in the Charter Oak Trust as the Insurance Trustee for the benefit of Ridgewood, and not for the benefit of Mr. Carpenter. See, e.g., the Honorable Judge Vanessa Bryant in *WSFS v. Universitas*, 3:15-cv-911 (VLB) (D.Conn. March 3, 2017).

7. To specifically address the baseless accusations made by AUSA Patel, Petitioner asserts that he was only given a copy of the FBI 302 Report during the *Brady-Jencks* discovery, and if something should have been deleted, it should have been deleted by the Government and not Petitioner. But, just to assuage AUSA Patel's concerns, all of Ed Waesche's information is easily accessible by anyone on Google, including his address, age, and what party he is affiliated with for voting purposes, so clearly there is nothing in the docket that hurts Mr. Waesche or his privacy. But, there is information helpful to Petitioner in the Waesche 302 Report, because Waesche was talking about a fax he picked up meant for Jack Robinson in 2007 in his discussion of the purchase of the beach house, so he clearly remembers this fax well enough to mention it to the Government in April of 2013. But, what was he doing picking up a fax meant for Jack Robinson in any event in 2007? The only reason to tell the story about the House in Rhode Island in 2013 is to lie to the FBI and the Grand Jury to make up a false story about where the money went.

8. Simply put, Mr. Carpenter did not know Mr. Waesche was cooperating with the Government in April 2013, and certainly any conspiracy involving the Charter Oak Trust was over in 2009 because of the Universitas litigation, and both the Trust and GMC were out of money by October 2009. See Judge Scheindlin's 2015 decision attached as Exhibit Three.

9. Once again, the important point here is that Wayne Bursey died in March of 2015, and Petitioner just discovered Waesche's confession of December 9, 2013 this week in 2021, stating that Waesche allegedly participated in some conspiracy from 2006-2013 when the Charter Oak Trust was done in 2009, and all of the policies applied for were applied for between 2006-2008, including the one that Waesche confessed to lying on in his December 9, 2013 written confession. See the list of all 15 Straw Insureds and their Application Dates attached as Exhibit Four, showing the applications were all submitted to the carriers between 2006 and 2008, thereby creating a potential Statute of Limitations problem for the Government based on the Waesche confession.

10. AUSA Patel also brings up *United States v. Rivernider*, 828 F.3d 91 (2d Cir. 2016), which is strange because Rivernider had counsel, yet this very Court allowed him to submit filings *pro se* and the Second Circuit affirmed that decision ("the district court did not err in allowing Rivernider to file his motion *pro se*, as it gave Rivernider an opportunity to set forth any meritorious grounds for withdrawing his plea."). *Id.* at 109-10. *Rivernider* actually mentions *Faretta*, and the right to self-representation; and the other case AUSA Patel mentions, *United States v. Tutino,* concludes that there is no problem with someone representing themselves *pro se*, and it is left to the discretion of the Court: "The decision to grant or deny "hybrid representation" lies solely within the discretion of the trial court." *See United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989), *citing O'Reilly v. New York Times Co.*, 692 F.2d 863, 869 (2d Cir. 1982).

11. Furthermore, it is difficult to imagine that with all his experience, AUSA Patel has not come across the landmark case of *Faretta v. California,* 422 U.S. 806, 834 (1975) that guarantees everyone the ability to defend themselves ("It is the defendant, therefore, who

must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."). Moreover, Petitioner should not need to point out that 28 U.S.C. §1654 guarantees that in federal courts, a person may represent themselves: "In all courts of the United States the parties may plead and conduct their own cases personally."

12. Therefore, the reason that is significant is because in *Johnstone v. Kelly*, 808 F.2d 214 (2d Cir. 1986), the Second Circuit vacated the conviction of the accused and said it was not harmless error if a court makes a mistake to not allow a defendant to proceed *pro se*.

For all of the reasons listed above, the Petitioner respectfully asks this Court to summarily dismiss the Government's motion to strike and to order the Clerk to mail the Grand Jury transcripts for the Original Indictment of December 13, 2013 and the transcripts for the Superseding Indictment of May 14, 2014 so that Petitioner can discover what other constitutional sins the Government is trying to hide, as well as any other relief that this Court deems appropriate in the interests of justice.

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092
