UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DANIEL E. CARPENTER ) | |
| ) | CRIMINAL NO. 3:13-CR-226(RNC) |
| v. ) | |
| ) | February 24, 2021 |
| FEDERAL BUREAU OF PRISONS ) | |


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE PERIOD OF SUPERVISED RELEASE BASED ON THE FIRST STEP ACT, 18 U.S.C. §3582(c)(1)(B) AND 28 U.S.C. §2243**

NOW COMES THE PETITIONER, Daniel E. Carpenter, *pro se*, to ask this Honorable Court to reduce the period of his Supervised Release based on credits provided under the First Step Act, 18 U.S.C. §3582(c)(1)(B), and this Court's inherent power under 28 U.S.C. §2243 to reduce a sentence of Supervised Release based on challenges to the Bureau of Prisons and its calculation of his sentence.

**NO ORAL ARGUMENT REQUESTED**

1

## PRELIMINARY STATEMENT

As this Court is well aware, Petitioner has exhausted his administrative remedies pursuant to the First Step Act not once, but several times, and has already filed various petitions with courts in Massachusetts and Brooklyn pursuant to 28 U.S.C. §2241. As the Court is also aware, it is black-letter law in the Second Circuit that Petitioner can challenge the exercise of his sentence and ask to reduce a period of Supervised Release when the BOP has been negligent in crediting time under the law for the serving of Petitioner's sentence. *See Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006): "There is no question, moreover, that 28 U.S.C. §2243 authorizes the district court to provide habeas relief as law and justice require, including a reduction in a petitioner's term of supervised release." *Id.* at 77.

### I.   LEGAL STANDARD

Enacted on December 21, 2018, the First Step Act (hereinafter "FSA") was the result of a bipartisan legislative effort to overhaul the criminal justice system and provide Earned Time Credits for the reduction in sentences for nonviolent elderly offenders as well as other drug-based crimes that receive extraordinarily long sentences. Congress aimed to enhance public safety by improving the effectiveness and efficiency of the federal prison system with a new Risk and Needs Assessment Program known as PATTERN, and everyone would receive a PATTERN Score so that they could be assessed for whether they receive 10 or 15 days a month off for those determined to be low risk, nonviolent offenders. *See* 18 U.S.C. §3632(d)(4)(A):

> The Act also makes clear that "[T]ime credits earned under this paragraph by prisoners that actively participate in recidivism or activities shall be applied to time in prerelease custody or **supervised release**. The Director of the Bureau of Prisons shall transfer eligible prisoners as determined under §3624(g) into prelease custody or supervised release." *Id.* Furthermore, under the federal sentencing statutes: "[I]f the Sentencing Court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release after imprisonment…the Director of the Bureau of Prisons may

transfer the prisoner to begin any such term of supervised release at an earlier date…based on the application of earned time credits under §3532." *See* §3521(g)(3).

Petitioner's sentence included three (3) years of Supervised Release, and therefore under application of the FSA, the Earned Time Credits Petitioner earned should be used to reduce his period of Supervised Release. Additionally, §3632(d)(6) provides: "In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible." Petitioner was entitled to 135 days of Good Conduct Time credits, and was also entitled to have three months of Home Confinement pursuant to §3624(c), which he obviously never received. This Court can remedy that by ordering Petitioner's immediate release pursuant to §3582(c)(1)(B) based on a change in the statutes or the Court's inherent authority to issue Writs pursuant to 28 U.S.C. §2243. *See, e.g., Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006), stating that the District Court has the right pursuant to §2243 to reduce a prisoner's term of Supervised Release.

In fact, this Court determined that it also had the right pursuant to the FSA to reduce a defendant's period of Supervised Release in *United States v. Page*, 2020 WL 1698671 at *6-7 (D.Conn. April 8, 2020).

> Returning to the First Step Act, I conclude that it authorizes a reduction in a term of supervised release. The First Step Act constitutes an authorization to "impose a reduced sentence." A sentence is comprised of at least two parts: the term of imprisonment and the term of supervised release. *See* 18 U.S.C. §3583(a) ("The court, in imposing a sentence to a term of imprisonment…may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment…"). The First Step Act therefore authorizes courts to reduce both a term of imprisonment and a term of supervised release…This construction comports with the statutory text and the remedial purposes of the First Step Act and the Fair Sentencing Acts. *See Page* at 7, *citing United States v. Simons,* 375 F.Supp.3d 379, 382 (E.D.N.Y. 2019).

3

Therefore, Petitioner respectfully suggests that under the First Step Act as well as the credits granted for the Due Process violations in this case, Petitioner is entitled to have his 36 months of Supervised Release reduced to zero by this Honorable Court.

## II.   JUDGE GORTON'S CALCULATION IN *MACFARLANE*

In *United States v. Macfarlane*, 438 F.Supp.3d 125 (D.Mass. Apr. 14, 2020), Judge Gorton recognized the traditional standard that if a prisoner who was assigned to a Camp ended up being sent to a higher security prison or experienced a lockdown, then each week served in the maximum security facility was equal to a month in the camp facility. In this case, without warning, notice, or any reason, the BOP transferred Petitioner from the relatively nice environments of the Camp at FMC Devens, through Wyatt, and then to Maximum Security facility at MDC Brooklyn from Thanksgiving until his release in 2020. At this late date Petitioner still has never been told why.

Moreover, Petitioner was locked down at MDC Brooklyn from March 31, 2020 until his release on June 3, 2020, so under the District Court's decision in *Macfarlane*, he should also have an additional many months taken off of his Supervised Release based on the ratio of one week at MDC Brooklyn being equal to one month off an inmate's sentence when he should have been at a Camp. *See Macfarlane* at 127 ("…the Court determines that Macfarlane's two-week confinement in solitary quarantine in a higher security facility *is the equivalent* of two months in the Camp to which he was originally assigned."). In fact, Paul Irby, General Counsel of the BOP's office of the Designation and Sentence Calculation Center (DSCC) in Grand Prairie, Texas told Petitioner's prison consultant that Petitioner would need to sue the BOP to find out the reasons for this transfer of a nonviolent Elderly Offender from the Camp at Devens to a Maximum Security facility at MDC Brooklyn.

Now that Petitioner has served almost his entire sentence (his Supervised Release begins May 8, 2021), there is no reason to question the rationale for why the BOP took an elderly White-Collar inmate out of the Camp at Devens to put him in MDC Brooklyn where he was surrounded by known killers and members of MS-13. There can be no excuse for why the BOP did this. But, now that Petitioner is on Community Confinement through Watkinson House and is almost at the end of his sentence, and based on the time that Petitioner spent at MDC Brooklyn from November 2019 to June 2020 (a total of 30 weeks), Petitioner is entitled to have 30 months taken off of his period of Supervised Release. Additionally, because Petitioner was locked down 24/7 from March 31, 2020 to June 3, 2020 due to the COVID-19 Pandemic, which should give him another 10 months of credit for the 10 weeks of being locked down in a small cell in a Maximum Security facility with no time to exercise and with limited access for basic activities as taking a shower.

As the Second Circuit stated in *United States v. Ray*, 578 F.3d 184 (2d Cir. 2009): "[T]he Due Process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings." *Id.* at 199, *citing Doggett v. United States,* 505 U.S. 647, 666 (1992). In trying to craft a remedy for the Due Process violation in *Ray*, the Second Circuit eliminated the need for Ms. Ray to serve any of her custodial sentence or serve her time in a Halfway House and stated the following:

> "The appropriate remedy for a proven due process violation often depends on the stage at which the violation is found and the relief sought." After a due process violation has occurred, courts endeavor to fashion relief that counteracts the prejudice caused by the violation. The Sixth Circuit has stated that 'suspension of the remainder of the sentence' is the appropriate remedy for a due process violation arising from a delayed resentencing. The violation of Ray's due process right has prejudiced her insofar as a delayed custodial sentence threatens to undermine her successful rehabilitation. To remedy that harm, the appropriate relief is to release her from any requirement that she submit to a custodial sentence. Accordingly, we conclude that the appropriate remedy in this case is the vacatur of Ray's sentence insofar as it imposes a six-month term of residence in a halfway house. *See Ray* at 202–03.

Therefore, it is clear that once a Due Process violation is discovered, it is up to the district court to deliver the remedy, which is why the court in *Ray* cancelled the rest of her sentence. Petitioner respectfully asks this Court to do the same.

### III.     EARNED TIME CREDITS UNDER THE FIRST STEP ACT

The First Step Act ("FSA"), which was enacted in December 2018, provided that all prisoners would receive 10 days, and those in a Camp or lower security facility with less of a chance of recidivism would receive an additional 5 days for a total of 15 days per month to be taken off their sentence or the period of Supervised Release. That means that because of Petitioner's status of being an elderly White-Collar prisoner assigned to a Camp and having the lowest PATTERN Score at MDC Brooklyn, he should be entitled to 15 days a month from March 2, 2019 to May 8, 2021 for a total of 13 Months off of his period of Supervised Release. Once again, the BOP has established that there is no difference between being at a Camp, a Halfway House, or on Home Confinement, so Petitioner is undoubtedly entitled at least 13 months of Earned Time Credits. *See, e.g.,* PS5321.08, written by BOP Director Kathleen Hawk Sawyer over 20 years ago: "A CCC [Halfway House] meets the definition of a penal or correctional facility pursuant to 18 U.S.C. §3621(b)." Perhaps the best description that Home Confinement is still "imprisonment" under the BOP's custody is Judge Ponsor's decision in *Iacoboni v. United States*, 251 F.Supp.2d 1015 (D. Mass. 2003):

> Indeed, the notion of "imprisonment" clearly encompasses conditions of confinement substantially less restrictive than community confinement. For example, §3624(c) authorizes the BOP to "assure that a prisoner serving a *term of imprisonment*" is given the opportunity to serve as much as six months of the final portion "*of the term*" in home confinement. *Id.* (emphasis supplied). In other words, Congress has recognized that an offender may serve a portion of a "term of imprisonment" while living at home, full time. As the Supreme Court recognized in *Koray*, the critical litmus is whether offenders "always remain subject to the control of the Bureau." *Reno v. Koray*, 515 U.S. 50, 63 (1995). Offenders imprisoned in community confinement are subject to BOP control. They are, as Chief Justice Rehnquist noted, "subject to BOP's disciplinary procedures; they are subject

to summary reassignment to any other penal or correctional facility within the system, and, being in the legal custody of BOP, the Bureau has full discretion to control many conditions of their confinement." *Id.* BOP control is the touchstone of "imprisonment," and the BOP exercises complete control over all offenders placed in community corrections. They are imprisoned. Finally, the argument that the BOP, in exercising its Congressionally-bestowed discretion to designate as the "place of the prisoner's imprisonment...any available penal or correctional facility," §3621(b), is, in effect, *failing* to "imprison" the offender when it designates him or her to a community corrections facility simply ignores §3551, which can only be read to include community confinement as a form of imprisonment, the last category of the three "authorized sentences." Thus, as a matter of law, and a matter of common sense, the argument that community confinement is not a form of imprisonment will not wash. *Id.* at 1029.

During his period of incarceration and while assigned to the BOP Halfway House, Watkinson House, for Home Confinement, not only did Petitioner display exemplary conduct, he also took numerous classes and even taught several classes. Petitioner also had a steady job at Devens in the Powerhouse and was an admin orderly in charge of the Chapel and Library at MDC Brooklyn. Therefore, Petitioner should be qualified for 13 months of Earned Time Credits to reduce his 36 month period of Supervised Release pursuant to the First Step Act.

IV.   **DUE PROCESS VIOLATION ANALYSIS UNDER *BENATTA***

The District Court's holding in *United States v. Benatta*, 2003 WL 22202371 (W.D.N.Y. 2003) is instructive. In *Benatta*, the District Court found a Speedy Trial delay under 18 U.S.C. §3161(j) and dismissed Benatta's indictment with prejudice. Clearly if Benatta, who was a suspected 9/11 terrorist arrested at the Canadian border, was granted a Due Process dismissal of his indictment certainly Petitioner is entitled to that same relief. However, for the purposes of this Motion, Petitioner has an even better §3161(j) argument than Benatta did, and while dismissal of an indictment for the Government's violation of §3161(j) may be rare, it did happen in *Benatta* and should also happen in this case. If the District Court in *Benatta* had the right to dismiss Benatta's indictment for the 134 days he spent at MDC Brooklyn, certainly this Court has the right to resentence Petitioner to time served and no Supervised Release, if not dismissing Petitioner's

7

Indictment altogether as was done in *Benatta*. All told, Petitioner spent a longer time at Wyatt for his trial in 2016, and certainly spent more time at MDC Brooklyn from November to June than Benatta did, and the conditions that Petitioner suffered through were far worse than anything Benatta suffered and at no time was Petitioner suspected of being a Terrorist.

Significantly, Petitioner should have been credited for his entire time at Wyatt prior to and during his trial, as he spent more time in detention in both MDC Brooklyn and Wyatt than the defendant in *Benatta*, who again, had his indictment dismissed for the Due Process violations that were not as great as the violations in this case. However, the Due Process Delay bullet that the Government cannot possibly dodge is 18 U.S.C. §3161(j)(1), (2), and (3), which provide as follows:

> (j)(1) If the attorney for the government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly –
>
> (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.
>
> 2. If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the government who caused the detainer to be filed.
>
> 3. Upon receipt of such notice, the attorney for the government shall promptly seek to obtain the presence of the prisoner for trial. *See Benatta* at *12-13.

In this case, the Government filed a Superseding Indictment with a whole new series of Money Laundering charges against Petitioner in May 2014, just one month before the Government knew that Petitioner would be reporting to prison in June 2014. So, while the Government knew they were re-indicting Petitioner just before he was to report USP Canaan in June 2014, they did absolutely nothing as required under §3161(j) to notify Petitioner or the Warden at Canaan. Then, without notifying Petitioner or his attorneys, they had Petitioner yanked out of his bunk after lights-

out on December 28, 2015 and transferred to MDC Brooklyn that resulted in him being held in maximum security at both MDC Brooklyn for 60 days and at Wyatt for over 180 days, which is double the amount of time Benatta spent in maximum security. If a suspected 9/11 terrorist caught at the Canadian Border and held in MDC Brooklyn for only four months was released on Speedy Trial grounds and had his indictment dismissed with prejudice pursuant to §3161(j), then Petitioner is well within his rights to respectfully request this Court order that same relief. All told, in this case, the §3161(j) violation is four times greater than *Benatta*, and Petitioner is owed 12 months of time-served credits pursuant to §3585(b) for the time period between January 27, 2016 to January 27, 2017. In addition to the Halfway House and Home Confinement time that is guaranteed to everyone pursuant to §3624(c), Petitioner has been deprived of that time no less than twice now, which should result in yet another credit against his 36 months of Supervised Release.

## CONCLUSION

Petitioner deserves the same Due Process considerations as the defendants in *Ray* and *Benatta*, and asks only for the Court to recognize the Due Process violations in this case and apply the Earned Time Credits of the First Step Act and Judge Gorton's calculation of time credits under *Macfarlane* to resentence Petitioner to time served and to eliminate his Supervised Release as was done by the Second Circuit in *Ray*.

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092

**NO ORAL ARGUMENT REQUESTED**

9