# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 3:13CR226(RNC) |
| v.                        ) | |
|                           ) | February 26, 2021 |
| DANIEL E. CARPENTER       ) | |

## PETITIONER'S REPLY TO THE GOVERNMENT'S OPPOSITIION AND IN SUPPORT OF THE RELEASE OF THE GRAND JURY TRANSCRIPTS

TO THE HONORABLE ROBERT N. CHATIGNY, MAY IT PLEASE THE COURT:

Based on the Government's response dated February 26, 2021 and the Exhibit attached (see Dkt. #540), which Petitioner also attaches as Exhibit One to this Reply, Petitioner respectfully requests that the Court order the Government or the Clerk of the Court to send to Petitioner by mail the Grand Jury Transcripts from both December 2013 and the from May 2014 along with the 1,300 pages of handwritten notes of the investigators "over the past three years" as mentioned in the Government's Exhibit.

Obviously, the Court realizes that Petitioner never saw these documents or he never would have needed to ask for them. Second, it was disingenuous at best for AUSA Patel to object to Petitioner's request for the Transcripts if a month later he was willing to say Petitioner's attorneys had these documents all along from five years ago. Third, as is probably obvious to the Court as well as the Government, Petitioner now has ironclad evidence of either a suppression of *Brady-Jencks* evidence on the part of the Government, or an Ineffective Assistance of Counsel claim for his future Petition under 28 U.S.C. §2255 because it is clear Petitioner never received the documents on a timely basis prior to his trial in February of 2016 as required by the Second Circuit

1

in *United States v. Gil*, 297 F.3d 93 (2d Cir. 2002) citing *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001).

More importantly, this also confirms that Petitioner's conviction should be overturned because from AUSA Novick's own email, where he states that he was turning over the *Brady* documents less than a week before trial, so this is on all fours with Second Circuit ruling *United States v. Gil*, 297 F.3d 93 (2d Cir. 2002), which stated that materially favorable evidence, even if not admissible itself, must be disclosed pursuant to trial so that it can be used effectively by the defense. Indeed, in *Gil*, the inclusion of critical exculpatory (and impeachment) information in boxes of documents produced pursuant to 18 U.S.C §3500 the weekend prior to trial was deemed insufficient notice. *Id.* at 106-07.

In fact, in the box that Gil's attorneys were given was the one piece of exculpatory information that should have been turned over but wasn't, the proverbial needle in the haystack as the Second Circuit has referred to it. *See United States v. Thomas*, 981 F.Supp.2d 229 (S.D.N.Y. 2013) ("the government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials."). *Id.* at 239, *citing United States v. Skilling*, 561 U.S. 358 (2010) (suggesting that *Brady* violations related to voluminous open file discovery depend on what the government does in addition to allowing access to a voluminous open file). This case is also on all fours with *United States v. C.E.S.*, 753 F.3d 72 (2d Cir. 2014) because the reports and notes in that case were not turned over to the defense on a timely basis prior to trial. Therefore, Petitioner respectfully asks the Court to have the Clerk send him the Grand Jury Transcripts and other information allegedly sent to his attorneys pursuant to AUSA Novick's email, and for the Court to take judicial notice that Petitioner was traveling two hours each day to court from the Wyatt Detention Facility, and at no time was he provided these documents nor would he had a place to store and review

them at Wyatt. Therefore, in the interests of justice, this Court should order the Government to turn over all of the documents to Petitioner that they allegedly turned over to his attorneys. Petitioner has already contacted his attorneys to see if they did receive them, and if so, why they did not turn the documents over to him prior to trial.

Also, the Court will notice that one of AUSA Novick's sources was: "More records from ISM Advisors: Lincoln, MetLife, Phoenix, and **Universitas**." Once again, as the Court knows, what started this request is that some witness lied to the Grand Jury about Petitioner somehow stealing funds from Universitas to buy a home in Rhode Island, and now supposedly the identity of the witness would be known. So, whether it was Lynn Allen or Ed Waesche who testified, there is a now a *Jencks* problem as well as a *Brady-Giglio-Bagley-Napue* problem. Therefore, Petitioner does not wish to put the proverbial cart before the horse, but respectfully asks that the Clerk of the Court and the Government provide all of these documents by mail to Petitioner immediately with the realization that he never received them on a timely basis before his trial as required by the Second Circuit in *Gil, C.E.S., Thomas*, and other cases that require that vital §3500 Jencks Act material be provided to the defense with enough time to analyze so that it can be helpful to the defense at trial.

From Petitioner's standpoint, the material was never turned over and he never viewed it. But, even assuming that AUSA Novick and AUSA Patel did provide it to Petitioner's attorneys, they clearly provided it two days after the original trial date of February 9, 2016. The trial started on February 16, and the list that AUSA Novick talks about is clearly far more extensive than any human being could analyze, especially when they are under 23 hour a day lockdown at Wyatt. So, clearly this case will eventually be dismissed for *Brady-Jencks-Giglio-Napue* violations as well as other prosecutorial misconduct. But, on the face of it, Petitioner appears to have a very solid case

for dismissal of his Indictment just on the failure of the Government to provide the §3500 materials on a timely basis before trial.

The Government certainly did not provide this material to the Petitioner after the people testified, so there is clearly a *Jencks* violation as well. It is difficult to imagine that the Government can dodge the *Brady* bullet or *Jencks* bullet, but certainly they cannot dodge the *Gil* bullet as well as what the Second Circuit stated was required in *Leka v. Portuondo*, 257 F.3d 89, 101-03 (2d Cir. 2001) ("[t]he opportunity for use under *Brady* is the opportunity for a responsible lawyer to use the information with some degree of calculation and forethought," and *C.E.S.* ("[u]nder *Brady* and its progeny, the government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment."). *Id.* at 91. Moreover, long after Petitioner's trial, the Supreme Court talked about the importance of turning over *Brady* material on a timely basis in *Turner v. United States,* 137 S.Ct. 1855 (2017) in stating that the Government violates the Constitution's Due Process Clause "if it withholds evidence that is favorable to the defense and material to the **defendant's guilt or punishment**." *Turner* at 1893, *quoting Wearry v. Cain*, 565 U.S. 73 (2012):

> "The Government does not contest petitioners' claim that the withheld evidence was favorable to the accused, either because it is exculpatory, or because it is impeaching. *Strickler* v. *Greene*, 527 U.S. 263, 281-82 (1999). Neither does the Government contest petitioners' claim that it "suppressed" the evidence, "either willfully or inadvertently." *Id.* at 282. It does, as it must, concede that the *Brady* rule's "overriding concern [is] with the justice of the finding of guilt," *United States* v. *Bagley*, 473 U.S. 667, 678 (1985) (quoting *United States* v. *Agurs*, 427 U.S. 97, 112 (1976)), and that the Government's "interest…in a criminal prosecution is not that it shall win a case, but that justice shall be done," *Kyles* v. *Whitley*, 514 U.S. 419, 439 (1995) (quoting *Berger* v. *United States*, 295 U.S. 78, 88 (1935)). Consistent with these principles, the Government assured the Court at oral argument that subsequent to petitioners' trial, it has adopted a "<u>**generous policy of discovery**</u>" in criminal cases under which it discloses any "information that a defendant might wish to use." As we have recognized, and as the Government agrees, *id.*, "[t]his is as it should be." *Kyles* at 439 (explaining that a "prudent prosecutor['s]" better course is to take care to disclose any evidence favorable to the defendant (quoting *Agurs* at 108))." *Turner* at 1893, *citing Cone v. Bell*, 556 U.S. 449, 469-70 (2009) (emphasis added).

The problem in this case is that the Government did not turn over the Grand Jury Transcripts on a timely basis to the Defense, and if they did turn those documents over to Petitioner's attorneys, then Petitioner's attorneys are at fault for not turning those documents over to Petitioner. There should be no doubt in the Government's mind that there will be further litigation against the Government in this case if they do not turn over the Grand Jury Transcripts **now** as they say that they allegedly did days after Petitioner's trial was to start in February of 2016. The list of clear violations of the Constitution and the number of examples of prosecutorial misconduct in this case grow on a monthly basis.

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092