**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DANIEL E. CARPENTER | ) | CRIMINAL NO.3:13-CR-226(RNC) |
| *Petitioner* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | MAY 25, 2022 |
| *Respondent* | ) | |
| | ) | |

MAY 25 2022 PM1:45
FILED-USDC-CT-HARTFORD

**PETITION FOR IMMEDIATE TERMINATION OF SUPERVISED RELEASE**
**PURSUANT TO THE FIRST STEP ACT, 18 U.S.C. §3583(e)(1) AND 28 U.S.C. §2243**

**IMMEDIATE ORDER TO SHOW CAUSE REQUESTED**

1

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL E. CARPENTER<br>*Petitioner* | )<br>)<br>) | CRIMINAL NO.3:13-CR-226(RNC) |
| v. | )<br>) | |
| UNITED STATES OF AMERICA<br>*Respondent* | )<br>)<br>)<br>) | MAY 25, 2022    MAY 25 2022 PM 1:45<br>FILED-USDC-CT-HARTFORD |

**PETITION FOR IMMEDIATE TERMINATION OF SUPERVISED RELEASE**
**PURSUANT TO THE FIRST STEP ACT, 18 U.S.C. §3583(e)(1) AND 28 U.S.C. §2243**

NOW COMES THE PETITIONER, Daniel E. Carpenter, *pro se*, to ask this Honorable

Court for the immediate termination of his Supervised Release pursuant to 18 U.S.C. §3583(e)(1)

and based on credits provided under the First Step Act, and this Court's inherent power under 28

U.S.C. §2243 to reduce a sentence of Supervised Release at any time based on the interests of

justice.

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT
06092

**IMMEDIATE ORDER TO SHOW CAUSE REQUESTED**

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DANIEL E. CARPENTER<br>*Petitioner*<br><br>v.<br><br>UNITED STATES OF AMERICA<br>*Respondent* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CRIMINAL NO.3:13-CR-226(RNC)<br><br><br><br>MAY 25, 2022        MAY 25 2022 PM1:45<br>                    FILED-USDC-CT-HARTFORD |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR
THE IMMEDIATE TERMINATION OF PETITIONER'S SUPERVISED RELEASE
PURSUANT TO THE FIRST STEP ACT, 18 U.S.C. §3583(e)(1) AND THE COURT'S
INHERENT POWER UNDER 28 U.S.C. §2243**

NOW COMES THE PETITIONER, Daniel E. Carpenter, *pro se*, to ask this Honorable

Court to reduce the period of his Supervised Release pursuant to 18 U.S.C. §3583(e)(1) as provided

for under the First Step Act, and this Court's inherent power under 28 U.S.C. §2243.

**IMMEDIATE ORDER TO SHOW CAUSE REQUESTED**

**PRELIMINARY STATEMENT**

This Court has written the seminal decision on the necessary interaction between the First

Step Act and Section 18 USC 3583(e)(1) to achieve the interests of justice in *United States v.*

*Page,* 2020 WL 1698671 at *6-7 (D.Conn. April 8, 2020), where this Court took two full years

off of the Defendant's period of Supervised Release in addition to commuting his sentence to time

served:

> Returning to the First Step Act, I conclude that it authorizes a reduction in a term of
> supervised release. The First Step Act constitutes an authorization to "impose a
> reduced sentence." A sentence is comprised of at least two parts: the term of
> imprisonment and the term of supervised release. *See* 18 U.S.C. §3583(a) ("The court,
> in imposing a sentence to a term of imprisonment...may include as a part of the
> sentence a requirement that the defendant be placed on a term of supervised release
> after imprisonment..."). The First Step Act therefore authorizes courts to reduce both
> a term of imprisonment and a term of supervised release...This construction comports
> with the statutory text and the remedial purposes of the First Step Act and the Fair
> Sentencing Acts. *See Page* at 7, *citing United States v. Simons,* 375 F.Supp.3d 379, 382
> (E.D.N.Y. 2019).

This Court is also well aware that Petitioner has served his full sentence and not received

**_any_** benefits from the First Step Act because of the Government's persistence to make sure that

Supervised Release in Petitioner's case was "additional punishment" rather than the

Rehabilitation and gradual reentry into Society that it was meant to be. Therefore, it is black-letter

law in the Second Circuit that Petitioner can apply to this Court for the immediate termination of

his period of Supervised Release because the Bureau of Prisons and the Government have been

negligent in applying the various credits created under the First Step Act to reduce the prison

sentences for White-Collar criminals over the Age of 60. *See Levine v. Apker*, 455 F.3d 71 (2d Cir.

2006): "There is no question, moreover, that 28 U.S.C. §2243 authorizes the district court to

provide habeas relief as law and justice require, including a reduction in a petitioner's term of

supervised release." *Id.* at 77.

## I.  CRITERIA FOR ENDING SUPERVISED RELEASE

The Judicial Conference on Criminal Law has elaborated on 18 U.S.C. § 3583(e)(1)'s statutory criteria and recommended that probation officers evaluate nine factors when deciding whether to approve early termination of Supervised Release.

Those factors are:

1) Stable community reintegration (e.g., residence, family, employment);

2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;

3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

4) No history of violence;

5) No recent arrests or convictions;

6) No recent evidence of alcohol or drug abuse;

7) No recent psychiatric episodes;

8) No identifiable risk to the safety of any identifiable victim; and

9) No identifiable risk to public safety based on the Risk Prediction Index.

*See United States v. Filocomo*, No. 02CR30731S16 (NGG), 2022 WL 118735, at *1 (E.D.N.Y. Jan. 12, 2022).

## II.    IMMEDIATE RELIEF REQUESTED

Petitioner assumes that the Government will file its standard defamatory objections. Therefore, this Court should either grant immediate relief and terminate the remaining period of Petitioner's Supervised Release or issue an Order to Show Cause why relief should not be granted. Currently before this Court is Petitioner's 2255 Petition filed November 4, 2021—which if granted by this Court would result in the vacating of Petitioner's conviction and result in the cancellation of any Restitution owed. As it stands, it is the Government that is stalling the appeal to vacate Petitioner's Restitution in this case because Petitioner has six different motions to vacate his conviction, and the Second Circuit placed Petitioner's Restitution appeal "on hold"—at the request of the Government. But in the famous case of Roy William Harris, who defrauded several banks of over $200,000,000, the Court in that case made several instructive observations:

> Restitution for victims is a mandated sentencing objective. However, it is fair to analyze that objective's application to the facts of a particular case. There are two noteworthy circumstances. First, the victims of Harris's fraud were a consortium of sophisticated international banks, advised by accountants and attorneys, whose existence and business activities survived the fraud. This does not excuse Harris's crimes against them, but the plight of the victims in this case cannot be mistaken for the devastated individual victims of schemers such as Bernard Madoff. Second, the government cannot reasonably expect to achieve during the balance of Harris's supervised release any meaningful redress of the banks' $200 million loss, as calculated in the restitution order. The impoverished Madoff victims may, through the efforts of various law enforcement and legal sources, achieve at least some measure of restitution and financial security. Keeping Harris's supervised release restitution obligation in effect until March 2012 will have no effect whatsoever upon the balance sheets of the bank victims. **The only practical consequence of continuing supervision for that purpose is to cripple Harris's efforts to achieve full rehabilitation through professional advancement.**

> The question posed by 18 U.S.C. § 3583(e)(1) is whether, in these circumstances, an early termination of Harris's supervised release would be "in the interest of justice." In approaching that question, I have first, as the statute commands, carefully considered the sentencing purposes set forth in § 3553(a). The magnitude of fraud and Harris's role as its architect count against him, but other sentencing purposes working in his favor tip the balance. Harris's offenses were serious but his

term of imprisonment was lengthy, in accordance with the guidelines, and just. There is no need for further general deterrence. There is no need to protect the public from Harris. The desirability of Harris's continued rehabilitation through enhanced professional opportunity trumps whatever minimal restitution might be obtained by continued supervision.

*United States v. Harris*, 689 F. Supp. 2d 692, 695–96 (S.D.N.Y. 2010).

Therefore, Restitution in this case should not be a barrier to the immediate termination of Petitioner's remaining period of supervised release.

## III.   SPECIAL CIRCUMSTANCES IN THIS CASE WARRANT GRANTING IMMEDIATE RELIEF

Aside from the various motions made to vacate his conviction, Petitioner is entitled to the same credits and treatment under the First Step Act and the CARES Act that other prisoners received. All released prisoners are entitled to ask for the termination of their period of Supervised Release after serving one year. Petitioner began his period of Supervised Release on May 8, 2021. Under the Final Rules for First Step Act Earned Time Credits released in January 2022, Petitioner is entitled to 13 months off, based on 15 days per month for 26 months of imprisonment. Petitioner always had a job in prison and was always receiving psychiatric care and was supervised by Government psychiatrists during his period in the Halfway House.

But Petitioner was meant to be at a Camp at FMC Devens, not Maximum Security at MDC Brooklyn. Without warning, Petitioner was scooped up at Devens and shipped to MDC Brooklyn over Thanksgiving in November 2019. His family did not hear from him for four days. Based on Judge Gorton's now famous formula in *United States v. Macfarlane*, 438 F.Supp.3d 125 (D.Mass. Apr. 14, 2020), each week spent in a High or Maximum-Security facility equals a month off of the traditional Camper's sentence. Just counting the weeks from December 1, 2019 to May 31, 2020 means that Petitioner is entitled to 28 months off of his "sentence" or Supervised Release, and before the Government complains yet again that Judge Gorton is wrong—the purpose of

reviewing the standards under 18 U.S.C 3553 is to make sure that there are no sentencing disparities between the Circuits. People who actually pleaded guilty to fraud in Boston in the "Varsity Blues" case received ridiculously low sentences when compared to Petitioner—who never pleaded guilty, who is actually innocent, and who is still trying to vacate his convictions in Boston as well as Connecticut. Similarly, the Government protested Petitioner's release under the CARES Act despite the fact that Petitioner had served over 25% of his sentence and was under 18 months to the door.

Petitioner does not want to belabor the point, because the truth of the matter is in the Docket. In the Government's last filings, they still referred to Petitioner as a danger to the Community. *See e.g.* Doc. 545 at 6. Petitioner respectfully asks the Court to grant Petitioner's 8-month-old 2255 Petition in order to hasten the Government's day of reckoning in front of Judge Underhill—a case that is a decade old and on its way to the Second Circuit for a third time.

But that is far from the only violation of the Constitution in this case. Petitioner respectfully refers the Court to the *Benatta* case, *United States v. Benatta*, 2003 WL 22202371 (W.D.N.Y. 2003), where a suspected 9-11 Terrorist had his indictment dismissed because he only spent four months at MDC Brooklyn instead of Petitioner's six months. Petitioner had to suffer through his 2016 trial at Wyatt because the Government never sent the Speedy Trial Notice required pursuant to 18 U.S.C 3161(j) to anyone at Canaan, much less than the Warden as required by law. *See* Petitioner's November 4, 2021 2255 Petitioner at pp 64-67, for an in depth discussion of *Benatta* and the Government's violation of 18 U.S.C 3161(j).

"[T]he Due Process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings." *United States v. Ray*, 578 F.3d 184, 199 (2d Cir. 2009), *citing Doggett v. United States,* 505 U.S. 647, 666 (1992). In *Ray*, in trying to craft a

remedy for the Due Process violation for the delay in Ms. Ray's case, the Second Circuit eliminated the need for her to serve any of her custodial sentence or serve her time in a Halfway House and stated the following:

> "The appropriate remedy for a proven due process violation often depends on the stage at which the violation is found and the relief sought. After a due process violation has occurred, courts endeavor to fashion relief that counteracts the prejudice caused by the violation. The Sixth Circuit has stated that suspension of the remainder of the sentence is the appropriate remedy for a due process violation…. The violation of Ray's due process right has prejudiced her insofar as a delayed custodial sentence threatens to undermine her successful rehabilitation. To remedy that harm, the appropriate relief is to release her from any requirement that she submit to a custodial sentence. Accordingly, we conclude that the appropriate remedy in this case is the vacatur of Ray's sentence insofar as it imposes a six-month term of residence in a halfway house." *Ray* at 202-03.

## IV.    PETITIONER IS ENTITLED TO RELIEF

Petitioner is an innocent man that was the victim of egregious prosecutorial misconduct detailed in two different Petitions before this Court. However, even assuming *arguendo* that Petitioner was as guilty as famous defendants Ronald Filocomo or Roy William Harris, both of whom had their periods of Supervised Release terminated by the Court, the goals of Supervised Release have been reached. He has successfully reentered Society and there is no need for the Probation Office to waste valuable time and money to supervise Petitioner. Clearly it is in the interests of justice to terminate Petitioner's period of Supervised Release—if not getting a full apology from the Government for their wrongful defamation of Petitioner over the years.

Petitioner meets all of the relevant criteria from § 3553(a) and the nine policy criteria outlined above from *Filocomo*.

But what were Petitioner's crimes? Allegedly he did not "disclose" to his investors that he was losing money during the NASDAQ Stock Market Crash of 2000—and then he allegedly lied to insurance carriers in 2007-2008 on insurance applications that he never filled out, signed, or sent in. That is it. Eventually this Court will grant relief, or the Second Circuit will grant relief

based on *United States v. Countrywide,* 822 F.3d 650 (2d Cir. 2016), or the Supreme Court will grant relief based on *Skilling v. United States,* 561 U.S. 358 (2010) and *Kelly v. United States,* 140 S.Ct. 1565, 1573-74 (2020). There is no good reason to keep "supervising" an innocent man purportedly in the interests of justice. If the Supreme Court could receive the Defendant's Writ in *Ex Parte Merryman,* 17 F. Cas. 144 (1861) on May 25, 1861, during the Civil War—and grant the Writ two days later on May 27, 1861—this Court should be able to do the same as the Pandemic is over and we are not at war.

While the Government clearly defamed and ruined Petitioner's life and there is no way for Petitioner to get back the last 20 years—Petitioner respectfully asks the Court to review what Petitioner did with his time in prison from June 2014 to May 2021. Petitioner wrote several books including writing, compiling, and editing <u>The Prisoner of Hope Bible</u>, that is available on Amazon—and he helped over 180 inmates with their legal work resulting in 120 of them getting out of prison early under the First Step Act and the Cares Act. This Court would be acting in the interests of justice if it granted this Petition, terminated Petitioner's remaining period of supervised Release, and then ordered the Government to respond to Petitioner's 2255 and 2241 Petitions. Once Petitioner received his law license back, he would make an excellent CJA attorney.

## CONCLUSION

Petitioner respectfully suggests that he deserves the same Due Process considerations as the defendants in *Ray* and *Benatta*, and asks only for the Court to recognize the many Due Process violations in this case and apply the Earned Time Credits of the First Step Act and Judge Gorton's calculation of time credits under *Macfarlane* to resentence Petitioner and to immediately terminate his remaining period of Supervised Release as was done by the Second Circuit in *Ray*, or to take off two years of his remaining Supervised Release as this Court did in *Page*.

Respectfully submitted,
/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT
06092

11

## CERTIFICATION

I hereby certify that on this twenty-fifth day of May, 2022, a copy of the foregoing was filed to the Clerk of the Court. Notice of this filing was also sent by USPS First Class to AUSA Neeraj Patel 157 Church Street, 25th Floor, New Haven, CT 06510

By: / s / Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT. 06092